F1STMIRC

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4               v.                              14 CR 810 (CM)

5    MOSHE MIRILISHVILI, DAMON
     LEONARD, JOMARIS JAVIER, RAY
6    WILLIAMS, DORIAN AVERY,
     TASHEEN DAVIS, GANEENE GOODE,
7    THOMAS WHITE, CAROLYN
     MIDDLETON, JOSEPH GRAY and
8    KENNETH FREY,

9               Defendants.

10   ------------------------------x

11                                        New York, N.Y.
                                          January 28, 2015
12                                        3:00 p.m.

13
     Before:
14
                       HON. COLLEEN MCMAHON,
15
                                          District Judge
16

17                       APPEARANCES

18   PREET BHARARA
          United States Attorney for the
19        Southern District of New York
     EDWARD DISKANT
20   BROOKE CUCINELLA
          Assistant United States Attorneys
21
     JOSHUA DRATEL
22        Attorney for Defendant Mirilishvili
     BY:  WHITNEY SCHLIMBACH
23
     IRVING COHEN
24        Attorney for Defendant Leonard

25   RICHARD MA
          Attorney for Defendant Javier

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

2

F1STMIRC

1                        APPEARANCES (Continued)

2    STEWART ORDEN
          Attorney for Defendant Williams
3
     STEVEN FRANKEL
4         Attorney for Defendant Avery

5    ALAN NELSON
          Attorney for Defendant Davis
6
     ROBERT GOTTLIEB
7         Attorney for Defendant Goode

8    FREEMAN, NOOTER & GINSBERG
          Attorney for Defendant White
9    BY:  THOMAS NOOTER

10   PATRICK JOYCE
          Attorney for Defendant Middleton
11
     DIANE FERRONE
12   DANIEL PARKER
          Attorney for Defendant Gray
13

14

15

16

17

18

19

20

21

22

23

24

25

3

F1STMIRC

1              (In open court)

2              DEPUTY CLERK:  14 Criminal 810, United States of

3     America versus Mirilishvili, et al.

4              Your appearances.

5              MR. DISKANT:  Good afternoon your Honor, Edward

6     Diskant and Brooke Cucinella for the government.

7              MS. CUCINELLA:  Good afternoon, your Honor.

8              THE COURT:  Good afternoon.

9              MR. NELSON:  Good afternoon, your Honor, Alan Nelson

10    appearing on behalf of Tasheen Davis, who is seated in the

11    first row wearing a green blouse.

12             MR. COHEN:  Good afternoon, your Honor, Irving Cohen

13    appearing for David Leonard.  He's seated in the audience in

14    the third row.

15             MR. MA:  Good afternoon, Judge, Richard Ma appearing

16    for Ms. Javier, seated in the third row to your right.

17             MR. FRANKEL:  Good morning, Judge McMahon, Steven

18    Frankel for Dorian Avery, seated the closest to the Court in

19    the jury box.

20             MR. JOYCE:  Good afternoon, your Honor, Patrick Joyce

21    on behalf of Carolyn Middleton.  Ms. Middleton is in the first

22    row, second from the right.

23             MR. GOTTLIEB:  Your Honor, good afternoon, Robert

24    Gottlieb for Ganeene Goode, who is in the first row with the

25    prescribed sunglasses.

F1STMIRC

1          MS. SCHLIMBACH:  Good afternoon, your Honor, Whitney

2     Schlimbach standing in for Joshua Dratel for Moshe

3     Mirilishvili, sitting right behind me in the first row.

4          MR. ORDEN:  Your Honor, good afternoon, Stuart Orden

5     for Ray Williams, seated in the first row.

6          MR. NOOTER:  Good afternoon, your Honor, Thomas Nooter

7     for Thomas White, who is in the jury box.

8          MS. FERRONE:  Good afternoon, your Honor, Diane

9     Ferrone and Daniel Parker for Joseph Gray, who is in the jury

10     box as well.

11          THE COURT:  Okay.  Who is speaking for the government

12     today?

13          MR. DISKANT:  Your Honor, this is the first appearance

14     before the Court.  All the defendants were arraigned at the

15     time of their arrest in December.

16          THE COURT:  What were they arraigned for?

17          MR. DISKANT:  They were arraigned for conspiracy to

18     distribute narcotics.

19          THE COURT:  What is it that the government alleges

20     that they did?

21          MR. DISKANT:  We allege that all of the defendants

22     participated in a massive oxycodone distribution scheme.  The

23     scheme was centered at a purported pain management medical

24     clinic run by defendant Moshe Mirilishvili.  He was running a

25     purported medical office in upper Manhattan.  Also charged

F1STMIRC

1  along with the doctor are two of the office workers, those are

2  defendants Damon Leonard and Jomaris Javier, who are alleged to

3  have created fabricated paperwork and taken bribes in

4  connection with the facilitation of the scheme.

5           And then the remaining defendants are high-level drug

6  traffickers referred to in the indictment as crew chiefs,

7  because they are alleged to have run crews of patients in to

8  see the doctor so that each of these patients could obtain a

9  medically unnecessary prescription for oxycodone, which these

10  defendants then caused to be filled so that the pills could be

11  resold.

12           For that, all of the defendants are charged in a

13  single count of conspiracy to distribute narcotics, which is

14  the count on which they have now been arraigned.

15           THE COURT:  Okay.  And what's the status of discovery?

16           MR. DISKANT:  Your Honor, we have made two productions

17  of discovery to date, one approximately ten days ago and one

18  earlier today.  Given the volume of discovery and the number of

19  defendants, we retained an outside vendor that we are producing

20  this discovery to and that defense counsel can obtain that

21  material from.

22           To date we produced approximately 9,000 pages

23  consisting of phone records, prescription records, which are

24  known as BNE or Bureau of Narcotics Enforcement records, as

25  well as bank records.  We produced all of the applications made

F1STMIRC

1    by the government as part of its investigation, that is, search

2    warrants and the like, as well as any post-arrest statements.

3          We have also produced all surveillance photos.  We

4    have produced more than two dozen consensually made recordings

5    that were made during the course of the investigation, as well

6    as several related items.

7          Outstanding --

8          THE COURT:  What's the related items to consensual

9    recordings?

10         MR. DISKANT:  There were a number of recordings made

11   by the doctor himself, that is, he had surveillance photos

12   provided to law enforcement at various times during the

13   investigation.  There are a number of times, for example, where

14   the doctor was robbed by other drug traffickers.  The defendant

15   Mirilishvili, the doctor, that is, collected cash and had quite

16   a bit of cash with him.  So there are a number of times in

17   which he was robbed, and he provided us with the video

18   recordings which we are now producing back to all defendants.

19         Outstanding on the discovery front are the things that

20   we recovered the day of the arrest.  We executed two search

21   warrants, one on Dr. Mirilishvili's residence and the other on

22   the clinic.  We are in the process of processing that material.

23   We anticipate being able to produce the physical items, that

24   is, the documents and photographs and the like, very shortly.

25         To the extent computers were recovered, and there were

F1STMIRC

1   a number, we'll be having a DEA lab forensically analyze those

2   so we can produce reports on those as soon as possible.  There

3   are also a number of phones that were recovered from the

4   defendants at the time of their arrest, and we will be making

5   an application to search those shortly so that we can produce

6   the contents of those as well.

7          THE COURT:  The phones haven't been searched?

8          MR. DISKANT:  Not yet.

9          THE COURT:  All right.  Ladies and gentlemen, what

10  shall we do?  Who is speaking?  Have you all had a chance to

11  confer?

12         MR. NELSON:  Your Honor, we have not all conferred.

13  Alan Nelson speaking.

14         THE COURT:  Yes, Mr. Nelson.

15         MR. NELSON:  With respect to the discovery that the

16  government has produced, what the production has been is the

17  productions have gone to DupeCoop.  I have reached out to

18  DupeCoop with respect to the first round of discovery.  They

19  are in process of culling that material in order to provide to

20  the defense.  The second set of discovery, I received the email

21  about approximately an hour ago indicating what that was.

22         I would suggest to the Court that we would need a

23  minimum of three months to start reviewing the discovery.  I

24  did notice, however, this second discovery production that the

25  government -- one of the items is surveillance from a pole

8

F1STMIRC

1    camera outside of the clinic for a one-year period of time.  So

2    I would ask the Court to potentially intervene and ask the

3    government --

4              THE COURT:  The government should know, not these two

5    assistants necessarily, but the government, as in the people at

6    One St. Andrews, knows my position on that.  Anything that the

7    government intends to rely on it can cull out and give to

8    defense counsel.  I will not allow the government to rely on

9    anything that it does not cull out and give to defense counsel.

10   Defense counsel is not charged with the responsibility of going

11   through a year's worth of surveillance video.

12             MR. DISKANT:  That is absolutely understood, your

13   Honor.

14             THE COURT:  Oh, good.  So 90 days sounds about right

15   to everybody.  Production to DupeCoop is not production to you.

16             All right.  Do you have any idea when the first round

17   stuff is going to be duplicated?  When are you guys going to

18   get it?

19             MR. NELSON:  Judge, I had contacted DupeCoop early

20   last week.  I have not yet heard back from the proprietor as to

21   when it is going to be available.  I will speak with him again

22   tomorrow.

23             THE COURT:  Okay.  Well, if you have difficulty

24   finding out, call Mr. O'Neill, we'll ask DupeCoop when it's

25   going to be available.  Perhaps we can get an answer.

F1STMIRC

1          Okay.  Mr. O'Neill?

2          DEPUTY CLERK:  Wednesday, April 29th, 4 o'clock.

3          THE COURT:  Wednesday, April 29 at 4 o'clock.  Time is

4    excluded in the interest of justice because the defendants'

5    need for a speedy trial is outweighed by the need for the

6    government to complete production of discovery, none of which

7    has made it into the hands of counsel for defense and their

8    clients to have an opportunity to review it and to assess their

9    various positions.

10          Anything else from the folks at the back table?

11          MR. NOOTER:  Yes, your Honor, Thomas Nooter for

12    Mr. White.  Mr. White is in custody.  I'm in the process of

13    putting together a bail package but not yet ready to present

14    it.  It's possible that the government might consent to

15    whatever I propose, but assuming they don't, I just wanted to

16    know, should I contact chambers for a bail hearing?

17          THE COURT:  Always contact Mr. O'Neill.  I'm on trial

18    next week, so if it were next week we might send you to the mag

19    and might have you come in at the end of the day, but call

20    Mr. O'Neill.

21          MR. NOOTER:  Thank you very much.

22          THE COURT:  I understand we have another bail

23    application that is being made later.

24          Anything else?

25          MR. NELSON:  No, your Honor.

F1STMIRC

1          THE COURT:  Well, if you're not involved in

2   Mr. Avery's bail application, you can go.

3                              o0o