UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

UNITED STATES OF AMERICA       :       14 Cr. 810 (CM)

      - against -       :       (Electronically Filed)

MOSHE MIRILASHVILI,       :

      Defendant.       :
-------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT DR. MOSHE MIRILASHVILI'S PRE-TRIAL MOTIONS

JOSHUA L. DRATEL
JOSHUA L. DRATEL, P.C.
29 Broadway, Suite 1412
New York, New York 10006
(212) 732-0707

*Attorneys for Defendant Moshe Mirilashvili*

– Of Counsel –

Joshua L. Dratel
Lindsay A. Lewis
Whitney Schlimbach

TABLE OF CONTENTS

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT

POINT I

THE COURT SHOULD SUPPRESS THE EVIDENCE OBTAINED
AS A RESULT OF THE SEARCHES OF DR. MIRILASHVILI'S
HOME AND OFFICE AS A MATTER OF LAW UNDER *FRANKS
V. DELAWARE*, 438 U.S. 154 (1978), BECAUSE OF INTENTIONAL
AND/OR RECKLESS MATERIAL FALSEHOODS IN THE
AFFIDAVITS UNDERLYING THOSE SEARCH WARRANTS . . . . . . . . . . . . . . . . . . . . . . . . 2

POINT II

THE COURT SHOULD COMPEL THE
GOVERNMENT TO PRODUCE THE
REQUESTED BILL OF PARTICULARS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

A.      *A Bill of Particulars Is Necessary for the
        Preparation of Mr. Mirilashvili's Defense* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        1.      *The Government Must Particularize the
                Transactions Against Which Dr. Mirilashvili Must Defend* . . . . . . . . . . . . . . . . . 9

        2.      *The Government Must Identify the  Parties
                Involved In The Alleged Conspiracy* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

B.      *The Requested Particulars Conspiracy* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

POINT III

THE COURT SHOULD GRANT DR. MIRILASHVILI'S
REQUEST TO JOIN IN HIS CO-DEFENDANTS' MOTIONS
FOR SEVERANCE TO THE EXTENT THEY INURE TO HIS
BENEFIT AND FOR LEAVE TO JOIN IN ANY ADDITIONAL
MOTIONS COUNSEL IS NOT AWARE OF AT THE TIME OF FILING . . . . . . . . . . . . . . 14


Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## TABLE OF AUTHORITIES

### CASES

*Franks v. Delaware*,  438 U.S. 154 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2

*United States v. Bin Laden (El-Hage)*, 92 F. Supp.2d 225 (S.D.N.Y. 2000) . . . . . . . . . . . . 10, 11

*United States v. Bortnovsky*, 820 F.2d 572 (2d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . 2, 11

*United States v. Davidoff*, 845 F.2d 1151 (2d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 12

*United States v. Mostafa*, 965 F.Supp.2d 451, 465 (S.D.N.Y. 2013) . . . . . . . . . . . . . . . . . . 10, 12

*United States v. Nachamie*, 91 F. Supp.2d 565(S.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . 2

### STATUTES

18 U.S.C. §3500 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

21 U.S.C. §841(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

21 U.S.C. §841(b)(1)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

21 U.S.C. §846 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

21 U.S.C. §853 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**Introduction**

This Memorandum of Law is submitted on behalf of defendant Dr. Moshe Mirilashvili, in support of his pre-trial motions seeking the following relief:

I.      suppression of the evidence obtained as a result of the searches of Dr. Mirilashvili's home and office and, in the alternative, a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978);

II.     a Bill of Particulars; and

III.    leave to join in his co-defendants' motions for severance, and in any future motions counsel is not apprised of at the time of the filing, to the extent they inure to his benefit.

Accordingly, for the reasons set forth below, it is respectfully submitted that Mr. Mirilashvili should be granted the requested relief.

**Statement of the Facts**

Dr. Moshe Mirilashvili, along with ten others, is charged with participating in a single overarching conspiracy to distribute more than one million pills of Oxycodone, a schedule II controlled substance, in violation of 21 U.S.C. §§841(a)(1), (b)(1)(C), & 846. *See* Indictment (attached to the Affidavit of Joshua L. Dratel, Esq., as Exhibit 1).

The Indictment alleges that in his role as a physician, Dr. Mirilashvili "wrote more than 13,000 medically unnecessary prescriptions resulting in the unlawful distribution of nearly 1.2 million oxycodone tablets and for which [he] collected nearly $2.6 million in cash payments." *Id.*, at ¶ 3.

For the above-alleged conduct Dr. Mirilashvili is also subject to forfeiture allegations,

1

and a substitute assets provision, in the alternative, both pursuant to 21 U.S.C. §853.  Dr.

Mirilashvili has entered a plea of not guilty to charges against him.

**ARGUMENT**

**POINT I**

**THE COURT SHOULD SUPPRESS THE EVIDENCE OBTAINED
AS A RESULT OF THE SEARCHES OF DR. MIRILASHVILI'S
HOME AND OFFICE AS A MATTER OF LAW UNDER *FRANKS
V. DELAWARE*, 438 U.S. 154 (1978), BECAUSE OF INTENTIONAL
AND/OR RECKLESS MATERIAL FALSEHOODS IN THE
AFFIDAVITS UNDERLYING THOSE SEARCH WARRANTS**

In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court, in holding that a

defendant, upon a preliminary showing of an intentional or reckless material falsehood in an

affidavit underlying a search warrant, must be permitted to attack the veracity of that affidavit,

explained:

> the hearing before the magistrate [when the warrant is issued] not
> always will suffice to discourage lawless or reckless misconduct.
> The pre-search proceeding is necessarily *ex parte*, since the subject
> of the search cannot be tipped off to the application for a warrant
> lest he destroy or remove evidence. The usual reliance of our legal
> system on adversary proceedings itself should be an indication that
> an ex parte inquiry is likely to be less vigorous. The magistrate has
> no acquaintance with the information that may contradict the good
> faith and reasonable basis of the affiant's allegations. The pre-
> search proceeding will frequently be marked by haste, because of
> the understandable desire to act before the evidence disappears;
> this urgency will not always permit the magistrate to make an
> independent examination of the affiant or other witnesses.

*Id*., at 169.

In Dr. Mirilashvili's case, identical allegations in ¶ 16(a) of the affidavit in support of the

application for the warrant to search Dr. Mirilashvili's office (attached as Exhibit 2 to the Dratel

2

Decl.), and ¶ 17(a) of the affidavit underlying the warrant to search his home, (attached as Exhibit 3 to the Drtatel Decl.),  that "a confidential source ('CS-1') who was posing as a 'patient' . . . informed MIRILASHVILI that she/he had 'no pain' and then handed MIRILIASHVILIi $200 in cash before receiving, in return, a prescription for 90 30-milligram oxycodone tablets" constituted the very sort of intentional and/or reckless material falsehoods in search warrant affidavits which the Court in *Franks* warned, and which as a matter of law require this Court to suppress the evidence obtained as a result of those searches.

Indeed, recordings included in discovery produced thus far contain an overwhelming amount of "information," with which the "magistrate ha[d] no acquaintance," and which "contradict[s] the good faith and reasonable basis of the affiant's allegations." *Id*.

That evidence makes plain that the affiants *intentionally* created the impression of a short, staged, one-time transaction between Dr. Mirilashvili and a government source (hereinafter "CS") acting as a patient, from which one could conclude *only* that probable cause existed to search Dr. Mirilashvili's home and office.

Yet, the allegations in ¶¶ 16(a) and 17(a), respectively, by omitting critical details, belie the reality of the interaction between Dr. Mililashvili and CS-1 on the occasion referenced in the warrant applications. Thus, the affidavits purposefully omit important context, namely multiple recorded interactions between Dr. Mirilashvili and CS-1 during appointments both prior to, and after, the appointment referenced in the warrant application, all of which would have fatally undermined the Magistrate Judge's finding of probable cause to conduct the searches of Dr. Mirilashvili's home and office.

For example, contrary to the description contained in ¶ 16(a) and ¶ 17(a) of the affidavits

3

in support of the search warrants for Dr. Mirilashvili's home and office, the January 16, 2014,

recording of CS-1's appointment (identified in recordings as CS-09130371) makes obvious that

CS-1 did not merely exchange $200 for a prescription after informing Dr. Mirilashvili that he

had "no pain."

Rather, the appointment (which was conducted mostly in Spanish with a female

interpreter who worked for Dr. Mirilashvili) began with Dr. Mirilashvili reviewing what he was

told by CS-1 during prior appointments (many of which were also recorded but the content of

which are not mentioned anywhere in the affidavits), namely that CS-1 had pain in his lower

back and lower extremities.  *See* January 16, 2014, Recording, GEN_008690 (appointment

beginning at approximately 2:16:00).[1]  The affiants, however, omitted this portion of the

appointment from their affidavits.

Next, Dr. Miriliashvili had CS-1 confirm that he had been taking the *four* medications

previously prescribed by Dr. Mirilashvili, including 30 mg of Oxycodone to be taken three times

a day, as well as 100 mg of Neurontin to be taken twice a day, 10 mg of Elavil taken twice a day,

and 750 mg of Robaxin twice a day.

Indeed, it is apparent from patient records contained in the government's Rule 16

disclosure that Dr. Mirilashvili routinely verified that patients were taking prescribed

medications by requiring a urinalysis report at each follow up appointment.  The affiants make

no mention of these aspects of CS-1's visit, nor the regularity with which Dr. Miriliashvili

followed this procedure with other patients.

Following the exchange regarding the several medications CS-1 was taking, the

---

[1]  This recording and all others referenced herein are available to the Court upon request.

interpreter (without waiting for Dr. Mirilashvili to speak) asked CS-1 (in Spanish) about CS-1's pain level, to which CS-1 responded that he had no pain. This is the snippet of the appointment which the affiants do include in their account(s), but they mischaracterize the exchange.

The affiants fail to mention that based on recordings of CS-1's several other appointments with Dr. Mirilashvili, as well as an appointment with another CS conducted in English, that question specifically directed the patient to rate his pain level *after* he has taken his medication for the previous 30 days. *See e.g.* November 20, 2013, Recording, GEN_008685 (appointment begins at approximately 28:00); *see also* April 10, 2014, Video Recording, GEN_008777, PICT0002 (recording of appointment with different patient, CS-14147618, including the same question, beginning at approximately 4:00).

During that same visit, the interpreter also translated that CS-1 was undergoing hydrotherapy (also commonly prescribed by Dr. Mirilashvili according to the doctor's records provided by the government), in addition to taking the prescribed medications. *See* GEN_008690. In still other appointments omitted entirely from the affidavits, CS-1 also reported that he was engaged in physical therapy. *See e.g.* GEN_008685.

In addition, the affiants neglect to include in their description of CS-1's appointment that Dr. Mirilashvili concluded the appointment with a physical examination of CS-1, *before* issuing the same four prescriptions mentioned above.

Critically, neither of the affidavits reference *any* of CS-1's other appointments with Dr. Mirilashvili, but which were disclosed by the government in discovery, which contains *multiple* recordings of appointments that CS-1 had with Dr. Mirilashvili, including an initial visit on June 27, 2013, and multiple follow up visits through March 2014. *See* June 27, 2013, Recording,

5

GEN_008675 (appointment beginning at approximately 1:05:00).

In fact, had the affiants included accounts of these other appointments in their affidavits, the Magistrate Judge would have been made aware that following a physical examination during CS-1's initial visit, Dr. Mirilashvili provided CS-1 with an assessment of what was causing his pain and recommended that he *have surgery* as soon as possible.  In order to facilitate that medical procedure, Dr. Mirilashvili provided CS-1 with referrals to an interventional pain management specialist and an orthopedist at St. Luke's Hospital in Manhattan, whom Dr. Mirilashvili again encouraged CS-1 to see during follow up appointments September 12, 2013 and October 18, 2013.  *See* September 12, 2013, Recording, GEN_008678 (appointment starting at approximately 3:21:00) and October 18, 2013, Recording, GEN_008682 (appointment starting at approximately 3:38:00).  None of this made it into the affiants' warrant applications.

Thus, while the affiants clearly sought to present their version of CS-1's appointment – essentially a straight drug transaction without any pretense of an actual medical visit – as an example of Dr. Mirilashvili's standard procedure when seeing patients, their interpretation of Dr. Mirlihashvili's typical appointment represents an intentional material falsehood that could not be further from the truth.  Multiple other recordings contained in discovery further demonstrate that Dr. Mirilashvili's appointments routinely included the type of examination and questioning exhibited in the recording of CS-1's visit, as described herein.

For example, the April 10, 2014, examination of *another* confidential source, CS-14147618,  is no exception.  *See* GEN_008777, PICT0002.  Just as with the other follow up visits, CS-14147618's appointment begins with a review of the patient's prior pain complaints, confirmation that the patient is taking his medication, and a report of the patient's pain level

*after* taking the medications, which CS-14147618 reports is mild but worsens with rain.

Next, CS-14147618 informs Dr. Mirilashvili that he used the referral Dr. Mirilashvili provided him, and was informed by the orthopedist he saw that he should have surgery on his knee. Also, during Dr. Mirilashvili's physical examination of CS-14147618's knee, CS-14147618 actually gasped in pain and Dr. Mirilashvili told him he should be wearing the brace Dr. Mirilashvili gave him. Any mention of this other confidential source, or this appointment, is conveniently omitted from the Indictment and the warrant affidavits.

A review of the recordings produced in discovery (of which only a small sample are referenced here) clearly demonstrates that critical aspects of Dr. Mirilashvili's patient visits were at best recklessly, and almost certainly intentionally, omitted from the search warrant affidavits because they would have contradicted the reasonable basis and good faith of the affiant's allegations.

Accordingly, the evidence obtained from the searches of Dr. Mirliashvili's home and office must be suppressed because it is obvious that had the affiants provided in their affidavits a complete and honest account of CS-1's appointment with Dr. Mirilashvili and the relevant context contained in the other recordings discussed herein, the Magistrate Court would not have found probable cause to issue the search warrants for Dr. Mirilashvili's home and office.

In the alternative, the Court should hold a hearing to determine whether a good faith and reasonable basis existed for the affiants allegations.

**POINT II**

**THE COURT SHOULD COMPEL THE
GOVERNMENT TO PRODUCE THE
<u>REQUESTED BILL OF PARTICULARS</u>**

As the Second Circuit has explained, a Bill of Particulars:

> is appropriate to permit a defendant "to identify with sufficient
> particularity the nature of the charge pending against him, thereby
> enabling defendant to prepare for trial, to prevent surprise, and to
> interpose a plea of double jeopardy should he be prosecuted a
> second time for the same offense."

*United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988), *quoting United States v.
Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987).  *See also United States v. Nachamie*, 91 F.
Supp.2d 565, 570 (S.D.N.Y. 2000) (*quoting Bortnovsky*, 820 F.2d at 574) (ordering a Bill of
Particulars).

Without further elucidation of the generic descriptions of the charges against him in the
Indictment, as well as the identities of various doctors, patients, crew members and confidential
sources involved in the alleged crime, Dr. Mirilashvili will be unable to prepare his defense as he
will not be able to isolate the specific transactions that he must defend against, and the various
witnesses and alleged co-conspirators.  A criminal trial should not be a game, and least of all a
guessing game.  Thus, Mr. Ulbricht's request for a Bill of Particulars should be granted.

**A.**     ***A Bill of Particulars Is Necessary for the Preparation of Mr. Mirilashvili's Defense***

Absent a bill of particulars, Dr. Mirilashvili will proceed to trial without sufficient notice
of precisely what charges he faces, and without ample time to identify and locate witnesses and/or
conduct a meaningful investigation of the offenses alleged.  The Indictment alleges that Dr.
Mirilashvili "wrote *more than 13,000* medically unnecessary prescriptions resulting in the

8

unlawful distribution of *nearly 1.2 million oxycodone tablets* and for which [he] collected nearly *$2.6 million* in cash payments." *See* Indictment, at ¶ 3  (emphasis added).

     Moreover, it alleges that he conspired to do so with a vast number of individuals – doctors, patients, "crew chiefs," "crew members," "office staff," co-conspirators, and confidential sources – that are not identified in the Indictment or elsewhere in the discovery (at least to this point, as the government has still not produced all of the discovery in this case).

     As a result, a Bill of Particulars is necessary to inform Dr. Mirilashvili of the most basic and critical details of the charged conspiracy, including, in key part (1)  particularization and enumeration of specific doctor-patient transactions the Indictment describes; and (2)  the identities of the parties involved in the transactions alleged.  If Dr. Mirilashvili is not provided with a Bill of Particulars, his ability to prepare his defense will be irremediably impaired.

    **1.**      *The Government Must Particularize the*
               *Transactions Against Which Dr. Mirilashvili Must Defend*

     The Indictment in Dr. Mirilashvili's case is scant on details and speaks only in broad and undefined terms, thus boiling a multi-transactional case with numerous players down to sweeping generalities that provide no specifics and no roadmap to the charges Mr. Ulbricht will be required to defend against.  *See, e.g.,* Indictment at ¶ 2 ("[Dr. Mirilashvili] wrote thousands of medically unnecessary prescriptions for large quantities of oxycodone in return for cash payments"  );  ¶ 3 ("[Dr. Mirilashvili] wrote more than 13,000 medically unnecessary prescriptions resulting in the unlawful distribution of nearly 1.2 million oxycodone tablets;"  );  ¶ 14(a) ("[Dr.] Mirilashvili saw all of the Clinic's 'patients' – dozens of individuals each day . . . before writing each of them an identical prescription for 90 30-milligram oxycodone tablets").  Descriptions in the Indictment

routinely omit necessary details such as (1)  dates, times, and precision as to the volume of the

transactions that occurred; and (2)  the parties involved in transactions.

In *United States v. Bin Laden (El-Hage)*, 92 F. Supp.2d 225 (S.D.N.Y. 2000), Judge Sand

explained that "a bill of particulars [was] necessary . . . to permit the Defendants to prepare a

defense and to prevent prejudicial surprise at trial," based, in part, on the Court's conclusion that

"several of the allegations contained in the 'Overt Acts' section of the Indictment are cast in

terms that are too general, in the context of [that] particular case, *to permit the Defendants to

conduct a meaningfully directed investigation of the relevant facts and circumstances and be

prepared to respond to the charges.*"  *Id.*, at 235 (emphasis added).

In Dr. Mirilashvili's case, as in *Bin Laden*, the transactions described in the Indictment as

a whole lack specificity, and without the details requested by Dr. Mirilashvili, such as dates,

times, participants, and particularization of transactions alleged, it would be impossible for Dr.

Mirilashvili "to conduct a meaningfully directed investigation."

Moreover, if Dr. Mirilashvili is not notified of these particulars sufficiently in advance of

trial, he will be unable, at the eleventh hour, to mount a defense based on these witnesses,

transactions, and/or other information. Under such circumstances, his ability to prepare and

present a defense would be irreparably impaired.

Nor does the voluminous discovery in this case provide a roadmap for the alleged

transactions that would obviate the need for a bill of particulars.  As this Court stated last year in

*United States v. Mostafa*, 965 F.Supp.2d 451, 465 (S.D.N.Y. 2013),  "a bill of particulars is . . .

unnecessary when the Government has produced materials in discovery concerning the witness

and other evidence" and "[t]hus, in determining whether to order a bill of particulars a court must

examine the totality of the information available to the defendant, both through the indictment and through pre-trial discovery."  *See also Bin Laden*, 92 F. Supp.2d at 233.

*Bortonovsky* is instructive in conducting this examination in Dr. Mirilashvili's case.  The defendant in *Bortonovsky* was faced with a similar situation regarding the Indictment and discovery produced to that which Dr. Mirilashvili faces here:  "[n]owhere in the indictment . . . d[id] the Government specify the dates of the staged burglaries [alleged in the Indictment] or enumerate which of numerous documents [were the ones the government alleged in the Indictment had been] falsified."  820 F.2d at 574.  Nonetheless, the government claimed that "it fulfilled its obligation to inform [defendants] of the charges by being explicit in the indictment and by providing over 4,000 documents to defense counsel during discovery." *Id*.

In *Bortonovsky*, the Court found that the defendants "were hindered in preparing their defense by the district court's failure to compel the Government to reveal crucial information: the dates of the fake burglaries and the identity of the three fraudulent documents." *Id*.  The Court also found that the "Government did not fulfill its obligation merely by providing mountains of documents to defense counsel who were left unguided as to which documents would be proven falsified or which of some fifteen burglaries would be demonstrated to be staged."  *Id*., at 575. The Court in *Bortonovsky* ultimately concluded that as a result of the government's failure to reveal crucial information and the district court's failure to require it, "[i]n effect, the burden of proof impermissibly shifted to [the defendants]."  *Id*.

Indeed, if Dr. Mirilashvili is not provided a Bill of Particulars in this case he will suffer the same fate.  He cannot possibly be expected to parse through numerous recordings and thousands of documents produced in discovery in the hopes that he will guess correctly as to the

11

transactions that the government intends to put before the jury; nor does the veiled nature of the case itself even allow for such an inquiry to occur.

Accordingly, "to avoid surprise at trial and give [Dr. Mirilashvili] sufficient information to meet the charges against him," the very purpose of a bill of particulars, the Court must Order the government to provide the requested Bill of Particulars to Dr. Mirilashvili. *See Mostafa*, 965 F.Supp.2d at 465, *citing Bin Laden*, 92 F. Supp.2d at 233.

>   **2.      *The Government Must Identify the  Parties Involved In The Alleged Conspiracy***

The identification of the specific persons involved in the transactions alleged, and in the Indictment generally, are equally critical to preparation of Dr. Mirilashvili's defense.  The Indictment fails to identify critical parties, such as the other doctors allegedly involved in the conspiracy, as well as the names of the patients, "crew chiefs," "crew members," "office staff," co-conspirators, and confidential sources.  Nor are these individuals identified in discovery.

In the absence of a bill of particulars providing the identities of these many other individuals, defense counsel will not have ample time to identify and locate necessary witnesses, and to conduct its own independent investigation.

It should also be noted that material disclosed pursuant to discovery demands and 18 U.S.C. §3500, do not serve as a substitute for a Bill of Particulars.  *See, e.g.,  Davidoff*, 845 F.2d at 1155.  This is especially true with regard to the identities of the witnesses, and the transactions discussed **ante**,  since late notice (such as via production of "3500 material") might require postponement of the trial in order to allow Dr. Mirilashvili's defense team to pursue the evidence.

**B.**     *The Requested Particulars*

In addition to the particulars demanded of the government by Dr. Mirilashvili's co-defendants, Dr. Mirilashili also requests the following particulars:

(1)     specification of the specific oxycodone transactions the government intends to introduce at trial, including the names of all participants involved in each transaction;

(2)     the names of the "others known and unknown" alleged to be part of the charged conspiracy;

(3)     the identities of "Doctor-2" and "Doctor-3," as well as any other doctors allegedly involved;

(4)     the identities of each of the "patients" alleged to be part of the charged conspiracy;

(5)     the identities of each of the "crew members" alleged to be part of the charged conspiracy;

(6)     the identities of each of the "crew chiefs" alleged to be part of the charged conspiracy;

(7)     the identities of each of the "office staff" alleged to be part of the charged conspiracy;

(8)     the identities of "CS-1" and any other "confidential sources:"

(9)     the identities of "CC-1" and any other alleged co-conspirators; and

(10)     the identities of "CW-1" and any other alleged "cooperating witnesses."

13

**POINT III**

**THE COURT SHOULD GRANT DR. MIRILASHVILI'S
REQUEST TO JOIN IN HIS CO-DEFENDANTS' MOTIONS
FOR SEVERANCE TO THE EXTENT THEY INURE TO HIS
BENEFIT AND FOR LEAVE TO JOIN IN ANY ADDITIONAL
<u>MOTIONS COUNSEL IS NOT AWARE OF AT THE TIME OF FILING</u>**

At this early stage, when discovery is still not complete and the government has not yet informed counsel as to whether it intends to introduce the post-arrest statements of any of Dr. Miriliashvili's co-defendants, it is too soon to determine whether severance is necessary. Accordingly, Dr. Mirilashvili respectfully seeks leave to join in his co-defendants' Tasheen Davis's and Ganeene Goode's motions for severance, to the extent severance is required, as well as any other motions that inure to his benefit.

In addition, Dr. Miriliashvili respectfully requests permission to file any additional motions that may become necessary as a result of further discovery and/or disclosures by the government.

14

**Conclusion**

Accordingly, for all the reasons set forth above, it is respectfully requested that the Court

grant Dr. Mirilashvili's pre-trial motions in their entirety.

Dated: 7 August 2015
       New York, New York

                                        Respectfully submitted,


                                          /S/ Joshua L. Dratel
                                        JOSHUA L. DRATEL
                                        JOSHUA L. DRATEL, P.C.
                                        29 Broadway, Suite 1412
                                        New York, New York 10006
                                        (212) 732-0707

                                        *Attorneys for Defendant Moshe Mirilashvili*


   – Of Counsel –

Joshua L. Dratel
Lindsay A. Lewis
Whitney Schlimbach

15