```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

            v.                              14 CR 810 (CM)

MOSHE MIRILISHVILI, DAMON
LEONARD, JOMARIS JAVIER, RAY
WILLIAMS, DORIAN AVERY,
TASHEEN DAVIS, GANEENE GOODE,
THOMAS WHITE, CAROLYN
MIDDLETON, JOSEPH GRAY, KEVIN
FREY,

            Defendants.

------------------------------x
                                            New York, N.Y.
                                            October 1, 2015
                                            4:20 p.m.

Before:

                    HON. COLLEEN MCMAHON,

                                            District Judge


                         APPEARANCES


PREET BHARARA,
     United States Attorney for the
     Southern District of New York
BROOKE CUCINELLA
     Assistant United States Attorney

WHITNEY SCHLIMBACH
LINDSAY LEWIS
     Attorneys for Defendant Mirilishvili

IRVING COHEN
     Attorney for Defendant Leonard

RICHARD JOHN MA
     Attorney for Defendant Javier
```

```
FA1KMIRC
```

APPEARANCES (Continued)

STEWART ORDEN
     Attorney for Defendant Williams

HAROLD RAMSEY
     Attorney for Defendant Avery

ALAN NELSON
     Attorney for Defendant Davis

ROBERT CURTIS GOTTLIEB
JUSTIN HEINRICH
     Attorneys for Defendant Goode

THOMAS HAMILTON NOOTER
     Attorney for Defendant White

AARON M. GOLDSMITH
     Attorney for Defendant Gray

LISA SCOLARI
     Attorney for Defendant Frey

1            THE DEPUTY CLERK:  Judge, this is 14 CR 810, United
2    States of America versus Moshe Mirilishvili, et al.
3            Please state your appearances, and, when you give your
4    appearance, whom you represent.  Government?
5            MS. CUCINELLA:  Brooke Cucinella, on behalf of the
6    government.  Good afternoon, your Honor.
7            MR. NELSON:  Good afternoon, your Honor.  Alan Nelson,
8    appearing on behalf of Tasheen Davis.  Ms. Davis is seated in
9    the second row of the audience.  She's wearing a white smock.
10           THE COURT:  Hang on one second.
11           (Pause)
12           THE COURT:  Go ahead.  Sorry about that.
13           MR. COHEN:  Good afternoon, your Honor.  Irving Cohen,
14   appearing for David Leonard.  He's seated in the third row.
15           Can you stand up, Mr. Leonard?
16           Thank you, your Honor.
17           MR. RAMSEY:  Harold Ramsey, for Mr. Avery, in the jury
18   box.
19           MS. SCHLIMBACH:  Good afternoon, your Honor.  Whitney
20   Schlimbach and Lindsay Lewis, from the law offices of Joshua
21   Dratel, on behalf of Moshe Mirilishvili, who's in the front
22   row.  Good afternoon.
23           MR. GOTTLIEB:  Good afternoon, your Honor.  Gottlieb &
24   Gordon, by Robert Gottlieb, for Ganeene Goode, who is in the
25   second row here, and with me is Justin Heinrich.

1          MR. GOLDSMITH:  Good afternoon, your Honor.  Aaron
2    Goldsmith, on behalf of Mr. Gray, who's seated second from you
3    in the box.
4          MR. NOOTER:  Good afternoon, your Honor.  Thomas
5    Nooter, for Thomas White, who is at the end in the jury box.
6          MS. SCOLARI:  Lisa Scolari, for Kevin Frey.  Good
7    afternoon, your Honor.  Mr. Frey is in the jury box.
8          MR. ORDEN:  Your Honor, good afternoon.  Stewart
9    Orden, for Ray Williams, who is standing right now in the
10   second row.
11         MR. MA:  Richard Ma, on behalf of Jomaris Javier.
12   Ms. Javier is in the third row, wearing a gray blouse or shirt.
13         THE COURT:  Okay.
14         There's a decision denying all the motions that we
15   had, which has been passed out.  I'm sorry, there is a
16   suppression hearing on the voluntariness of the consent to
17   search.  That's precautionary.
18         So what else do we have to do, other than set a date
19   for that?
20         MS. CUCINELLA:  I believe that's it, your Honor, at
21   least from the government's perspective.
22         THE COURT:  Okay.  Then let's find out what the
23   defendants have because they probably have something.
24         MR. NELSON:  Well, Judge, I represent Tasheen Davis,
25   and that's the defendant for whom you've ordered that there

1    would be a precautionary hearing conducted.  I have consulted

2    with the government concerning a potential date for a hearing,

3    and if it fits the Court's schedule, we would propose a date

4    sometime in the middle of November, for two reasons -- one,

5    co-counsel for the government is starting a trial on Monday and

6    he will be on trial until the beginning of November, and I for

7    personal reasons will not be available until sometime in the

8    middle of November.

9              THE COURT:  Okay.  In the middle of November, God

10   willing, and they don't settle, I'm supposed to be on trial.  I

11   have waited for five years to get a commercial case to go to

12   trial.  I scare them or something.  The last one settled on the

13   eve of trial last week.  I have another one that's supposed to

14   start on November the 2nd, which would take me pretty much, I

15   think, through about the 20th.

16             So could I suggest maybe like December the 2nd?

17             MR. NELSON:  That's fine, Judge.

18             THE COURT:  Does that work?  Does that work for you,

19   Mr. O'Neil?

20             THE DEPUTY CLERK:  Very good, Judge.  10:00 o'clock.

21             THE COURT:  So let's say December the 2nd at

22   10:00 a.m.

23             And we will have a hearing at that point.  We will

24   correct some typos in this decision, we will do that.  Before

25   we put it on ECF, we will do that.

1          MS. CUCINELLA:  Your Honor, I believe that time was
2     excluded to allow your Honor to decide the pending motions.
3     We'd ask now to exclude time, depending on your Honor's
4     preference, either until the suppression hearing or until the
5     trial date in February, to allow us to continue to discuss
6     potential pretrial resolutions and for the defendants to
7     prepare for trial.
8          THE COURT:  Well, forgive me if I've gotten something
9     wrong, but preparing for trial is what the 70 days is for.
10    That's not a reason to exclude time.  When we set a trial date
11    it's because we could get everybody, because we could get
12    everybody.  We set the trial date on consent.
13         So, as far as I'm concerned, time is excluded until we
14    get to our trial date because everyone consented to that trial
15    date.  Anybody have a problem with that?
16         COUNSEL:  No, your Honor.
17         THE COURT:  All right, deafening silence.
18         One of the things I want to bring up given the number
19    of the defendants and the fact that the government has
20    indicated that there may be some incriminating statements made
21    by one defendant against another defendant -- we just don't
22    know what they are yet -- that motion is only denied, the
23    Bruton motion is denied because it's premature.  And I have
24    given the government a very early date, like 90 days before
25    trial, to provide statements and proposed redactions.

1           And then you all have a week after you get those to
2   renew your motion when you know what you're shooting at.
3           So, have some possibility that I am going to have 11
4   defendants at this trial?
5           MS. CUCINELLA:  We don't think that's the case.  We
6   are actively engaged with plea negotiations with a number of
7   defendants, and we anticipate contacting the Court soon to set
8   additional plea dates.
9           THE COURT:  Okay.  I'm around this month, I'm in
10  Part I, or you can always go to the magistrate judge.
11          Mr. Nelson, you stood?
12          MR. NELSON:  Yes.  I obviously didn't have sufficient
13  time to review the Court's decision.
14          THE COURT:  Well, I just handed it to you.
15          MR. NELSON:  So if there are some issues that we would
16  like to raise, maybe we could write to the Court with respect
17  to clarification?  In particular, I had filed a motion --
18          THE COURT:  I wasn't clear?
19          MR. NELSON:  Well, I don't know because I haven't had
20  a chance to read through the decision.
21          THE COURT:  You're anticipating that I wasn't clear.
22  Am I regularly not clear?  That's okay.
23          MR. NELSON:  Good point there, Judge.
24          As it relates to a bill of particulars, there's one
25  particular issue that I raised, which might bear on timing of

1    discovery more than anything else, and despite the fact there's
2    been a denial of the bill of particulars, and, that is, quite a
3    number of defendants, including my client, are alleged to have
4    been a crew chief who sent various individuals to one of three
5    clinics.  While the government has provided all of the records
6    with respect to both of those clinics, with respect to the
7    patients that were in the clinics, it's impossible for us to
8    know who these individuals were who were recruited to go there.
9             So it's kind of looking for a needle haystack as to
10   who those individuals were, and it becomes relevant in the
11   context of the review of the medical records and the charts for
12   some of these patients.  They might well have medical needs and
13   necessity for purposes of going to the clinic and receiving
14   medication.
15            So I would ask, in the alternative to the bill of
16   particulars response, that the Court order the government to
17   provide a list of those patient witnesses that they intend to
18   rely upon within a month before trial so we might be able to
19   find those patient charts that are relevant and be able to
20   appropriately investigate those individuals.  Otherwise, we
21   have thousands of patients and we don't know who are those
22   individuals.
23            MS. CUCINELLA:  Certainly, your Honor.  We are happy
24   to talk to defense counsel about providing additional
25   information with respect to that.  Their clients know who they

1     were bringing to the clinic.  I think they can go to them.

2     We've also produced a number of surveillance photos that show

3     for many of the crew chiefs when they're bringing patients

4     in --

5             THE COURT:  I'm presuming everyone is innocent here,

6     of course.

7             MS. CUCINELLA:  Understood.

8             THE COURT:  I'm not sure that the tapes -- it's kind

9     of hard to put a name and a file with a person on the tape if

10    you don't know who the person on the tape is.  When the

11    government shows tapes, they frequently ask the witness, "And

12    who is that person right there?" or "Do you see yourself on

13    that tape?" because the jurors couldn't put a name and a file

14    with the person on the tape without someone explaining it to

15    them.

16            So I understand what the problem is.  It sounds to me

17    like there were thousands of prescriptions and there were

18    probably hundreds, if not thousands, of patients and, of

19    course, I know that the government has issues with the veracity

20    of the medical records, but that is something that the

21    government is going to have to get into in terms of its case.

22            I think that what I said was that Jencks -- I can't

23    even find it.

24            MS. CUCINELLA:  Two weeks prior to trial.

25            THE COURT:  Two weeks prior to trial.  He's going is

1    to send me a letter; I may move that back a week.
2            MS. CUCINELLA:  Once we have a better sense of which
3    defendants will be going to trial, I think that we will be
4    willing to probably provide more information closer to as well.
5            THE COURT:  Correct, okay.
6            MR. NELSON:  Judge, I understand the government's
7    response, though I certainly don't agree, but as it relates to
8    those patients, one, we would have -- it's not Jencks material,
9    this is Rule 16 material, it's patient records.  These might
10   not well be witnesses.  These are records that the government
11   is going to be introducing.  They're going to say patients 9
12   through 12 were the individuals who supposedly were recruited
13   individuals but aren't testifying in the trial.  So it's not
14   Jencks material but yet they will be saying that these
15   individuals were individuals who were improperly acquiring
16   medication.  The only means by which --
17           THE COURT:  It would be kind of hard to say that if
18   they don't either put them on the stand -- certainly not by
19   introducing their medical records will they be able to do that.
20           MR. NELSON:  I'm not exactly sure how the government
21   is planning to do that.
22           THE COURT:  Nor am I, but they don't have to tell you
23   how they're going to prove their case.
24           MR. NELSON:  My point is that to the extent they're
25   attempting to say there is a group of individuals who they're

    1    not calling as witnesses who were receiving medically

    2    unnecessary medication, it's rather hard for a defendant to be

    3    able to establish through the medical charts of those

    4    particular patients that they might well have been people who

    5    should have been receiving that medication or it was

    6    appropriate and medically indicated for them to do so if we

    7    don't know in advance who they are.  So we can't acquire their

    8    prior medical records to show the bases on which they

    9    originally wound up seeing this doctor or any of the other two

  10    doctors, the pain management as a result of injuries they

  11    sustained, either degeneratively or traumatically, that led to

  12    them being there, which would go to a defense.  And we would in

  13    essence be prevented from presenting that aspect of the defense

  14    if we weren't provided that information in a timely manner.

  15    And two or three weeks is nowhere near sufficient time.

  16            THE COURT:  You have the medical records; is that

  17    correct?

  18            MR. NELSON:  Yes, we do.

  19            THE COURT:  Fine, you have the medical records.

  20            MR. NELSON:  The problem is --

  21            THE COURT:  Look through the medical records, find

  22    people who look like they were traumatically or degeneratively

  23    injured and go look them up.  You have the medical records.

  24            MR. NELSON:  Very well, your Honor.  Most

  25    respectfully, I disagree with the Court in the con --

1                THE COURT:  You disagree with me but you have the

2     records, of course you do, you have the records.

3                MR. NELSON:  The problem with the records is the

4     government is claiming that all of the records are doctored.

5     So how could we possibly, in reviewing those records, be in a

6     position to be able to then corroborate by investigation that

7     there are separate independent bases to show that those

8     individuals indeed had traumatic or degenerative --

9                THE COURT:  Here's the deal:  The government has to

10    identify who it is going to call as a witness, at the present

11    time, two weeks before the trial, and give you all of the

12    material in its position that you would be able to use to

13    cross-examine those witnesses.  I would consider information

14    that they had terrible degenerative osteoarthritis for some

15    years before they began visiting Dr. Mirilishvili to be Giglio

16    material.

17               MR. NELSON:  Then my request would be that the Court,

18    instead of making it two to three weeks, make it as I requested

19    in my motion, 60 days prior to trial, which really does give us

20    a sufficient amount of time.

21               THE COURT:  That I'm not going to do.

22               Okay.

23               MR. NELSON:  Thank you, Judge.  I'll write to the

24    Court in terms of --

25               THE COURT:  Oh, write me a letter.  I never get enough

FA1KMIRC

1 letters.

2     MR. NELSON:  Thank you, Judge.

3     THE COURT:  Anything else from any other defense
4 counsel?

5     You people are very quiet.  All right.  Well, in that
6 case, I will see at least some of you on the 2nd of December.
7 And I will see everybody or everybody who is still going to
8 come to the party on February 18, which is when Mr. O'Neil has
9 set the final pretrial conference.  All right.

10     MR. NELSON:  Thank you, Judge.

11     MS. CUCINELLA:  Thank you, Judge.

12     (Adjourned)