```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4              v.                             14 CR 810 (CM)

 5   MOSHE MIRILISHVILI, DAMON
     LEONARD, JOMARIS JAVIER, RAY
 6   WILLIAMS, DORIAN AVERY,
     TASHEEN DAVIS, GANEENE GOODE,
 7   THOMAS WHITE, CAROLYN
     MIDDLETON, JOSEPH GRAY and
 8   KENNETH FREY,

 9              Defendants.

10   ------------------------------x

11                                             New York, N.Y.
                                               January 28, 2015
12                                             3:00 p.m.

13
     Before:
14
                     HON. COLLEEN MCMAHON,
15
                                         District Judge
16

17                      APPEARANCES

18   PREET BHARARA
          United States Attorney for the
19        Southern District of New York
     EDWARD DISKANT
20   BROOKE CUCINELLA
          Assistant United States Attorneys
21
     JOSHUA DRATEL
22        Attorney for Defendant Mirilishvili
     BY: WHITNEY SCHLIMBACH
23
     IRVING COHEN
24        Attorney for Defendant Leonard

25   RICHARD MA
          Attorney for Defendant Javier
```

F1STMIRC

APPEARANCES (Continued)

STEWART ORDEN
    Attorney for Defendant Williams

STEVEN FRANKEL
    Attorney for Defendant Avery

ALAN NELSON
    Attorney for Defendant Davis

ROBERT GOTTLIEB
    Attorney for Defendant Goode

FREEMAN, NOOTER & GINSBERG
    Attorney for Defendant White
BY:  THOMAS NOOTER

PATRICK JOYCE
    Attorney for Defendant Middleton

DIANE FERRONE
DANIEL PARKER
    Attorney for Defendant Gray

1                    (In open court)
2                    DEPUTY CLERK:  14 Criminal 810, United States of
3       America versus Mirilishvili, et al.
4                    Your appearances.
5                    MR. DISKANT:  Good afternoon your Honor, Edward
6       Diskant and Brooke Cucinella for the government.
7                    MS. CUCINELLA:  Good afternoon, your Honor.
8                    THE COURT:  Good afternoon.
9                    MR. NELSON:  Good afternoon, your Honor, Alan Nelson
10      appearing on behalf of Tasheen Davis, who is seated in the
11      first row wearing a green blouse.
12                   MR. COHEN:  Good afternoon, your Honor, Irving Cohen
13      appearing for David Leonard.  He's seated in the audience in
14      the third row.
15                   MR. MA:  Good afternoon, Judge, Richard Ma appearing
16      for Ms. Javier, seated in the third row to your right.
17                   MR. FRANKEL:  Good morning, Judge McMahon, Steven
18      Frankel for Dorian Avery, seated the closest to the Court in
19      the jury box.
20                   MR. JOYCE:  Good afternoon, your Honor, Patrick Joyce
21      on behalf of Carolyn Middleton.  Ms. Middleton is in the first
22      row, second from the right.
23                   MR. GOTTLIEB:  Your Honor, good afternoon, Robert
24      Gottlieb for Ganeene Goode, who is in the first row with the
25      prescribed sunglasses.

1               MS. SCHLIMBACH:  Good afternoon, your Honor, Whitney
2     Schlimbach standing in for Joshua Dratel for Moshe
3     Mirilishvili, sitting right behind me in the first row.
4               MR. ORDEN:  Your Honor, good afternoon, Stuart Orden
5     for Ray Williams, seated in the first row.
6               MR. NOOTER:  Good afternoon, your Honor, Thomas Nooter
7     for Thomas White, who is in the jury box.
8               MS. FERRONE:  Good afternoon, your Honor, Diane
9     Ferrone and Daniel Parker for Joseph Gray, who is in the jury
10    box as well.
11              THE COURT:  Okay.  Who is speaking for the government
12    today?
13              MR. DISKANT:  Your Honor, this is the first appearance
14    before the Court.  All the defendants were arraigned at the
15    time of their arrest in December.
16              THE COURT:  What were they arraigned for?
17              MR. DISKANT:  They were arraigned for conspiracy to
18    distribute narcotics.
19              THE COURT:  What is it that the government alleges
20    that they did?
21              MR. DISKANT:  We allege that all of the defendants
22    participated in a massive oxycodone distribution scheme.  The
23    scheme was centered at a purported pain management medical
24    clinic run by defendant Moshe Mirilishvili.  He was running a
25    purported medical office in upper Manhattan.  Also charged

1    along with the doctor are two of the office workers, those are
2    defendants Damon Leonard and Jomaris Javier, who are alleged to
3    have created fabricated paperwork and taken bribes in
4    connection with the facilitation of the scheme.
5             And then the remaining defendants are high-level drug
6    traffickers referred to in the indictment as crew chiefs,
7    because they are alleged to have run crews of patients in to
8    see the doctor so that each of these patients could obtain a
9    medically unnecessary prescription for oxycodone, which these
10   defendants then caused to be filled so that the pills could be
11   resold.
12            For that, all of the defendants are charged in a
13   single count of conspiracy to distribute narcotics, which is
14   the count on which they have now been arraigned.
15            THE COURT:  Okay.  And what's the status of discovery?
16            MR. DISKANT:  Your Honor, we have made two productions
17   of discovery to date, one approximately ten days ago and one
18   earlier today.  Given the volume of discovery and the number of
19   defendants, we retained an outside vendor that we are producing
20   this discovery to and that defense counsel can obtain that
21   material from.
22            To date we produced approximately 9,000 pages
23   consisting of phone records, prescription records, which are
24   known as BNE or Bureau of Narcotics Enforcement records, as
25   well as bank records.  We produced all of the applications made

|     |     |
| --- | --- |
| 1 | by the government as part of its investigation, that is, search |
| 2 | warrants and the like, as well as any post-arrest statements. |
| 3 | We have also produced all surveillance photos.  We |
| 4 | have produced more than two dozen consensually made recordings |
| 5 | that were made during the course of the investigation, as well |
| 6 | as several related items. |
| 7 | Outstanding -- |
| 8 | THE COURT:  What's the related items to consensual |
| 9 | recordings? |
| 10 | MR. DISKANT:  There were a number of recordings made |
| 11 | by the doctor himself, that is, he had surveillance photos |
| 12 | provided to law enforcement at various times during the |
| 13 | investigation.  There are a number of times, for example, where |
| 14 | the doctor was robbed by other drug traffickers.  The defendant |
| 15 | Mirilishvili, the doctor, that is, collected cash and had quite |
| 16 | a bit of cash with him.  So there are a number of times in |
| 17 | which he was robbed, and he provided us with the video |
| 18 | recordings which we are now producing back to all defendants. |
| 19 | Outstanding on the discovery front are the things that |
| 20 | we recovered the day of the arrest.  We executed two search |
| 21 | warrants, one on Dr. Mirilishvili's residence and the other on |
| 22 | the clinic.  We are in the process of processing that material. |
| 23 | We anticipate being able to produce the physical items, that |
| 24 | is, the documents and photographs and the like, very shortly. |
| 25 | To the extent computers were recovered, and there were |

1     a number, we'll be having a DEA lab forensically analyze those
2     so we can produce reports on those as soon as possible.  There
3     are also a number of phones that were recovered from the
4     defendants at the time of their arrest, and we will be making
5     an application to search those shortly so that we can produce
6     the contents of those as well.
7              THE COURT:  The phones haven't been searched?
8              MR. DISKANT:  Not yet.
9              THE COURT:  All right.  Ladies and gentlemen, what
10    shall we do?  Who is speaking?  Have you all had a chance to
11    confer?
12             MR. NELSON:  Your Honor, we have not all conferred.
13    Alan Nelson speaking.
14             THE COURT:  Yes, Mr. Nelson.
15             MR. NELSON:  With respect to the discovery that the
16    government has produced, what the production has been is the
17    productions have gone to DupeCoop.  I have reached out to
18    DupeCoop with respect to the first round of discovery.  They
19    are in process of culling that material in order to provide to
20    the defense.  The second set of discovery, I received the email
21    about approximately an hour ago indicating what that was.
22             I would suggest to the Court that we would need a
23    minimum of three months to start reviewing the discovery.  I
24    did notice, however, this second discovery production that the
25    government -- one of the items is surveillance from a pole

1     camera outside of the clinic for a one-year period of time.  So
2     I would ask the Court to potentially intervene and ask the
3     government --
4              THE COURT:  The government should know, not these two
5     assistants necessarily, but the government, as in the people at
6     One St. Andrews, knows my position on that.  Anything that the
7     government intends to rely on it can cull out and give to
8     defense counsel.  I will not allow the government to rely on
9     anything that it does not cull out and give to defense counsel.
10    Defense counsel is not charged with the responsibility of going
11    through a year's worth of surveillance video.
12             MR. DISKANT:  That is absolutely understood, your
13    Honor.
14             THE COURT: Oh, good.  So 90 days sounds about right
15    to everybody.  Production to DupeCoop is not production to you.
16             All right.  Do you have any idea when the first round
17    stuff is going to be duplicated?  When are you guys going to
18    get it?
19             MR. NELSON:  Judge, I had contacted DupeCoop early
20    last week.  I have not yet heard back from the proprietor as to
21    when it is going to be available.  I will speak with him again
22    tomorrow.
23             THE COURT:  Okay.  Well, if you have difficulty
24    finding out, call Mr. O'Neill, we'll ask DupeCoop when it's
25    going to be available.  Perhaps we can get an answer.

1          Okay.  Mr. O'Neill?
2          DEPUTY CLERK:  Wednesday, April 29th, 4 o'clock.
3          THE COURT:  Wednesday, April 29 at 4 o'clock.  Time is
4   excluded in the interest of justice because the defendants'
5   need for a speedy trial is outweighed by the need for the
6   government to complete production of discovery, none of which
7   has made it into the hands of counsel for defense and their
8   clients to have an opportunity to review it and to assess their
9   various positions.
10         Anything else from the folks at the back table?
11         MR. NOOTER:  Yes, your Honor, Thomas Nooter for
12  Mr. White.  Mr. White is in custody.  I'm in the process of
13  putting together a bail package but not yet ready to present
14  it.  It's possible that the government might consent to
15  whatever I propose, but assuming they don't, I just wanted to
16  know, should I contact chambers for a bail hearing?
17         THE COURT:  Always contact Mr. O'Neill.  I'm on trial
18  next week, so if it were next week we might send you to the mag
19  and might have you come in at the end of the day, but call
20  Mr. O'Neill.
21         MR. NOOTER:  Thank you very much.
22         THE COURT:  I understand we have another bail
23  application that is being made later.
24         Anything else?
25         MR. NELSON:  No, your Honor.

F1STMIRC

1           THE COURT:  Well, if you're not involved in
2    Mr. Avery's bail application, you can go.
3                               o0o