# Exhibit A

1    May 11, 2015, United States v. Zolot and Pliner

2    CHARGE TO THE JURY:

3              (Jury enters the courtroom.)

4              THE COURT:  Don't be seated.  Stay standing.  The jury

5    should remain standing.  Good afternoon.

6              THE JURY:  Good afternoon.

7              THE COURT:  There's an old tradition in the courts of

8    our Commonwealth and in the Federal Court that at this stage of

9    the proceeding, the judge stands and faces the jury and the

10   jury faces the judge.  This is the best way that I know how to

11   symbolize the important role that we both play in these

12   proceedings.  My job has been three-fold:  The first was to

13   impanel a fair and impartial jury.  On behalf of everyone in

14   this room, I want to thank you for service.  There was a long

15   line of people -- you remember them way back then -- who

16   couldn't serve or wouldn't serve or had an issue.  You all

17   agreed to serve, a very important constitutional role, and I

18   want to thank you all for serving.

19             My second job was to rule on the evidentiary

20   objections.  Sometimes we did it a little before you came in in

21   the morning, and I apologize now if we were a little delayed

22   coming out.  Sometimes we did it after you left.  Sometimes we

23   did it in front of you.  Now my third and final task is to give

24   you my instructions of law.  You must follow those instructions

25   whether you agree with them or not.

1    Now, I've got the easy job and you've got the tough

2    job because you're the ones who must render a unanimous

3    verdict.  You are the ones who must decide the credibility of

4    the witnesses.  "Verdict" means to speak the truth, and that is

5    your job.

6    My jury instructions are divided into three portions.

7    None of them are more important than the other.  The first is

8    quite general, what is evidence, what isn't evidence.  It goes

9    to the very important constitutional principles that govern

10   this case, and I remind you that when I asked you these

11   questions on the day of impanelment, you all said you could

12   follow these basic constitutional principles.  The middle

13   portion is very specific to the verdict form that I handed out

14   to you before the closing arguments.  I am going to tell you

15   the elements that the government must prove beyond a reasonable

16   doubt.  And my third part of this jury instructions is what I

17   call the mechanics of deliberation:  how to choose a

18   foreperson, what is the role of the alternate, and what does it

19   mean to deliberate?

20   Now, let me also say that I will be giving you a tape

21   recording of my charge so that you can get going tomorrow on it

22   if you're too tired to take notes tonight.  It's been a long

23   day.  But also Lee will be working on a transcript of the

24   charge, so sometime tomorrow you'll have a full transcript of

25   the charge.  Nonetheless, it might be helpful to jot down

1    little notes about what I'm saying so then you can know where
2    to look for that portion of the charge that you may need to
3    look.  So why don't we sit down and we'll get going.

4        Let me begin with the role of the Court.  These
5    instructions are about the law you must apply.  I do not mean
6    any of my instructions to be understood by you as a comment by
7    me on the facts or the evidence in this case.  You are the
8    judges of the facts and the sole judges of the credibility of
9    the witnesses.  You should consider these instructions as a
10   whole.  I may repeat some portions, but that does not mean that
11   they are more important.  All of the instructions are equally
12   important.  Even if you disagree with some of the rules of law
13   or don't understand the reasons for them, you're bound to
14   follow them as jurors in this case.  This is a fundamental part
15   of our system of government by law rather than by the
16   individual views of the judge and the jurors who have the
17   responsibility for deciding a specific case.

18       To the extent I say something differently from what
19   the attorneys say, you must follow my instructions of law.
20   However, as I just emphasized, I am not the judge of the facts
21   and have no opinion as to the appropriate outcome of this case.
22   You must disregard any facial expressions you think I may have
23   had.  Also, if at any point, either beginning with impanelment
24   but all the way through, I state the evidence differently from
25   your memory of the evidence, you must disregard my memory of

1  the evidence.  It's your memory that counts.

2       What is your function as the jury?  Your function is

3  to determine the facts.  You are the sole and exclusive judges

4  of the facts.  You decide the weight, effect, and value of the

5  evidence.  You also decide the credibility of the witnesses.

6  Once you determine the facts, it is your duty to apply those

7  facts to the law as I explain it.  You must decide whether

8  Dr. Zolot and Ms. Pliner are guilty or not guilty of the

9  charges that the United States has brought against them.  You

10  must determine the facts without prejudice, fear, favor, bias,

11  or sympathy.  You also may not consider any personal feelings

12  you may have about the race, religion, national origin, sex, or

13  age of Dr. Zolot, Nurse Pliner, or of any witness who testified

14  during the trial.  You must determine the facts solely from a

15  fair consideration of the evidence.  If you let fear, favor,

16  prejudice, bias, or sympathy enter into your deliberations,

17  there is a risk that you will not arrive at a just and true

18  verdict.

19       The issue before you is not whether you are for or

20  against the crimes charged.  Rather, the issue is whether the

21  government has proven beyond a reasonable doubt that these

22  defendants are guilty of the crimes charged.  You also should

23  not be influenced by the fact that the United States of America

24  has brought this case.  All parties, the government, Dr. Zolot,

25  and Ms. Pliner, stand as equals before the Court.  So when you

1    go back into the jury room, the question can never be, will the

2    government win or lose the case?  You represent the people of

3    the United States of America, and the people of this country

4    always win when justice is done.

5         You're not to decide the case based on what you have

6    heard or read outside the courtroom.  You cannot speculate or

7    guess as to what might or might not have happened.  You cannot

8    allow yourself to be influenced by your view of the nature of

9    the crimes with which the defendants have been charged or the

10   consequences of your verdict.  Instead, you must confine your

11   deliberations to the evidence and nothing but the evidence.

12        The lawyers were allowed to comment during the trial

13   both on the evidence and the rules of law, but if they have

14   said anything about the evidence different from your memory,

15   your collective memory controls; and if what they've said about

16   the law seems to have a different meaning in any way from my

17   instructions, you must be guided by these instructions.

18        I'm moving on to the question of, what is evidence?

19   The evidence from which you are to decide what the facts are

20   consists of the sworn testimony of the witnesses, both on

21   direct and cross-examination, regardless of who called the

22   witness, and the exhibits that have been received into

23   evidence.  You're not limited solely to what you see and hear

24   as the witnesses testify.  You are permitted to draw from facts

25   you find to have been proven such reasonable inferences as you

1    believe are justified in light of common sense and personal

2    experience.

3         The mere number of witnesses, the length of the

4    testimony, or the number of exhibits has no bearing on what

5    weight you give to the evidence or whether you find that the

6    government's burden of proof has been met.  Weight does not

7    mean the amount of evidence.  Weight means your judgment about

8    the credibility and importance of the evidence.

9         As I mentioned during the trial, in light of the

10   volume of documents in this case, both the government and

11   Dr. Zolot and Nurse Pliner have introduced into evidence

12   selected portions of various patient files to which they've

13   called your attention.  These exhibits are available to you in

14   the jury room; and for most patients as to whom any portions of

15   their file have been admitted into evidence, you will also have

16   it on electronic form, that screen that's in your room, and

17   we'll show you how to use it, for the entire patient file,

18   which you're free to examine on the system.  If requested, we

19   will also provide -- and I think you have a lot of them

20   anyway -- full copies of the full patient files.

21        As I mentioned, it is your duty to determine the

22   facts.  In doing so, you can consider only the evidence which I

23   have admitted.  Certain things, though, are not evidence in the

24   case, and I'm about to go through things that are not evidence

25   in this case.  The opening statements and closing arguments

1   made by the lawyers are not evidence in the case.  Questions of

2   counsel are not evidence.  Only the witnesses' answers are

3   evidence.  Questions that are not answered or as to which

4   objections were sustained are not evidence in the case.  The

5   function of the lawyers in making their arguments is to point

6   out those things that are most significant and helpful to their

7   side of the case, and, in so doing, to call your attention to

8   certain facts or inferences that might otherwise escape your

9   notice; but in the final analysis, it is your recollection and

10  interpretation of the evidence that controls in this case.

11         At times during the trial lawyers made objections.  In

12  fact, often during the trial lawyers made objections, sometimes

13  to questions asked by other lawyers and sometimes it was to the

14  answers given by the witness, and they asked me to make certain

15  rulings.  So sometimes I said "sustained," which means I agreed

16  with the basis for it and you couldn't hear it.  Sometimes I

17  said "overruled," and you can treat that evidence like any

18  other.  These rulings are only to the legal questions that I

19  had to determine and should not influence your thinking.  So

20  when I sustained an objection to a question, sometimes the

21  witness answered anyway.  You cannot consider any answer that

22  came in after I sustained an objection.  And also, to the

23  extent they didn't answer, don't try to speculate or guess what

24  the right answer may have been.  So sometimes I told you not to

25  consider a particular statement and I would strike it, so don't

1  consider it for anything. Put it out of your mind, and don't

2  refer to that statement in your deliberations.

3  Now, sometimes I said something was allowed in for a

4  limited purpose. Remember, sometimes it was hearsay, but I

5  said, well, maybe you can consider it for somebody's state of

6  mind. So you should consider the evidence only consistent with

7  the limitations that I placed on it.

8  Now, often during the trial I made comments to

9  lawyers, sometimes in connection with objections or timing, or

10 occasionally asked a question of a witness, or if I thought

11 something wasn't clear, or wasn't speaking loudly enough, which

12 often happened. Don't assume from anything I may have said

13 that I have an opinion concerning any of the issues of the

14 case. Except for my instructions to you on the law, you should

15 disregard anything I may have said during the trial in arriving

16 at your findings as to the facts.

17 Now, let me talk to you about direct and

18 circumstantial evidence. You remember I talked to you about it

19 at the beginning of the trial, direct and circumstantial

20 evidence. There are two types of evidence which you may use to

21 determine the facts of the case, direct evidence and

22 circumstantial evidence. Direct evidence is direct proof of a

23 fact such as the testimony of an eyewitness, that the witness

24 saw something or heard something or felt something. That's

25 direct testimony. Circumstantial evidence is different.

1    Circumstantial evidence is proof of a fact or facts from which

2    you may draw the inference by reason and common sense that

3    another fact exists, even though it has not been proven

4    directly.  Any inferences or conclusions that you draw must be

5    reasonable and natural based on your common sense and

6    experience of life.  In a chain of circumstantial evidence, it

7    is not required that each one of your inferences and

8    conclusions be inevitable, but it is required that each of them

9    be reasonable.

10          Direct and circumstantial evidence have equal standing

11   in the law.  That is, with respect to what weight shall be

12   given to evidence before you, the law makes no distinction

13   between direct and circumstantial evidence.  Also, no greater

14   degree of certainty is required of circumstantial evidence than

15   of direct evidence.  In reaching your verdict, you can draw and

16   rely upon inferences from the evidence.  You are to consider

17   all the evidence in the case and give each item of evidence the

18   weight you believe it deserves; but whether the evidence is

19   direct evidence or circumstantial evidence, the government must

20   prove Dr. Zolot's and Nurse Pliner's guilt beyond a reasonable

21   doubt from all the evidence in the case.

22          Now let me discuss for a minute the credibility of

23   witnesses.  As jurors, your function is to evaluate the

24   exhibits that have been introduced and to determine the

25   credibility of the witness's testimony.  It is your function to

1   determine the believability of each witness who testified.

2   You're free to decide that you believe all of what a witness

3   told you, none of what a witness told you, or some of what a

4   witness told you. You're free to do that in accordance with

5   your collective judgment as to the believability of what it was

6   that the witness told you while testifying.

7         Now, nothing I say can tell you all the important ways

8   to go about assessing credibility. You know, often when I have

9   to make facts, I'd give anything to have a whole jury of people

10   to talk about credibility, but I suggest there are certain

11   things you should consider, like the conduct and demeanor of

12   the witness while testifying, the frankness or lack of

13   frankness that the witness showed while testifying, the

14   reasonableness or unreasonableness of the witness's testimony,

15   the probability or improbability of the testimony, the

16   opportunity or lack of opportunity that the witness had to see

17   and know the facts about which he or she was testifying, the

18   accuracy of the witness's recollection, the degree of

19   intelligence shown by the witness, the witness's prior conduct

20   for truthfulness, and whether the witness attempted to fill in

21   gaps in his or her memory of events with information he or she

22   obtained after the event. You also may consider whether the

23   witness has a motive for testifying and the interest or lack of

24   interest that the witness may have in the outcome of the case.

25   You may take into consideration the character and the

1    appearance of the witness at trial and any bias he or she has

2    shown in his or her testimony.  The list is not exhaustive but

3    rather a list of examples of the kind of factors you can take

4    into account and should account for in making a credibility

5    judgment.

6         Let me discuss for a minute expert witnesses.  You

7    have heard testimony from persons described as experts.  An

8    expert witness has special knowledge or experience that allows

9    the witness to give an opinion.  Expert testimony should be

10   considered just like any other testimony.  You may accept or

11   reject it and give it as much weight as you think it deserves.

12   In weighing the testimony, you should consider the facts that

13   generally bear upon the credibility of a witness as well as

14   each witness's education and experience, the soundness of the

15   reasons given for the opinion, the acceptability of the methods

16   used, and all the other evidence in the case.

17        In this case, you heard expert testimony concerning

18   the standards and practices in medical practice.  While you may

19   find that testimony useful, ultimately it is for you and you

20   alone to decide whether the witness prescribed controlled

21   substances not in the usual course of professional practice and

22   for other than a legitimate medical purpose.

23        Now let me talk about inconsistencies in the evidence.

24   You may consider inconsistencies or differences as you weigh

25   the evidence, but you do not have to discredit testimony merely

1    because there are inconsistencies or differences in the

2    testimony of a witness or between the testimony of different

3    witnesses.  Two or more witnesses witnessing an incident or

4    transaction may see or hear it differently.  In weighing the

5    effect of any consistency or difference, you may consider

6    whether it is a matter of importance or an unimportant detail,

7    and whether it results from innocent error or intentional

8    falsehood.

9         You're not required to accept testimony, even if it is

10   uncontradicted.  You may decide because of the witness's

11   bearing and demeanor, or because of inherent improbability, or

12   for any other reasons sufficient to you, that the testimony is

13   not worthy of belief.  As I mentioned before, you can accept

14   all of a witness's testimony, reject all of it, or accept parts

15   and reject others.

16        Now, let me remind you of a limiting instruction I

17   gave you way at the start of the case, and I actually may have

18   given it to you a second time during the course of the trial as

19   well.  The government does not contend that the controlled

20   substances prescribed by the defendants caused the deaths of

21   the patients named in the indictment.  I instruct you, it is

22   not an issue in this case whether the drugs prescribed by the

23   defendants caused the deaths of the patients.  You are not to

24   consider that question in this case.

25        All right, now, let's stand and stretch because I am

1     about to embark on the United States Constitution.  Okay, why

2     don't we stand and stretch.

3              (Pause.)

4              I begin with the presumption of innocence.  It is a

5     cardinal principle of our system of justice that every person

6     accused of a crime is presumed to be innocent unless and until

7     his or her guilt is established beyond a reasonable doubt.

8     This presumption is not a mere formality.  It is a matter of

9     the most important substance.  The presumption of innocence

10    alone may be sufficient to raise a reasonable doubt and to

11    require the acquittal of a defendant.

12             The defendants before you, Joseph Zolot and Lisa

13    Pliner, have the benefit of that presumption of innocence

14    throughout the trial, and you are not to convict him or her --

15    and, of course, you have to consider each person separately --

16    and you're not to convict him or her of a particular charge

17    unless you are persuaded of his or her guilt of that charge

18    beyond a reasonable doubt.

19             The presumption of innocence until proven guilty means

20    that the burden of proof is always on the government to satisfy

21    you that the defendants are guilty of the crime with which they

22    are charged beyond a reasonable doubt.  It is a heavy burden,

23    but the law does not require that the government prove guilt

24    beyond all possible doubt.  Proof beyond a reasonable doubt is

25    sufficient to convict.  The burden never shifts to the

1    defendants.  It is always the government's burden to prove each

2    of the elements of the crimes charged beyond a reasonable doubt

3    by the evidence and the reasonable inferences to be drawn from

4    the evidence.  Each defendant has the right to rely upon the

5    failure or inability of the government to establish beyond a

6    reasonable doubt any essential element of a crime charged

7    against him or her.

8            Now, I will be going through these elements, each one

9    of which the government must prove beyond a reasonable doubt.

10   If after a fair and impartial consideration of all the evidence

11   you have a reasonable doubt as to Dr. Zolot's or Ms. Pliner's

12   guilt of a particular crime, it is your duty to find him or her

13   not guilty of that crime.  On the other hand, if after a fair

14   and impartial consideration of all the evidence you are

15   satisfied beyond a reasonable doubt of Dr. Zolot's or

16   Ms. Pliner's guilt of a particular crime, you should vote to

17   convict him or her.

18           So what is the burden of proof here?  The United

19   States has the burden of proving beyond a reasonable doubt that

20   Dr. Zolot and Ms. Pliner are guilty of the crimes charged by

21   the indictment.  The burden of proof rests on the United States

22   and never shifts to the defendants.  The defendants are not

23   required to prove anything to you or present any evidence.

24   Because of the constitutional right to the presumption of

25   innocence, the government has the burden of proof beyond a

1    reasonable doubt on every essential element of the crime

2    charged.

3         So what is proof beyond a reasonable doubt?  What is

4    proof beyond a reasonable doubt?  Reasonable doubt is a doubt

5    based on reason and common sense.  The law does not require

6    that the government prove guilt beyond all possible doubt --

7    little in life can be proven to an absolute certainty -- but

8    the law does require that the government prove each of the

9    elements of the crime charged beyond a reasonable doubt.  It is

10   not sufficient for the government to establish a probability,

11   though a strong one, that an element of a crime charged is more

12   likely to be true than not true.  That is not enough to meet

13   the government's heavy burden of proof beyond a reasonable

14   doubt.

15        A reasonable doubt may arise not only from the

16   evidence produced but also from a lack of evidence.  Of course,

17   a defendant never is to be convicted based upon suspicion or

18   conjecture.  If after a fair and impartial consideration of all

19   the evidence you have a reasonable doubt, it is your duty to

20   acquit.  On the other hand, if after a fair and impartial

21   consideration of all the evidence you are satisfied that the

22   government has proven each element of the charges in the

23   indictment beyond a reasonable doubt, you should vote to

24   convict.  It is not necessary for you to conclude that the

25   defendants are factually innocent in order to return a "not

1    guilty" verdict.  Such a verdict means only that the

2    prosecution has not met its burden of proving the defendants'

3    guilt beyond a reasonable doubt.

4          The defendants have not testified in this trial.  It

5    is the law of the United States that the defendant has an

6    absolute right not to testify.  A defendant is under no

7    obligation or need to do so.  There are many reasons for not

8    testifying, reasons that are quite consistent with innocence.

9    Therefore, you are not to speculate or engage in conjecture as

10    to those reasons, and, as I have said, you are to draw no

11    adverse inferences whatsoever.  If you were to do so, you would

12    be doing our nation and our body of law a disservice and an

13    injustice.  Moreover, you would be violating your solemn oath

14    as jurors.  Once again, it is the burden of the United States

15    to prove all the elements of the charges beyond a reasonable

16    doubt, and the defendant has no burden whatsoever.

17          Now, let me talk to you for a minute about punishment.

18    The question of possible punishment of a defendant is of no

19    concern to you, the jury, and should not in any sense enter

20    into or influence your deliberations.  The duty of imposing a

21    sentence rests exclusively upon the Court.  Your function is to

22    weigh the evidence in the case and to determine whether or not

23    the defendant is guilty beyond a reasonable doubt solely based

24    on the evidence.  Under your oaths as jurors, you cannot allow

25    a consideration of the punishment, which may be imposed upon

1    either defendant if he or she is convicted, to influence your

2    verdict in any way or enter into your deliberations in any

3    sense.

4         Now, I have just finished what I call part one, which

5    is, generally speaking, what's evidence, what are the

6    constitutional principles?  I am now embarking on part two,

7    which is very specific to the elements of the offenses charged,

8    so I hope you get out that verdict form.  Does everyone still

9    have one?  So, please, why don't you pull that out.  Is

10   everyone okay?  Did someone leave it back in the lunchroom,

11   anybody?  Set to go?  Good.

12        All right, so Count 1.  In Count 1 Dr. Zolot and

13   Ms. Pliner are accused of conspiring to commit a federal crime;

14   specifically, conspiracy to distribute controlled substances,

15   methadone, oxycodone, and fentanyl, knowingly and intentionally

16   outside the usual course of professional practice and not for

17   legitimate medical purposes.  It is against the federal law to

18   conspire with someone to commit this crime.  Now, I'm going to

19   talk to you and give you the specific elements of that crime

20   later in the jury instructions.  Right now, though, let me talk

21   to you about what the government must prove to prove

22   conspiracy.

23        For you to find each defendant guilty of conspiracy,

24   you must be convinced that the government has proven each of

25   the following things beyond a reasonable doubt.  These

1   things -- and I keep referring to them as elements.  Elements

2   mean the things the government has to prove beyond a reasonable

3   doubt.  First, the government must prove that the agreement

4   specified in the indictment, and not some other agreement or

5   agreements, existed between at least two people to distribute

6   methadone, oxycodone, and/or fentanyl, knowingly and

7   intentionally, outside the usual course of professional

8   practice and not for a legitimate medical purpose.  So I'm

9   going to repeat that so you can get that down:  First, that the

10  agreement specified in the indictment, and not some other

11  agreement or agreements, existed between at least two people to

12  distribute methadone, oxycodone, and/or fentanyl, knowingly and

13  intentionally, outside the usual course of professional

14  practice and not for a legitimate medical purpose.

15          Although you have heard about other medications in

16  this case such as benzodiazepines, Soma and others, there is no

17  charge that Dr. Zolot and Nurse Pliner committed a crime by

18  distributing those other substances, whether in a conspiracy or

19  otherwise.  However, this evidence of other drugs may be

20  relevant to other issues in the case.

21          So the second element the government must prove beyond

22  a reasonable doubt is that Dr. Zolot and Ms. Pliner willfully

23  joined in the agreement.  That is, they must prove that

24  Dr. Zolot and Ms. Pliner willfully joined in that agreement.

25          What is a conspiracy?  A conspiracy is an agreement,

spoken or unspoken.  The conspiracy does not have to be a
formal agreement or a plan in which everyone involved sat down
together and worked out all the details, but the government
must prove beyond a reasonable doubt that those who were
involved shared a general understanding about the crime.  Mere
similarity of conduct among various people or the fact that
they may have been associated with each other or discussed
common names and interests does not necessarily establish proof
of the existence of a conspiracy, but you may consider such
factors.

What does "willfully" mean?  To act willfully means to
act voluntarily and intelligently and with a specific intent
that the underlying crime be committed; that is to say, with
bad purpose either to disobey or disregard the law, not to act
by ignorance, accident, or mistake.  The government must prove
two types of intent beyond a reasonable doubt before each
defendant can be said to have willfully joined in a conspiracy:
an intent to agree and an intent, whether reasonable or not,
that the underlying crime be committed.  Mere presence at the
scene of a crime is not alone enough, but you may consider it
among other factors.  Intent may be inferred from the
surrounding circumstances.

Proof that Dr. Zolot and Ms. Pliner willfully joined
in an agreement to illegally distribute methadone, oxycodone,
and/or fentanyl must be based upon evidence of his or her own

1   words and actions.  You need not find that he or she agreed

2   specifically to all of the details of the crime, or knew about

3   all the details of the crime, or that he or she participated in

4   each act of the agreement or played a major role, but the

5   government must prove beyond a reasonable doubt that he or she

6   knew the essential features and general aims of the venture.

7   On the other hand, a person who has no knowledge of a

8   conspiracy but simply happens to act in a way that furthers

9   some object or purpose of a conspiracy does not thereby become

10  a conspirator.

11          The government does not have to prove that the

12  conspiracy succeeded or was achieved.  The crime of conspiracy

13  is complete upon the agreement to distribute methadone,

14  oxycodone, and/or fentanyl other than for a legitimate medical

15  purpose and not in the usual course of professional practice.

16          The government alleges that the conspiracy charged

17  against each defendant in Count 1 existed from October, 2003,

18  to on or about May 17, 2007.  In determining whether the

19  defendants conspired as charged, you need not find that the

20  conspiracy existed at the exact time or over the entire period

21  charged.  The government must prove beyond a reasonable doubt

22  that the conspiracy was in existence from some period of time

23  reasonably near the time alleged or for some portion of the

24  period alleged.

25          You have heard evidence concerning certain alleged

1    acts and statements of Dr. Zolot and Ms. Pliner.  The

2    reasonably foreseeable acts, declarations, statements, and

3    omissions of any member of the conspiracy and in furtherance of

4    the common purpose of the conspiracy are deemed under the law

5    to be the acts of all the members, and all the members are

6    responsible for such acts, declarations, statements, and

7    omissions.  This is so even if the acts or statements in

8    question were done or made in the absence of a defendant and

9    without his or her knowledge.

10          Before you consider these statements or acts of an

11   alleged co-conspirator in deciding the issue of either

12   defendants' guilt, you must determine that the acts and

13   statements were made during the existence and in furtherance of

14   the unlawful scheme.  If the acts were done or the statements

15   made by someone whom you do not find to have been a member of

16   the conspiracy, or if they were not done or said in furtherance

17   of the conspiracy, then they may not be considered by you as

18   evidence against either defendant.

19          So as you heard several times over the course of the

20   trial, I want to remind you that you cannot consider any acts

21   or statements by Dr. Zolot against Ms. Pliner prior to October,

22   2003 -- remember we kept hearing that date -- prior to October,

23   2003, the time when she joined in the medical practice.  You

24   should also not consider any acts or statements by Dr. Zolot

25   against Ms. Pliner or by Ms. Pliner against Dr. Zolot that

1    occurred after the conspiracy ended, allegedly on or about

2    May 17, 2007.

3           So I just finished Count 1, and I'm going to go 2

4    through 8, to Counts 2 through 8.

5           Now, I just want to just focus you on this to be very

6    careful.  I tried to be very careful here that some of these

7    counts are only against one person and some are against both,

8    so please focus on that as you're going through it.

9           In Counts 2 through 8 of the indictment, the

10   government charges that the defendants distributed controlled

11   substances to certain named individuals on certain dates --

12   and, by the way, I've put the dates down there so that you're

13   focused on the correct prescription that's being charged -- on

14   certain dates other than for a legitimate medical purpose and

15   outside the usual course of professional practice in violation

16   of the Controlled Substances Act.  All right, so I'm going to

17   talk to you now about that.

18          Under federal law, someone who is a practitioner is

19   authorized to prescribe drugs in the course of professional

20   practice.  The definition of "practitioner" includes licensed

21   doctors and nurses.  A practitioner who in good faith writes

22   prescriptions for drugs in the regular course of a legitimate

23   professional practice is protected from prosecution under the

24   statute, but practitioners who act outside the usual course of

25   professional practice and prescribe drugs for no legitimate

1   medical purpose may be guilty of violating the law.

2          For you the jury to find each defendant guilty of

3   distributing a controlled substance other than for a legitimate

4   medical purpose and outside the usual course of professional

5   practice, you must find that the government proved each of the

6   following elements beyond a reasonable doubt.  The government

7   must prove beyond a reasonable doubt, first, that the defendant

8   distributed methadone, oxycodone, and/or fentanyl, not any

9   other medication.  And the distribution of the controlled

10  substance, as I mentioned, is on the verdict slip.  So, first,

11  the government must prove beyond a reasonable doubt that the

12  defendant distributed the controlled substance charged in the

13  count.

14         Second, the government must prove that the defendant

15  acted knowingly and intentionally.  Second, the government must

16  prove that the defendant acted knowingly and intentionally.

17         And, third, the government must prove beyond a

18  reasonable doubt that the defendant distributed the drug other

19  than for a legitimate medical purpose and not in the usual

20  course of professional practice.  Third, the government must

21  prove beyond a reasonable doubt that the defendant distributed

22  the drug other than for a legitimate medical purpose and not in

23  the usual course of professional practice.

24         The first thing you need to determine is whether the

25  defendant distributed controlled substances.  Methadone,

1    oxycodone, and fentanyl are controlled substances within the

2    meaning of the law.  "Distribute" means to transfer a

3    controlled substance to another person.  A medical professional

4    such as a doctor or nurse practitioner can lawfully distribute

5    a controlled substance to an individual by writing a

6    prescription to be filled at a pharmacy.  However, if that

7    medical professional has written the prescription other than

8    for a legitimate medical purpose and outside the usual course

9    of professional practice, that medical professional has

10   distributed a controlled substance within the meaning of the

11   statute.

12        The second element that the government must prove

13   beyond a reasonable doubt is that when the defendant prescribed

14   the drug or drugs, they did so know knowingly and

15   intentionally.  That is, the government must prove that the

16   defendant acted voluntarily and intentionally and not out of

17   mistake, accident, or carelessness.

18        The third and final element the government must prove

19   beyond a reasonable doubt is that the defendant knowingly and

20   intentionally prescribed the drug other than for a legitimate

21   medical purpose and outside the usual course of professional

22   practice.  In making a medical judgment concerning the right

23   treatment for an individual patient, medical professionals have

24   discretion to choose among a wide range of available options.

25   Therefore, in determining whether the defendant acted without a

legitimate medical purpose, you should examine each defendant's actions and the circumstances surrounding them.

It is not enough for you to find that each defendant simply wrote the prescriptions at issue here. The government must prove that the medical professional intentionally and knowingly acted outside the usual course of medical practice and without a legitimate medical purpose when he or she wrote the prescription. That is, the government must prove beyond a reasonable doubt that defendants believed they were acting illegally under a criminal drug law by writing the prescription.

This case is not a medical malpractice lawsuit. A medical professional becomes a criminal not when he or she is a bad or negligent physician or nurse practitioner but when he or she ceases to be a medical professional at all. You must make this determination with respect to the charged conduct in each of the counts, including the conspiracy count. Mere negligence, malpractice, carelessness, or sloppiness is not enough. In order to convict the defendant of distributing controlled substances in violation of the Controlled Substances Act, you must find that the government has proven beyond a reasonable doubt that the defendants intended to act as drug pushers rather than as medical professionals by knowingly and intentionally acting outside the usual course of professional practice and not for a legitimate medical purpose.

1          It is up to you to resolve conflicting testimony and

2     evidence as to whether the government has proven that the

3     defendants knowingly and intentionally acted outside the usual

4     course of professional practice and not for legitimate medical

5     purpose, taking into account the expert testimony you have

6     heard over the course of the trial as well as all of the

7     evidence introduced by the parties.

8          I instruct you that the Massachusetts -- you remember

9     the Massachusetts Board of Registration -- I instruct you that

10    the Massachusetts Board of Registration in Medicine Prescribing

11    Practices Policies and Guidelines is relevant but not binding

12    on you in making this determination.  Those guidelines are not

13    the law.  They are guidelines.  Any violation of those

14    guidelines is not sufficient for you to find that either

15    defendant is guilty of the crimes the government has charged.

16    However, you may consider them in deciding whether the

17    government has met its burden of proving that the defendants

18    knowingly and intentionally acted outside the usual course of

19    professional practice and not for a legitimate medical purpose.

20         In deciding whether each defendant acted knowingly,

21    you may infer that the defendant had knowledge of a fact if you

22    find that he or she deliberately closed his or her eyes to a

23    fact that otherwise would have been obvious to him or her.  In

24    order to infer knowledge, you must find that two things have

25    been established:  first, that the defendant was aware of a

1    high probability of the fact in question, and, second, that

2    each defendant consciously and deliberately avoided learning of

3    that fact; that is to say, that each defendant willfully made

4    himself or herself blind to that fact.

5         It is entirely up to you to decide and determine

6    whether Dr. Zolot or Nurse Pliner deliberately closed his or

7    her eyes to the fact, and, if so, what inference should be

8    drawn from it.  However, it is important to bear in mind,

9    again, that mere negligence or mistake and failing to learn the

10   fact is not sufficient.  There must be a deliberate effort to

11   remain ignorant of the fact.

12        Let me talk to you about good faith.  The government

13   must prove that the defendants did not act in good faith.  A

14   medical professional's good faith is relevant to your

15   determination of whether the defendant intentionally acted

16   outside the bounds of accepted medical practice and without a

17   legitimate medical purpose.  A doctor or nurse practitioner

18   distributes a drug in good faith in medically treating a

19   patient when he or she distributes the drug for a legitimate

20   medical purpose and in the usual course of medical practice.

21   Good faith in this context means good intentions and the honest

22   exercise of professional judgment as to a patient's needs.  It

23   means that the doctor or nurse acted in accordance with what he

24   or she reasonably believed to be a standard of medical practice

25   generally recognized and accepted in the United States.  Good

1  faith is not merely a practitioner's sincere intentions towards

2  his or her patients but also a sincere attempt to conduct

3  himself or herself in accordance with what he or she reasonably

4  believed to be proper medical practice.

5        The defendants do not have to prove to you that they

6  acted in good faith.  Rather, the burden is on the government

7  to prove to you beyond a reasonable doubt that the defendant

8  acted without a legitimate medical purpose and outside the

9  course of usual medical practice.  The government must prove

10  beyond a reasonable doubt that the defendants did not act in

11  good faith with respect to each of the eight counts, including

12  the conspiracy charge and the seven charged distributions.  If

13  you find that the defendants acted in good faith in

14  distributing the drugs, then you must find him or her not

15  guilty.

16        Now, you may notice that in Counts 4 and 5, both

17  Ms. Pliner and Dr. Zolot are charged with the distribution, and

18  Dr. Zolot is charged -- let me back up.  Ms. Pliner is charged

19  with the distribution, and Dr. Zolot is charged with aiding and

20  abetting.  What does aiding and abetting mean?  To aid and abet

21  means intentionally to help someone else commit a crime.  To

22  establish aiding and abetting, the government must prove beyond

23  a reasonable doubt two things, two elements:

24        First, that Nurse Pliner committed the crime knowingly

25  and intentionally writing the charged prescriptions for Thomas

1   Dunphy outside the usual course of professional practice and
2   not for legitimate purpose.  And, second, the government must
3   prove beyond a reasonable doubt that Dr. Zolot knowingly and
4   willfully -- that is, deliberately and intentionally with a
5   specific intent to facilitate the crime as I have defined it --
6   associated himself in some way with those crimes and willfully
7   participated in those crimes as he would in something he wished
8   to bring about through some affirmative act in furtherance of
9   the offense.  This means that the government must prove beyond
10  a reasonable doubt that the defendant consciously shared the
11  other person's knowledge of the underlying criminal act and
12  intended to help her.

13          The defendant need not perform the underlying criminal
14  act, be present when it is performed, or be aware of the
15  details of its execution to be guilty of aiding and abetting,
16  but a general suspicion that an unlawful act may occur or that
17  something criminal is happening is not enough.  Mere knowledge
18  that a crime is being committed also is not sufficient to
19  establish aiding and abetting.  An act is done willfully if it
20  is done voluntarily and intentionally with the intent that
21  something the law forbids be done; that is to say, with bad
22  purpose either to disobey or disregard the law.

23          Now, one final thing.  You've heard testimony that
24  Defendant Pliner was an employee of the Nonsurgical Orthopedic
25  Center.  It is not a defense that the defendant was simply

1    following orders if the defendant was aware of the illegality

2    of her conduct.  In other words, the fact that criminal conduct

3    was authorized, directed, or orchestrated by another individual

4    or that the defendant was acting at the direction of another

5    individual is not a defense if the government proves beyond a

6    reasonable doubt that the defendant was aware that the conduct

7    was illegal.

8         So now -- I'm sure you're thrilled to hear this -- I

9    am moving into what I call the third portion, which is the

10   mechanics of getting this case to you for deliberation.  So let

11   me talk to you, what do you do when you go back into that jury

12   room?  What's your first step?  Your first step is to pick a

13   foreperson.  Now, when I was a young judge -- I'm not

14   anymore -- when I was a new judge on this bench 20 years ago,

15   actually, I used to look at you and figure out who was taking

16   notes and who had come on time and the first thing crack in the

17   morning.  I don't anymore.  You all have been with each other

18   for a few months.  You know who will be the first person, the

19   best person to be your foreperson, and what you should do is go

20   back into that jury room and choose the foreperson.  But the

21   foreperson is not more equal than the rest of you.  You heard

22   them say, "We are content with you, the jury."  You have been a

23   fabulous jury.

24        So the foreperson has three obligations to me.  You

25   notice things come in threes?  The first is, the foreperson

1    will lead the discussions, but the foreperson is not more equal

2    than the rest in the sense that all the votes are the same.

3    The second is, the foreperson fills in the verdict slip, fills

4    in the verdict slip; and the verdict must be unanimous, twelve

5    out of twelve, must be unanimous.  I never want to hear a

6    running tally:  "Well, we're going at six-six and moving up to

7    seven."  I don't want to hear it.  I don't want to hear from

8    anyone until the verdict is unanimous.  So the foreperson fills

9    in that verdict slip, certifies it is unanimous, dates it and

10   signs it.

11        The foreperson will also write me questions.  I've

12   gone through a lot.  Today has been an amazing day, right?

13   I've gone through a lot.  You'll have a transcript.  You'll

14   have the tape recording.  You may have a legal question, or it

15   may be something just as simple as, you know, "We need an easel

16   with paper," or something like that, or, "We can't find an

17   exhibit."  The foreperson writes it down and hands it to me.

18   Sometimes I'll scribble back a note:  "Oh, no, the exhibit is

19   in there," or, "Here's a supplemental legal instruction," if

20   you don't understand what one of the legal instructions are.

21   Sometimes it may take me a few hours to get back to you because

22   I gather the troops, we all get in here, and we talk through

23   some of your questions.  So we will respond to you.

24        The third and final task is, the foreperson will

25   announce the verdict in court, but the foreperson is not

1    standing alone.  All the members of the jury are standing

2    together, and you'll hear us say, "So say you, Madam

3    Foreperson?  So say you, Mr. Foreperson?  So say you, all

4    members of the jury?"  So whatever your verdict is on each of

5    the counts, it must be unanimous.  All right, so that's what a

6    foreperson does.

7          The one thing you shouldn't do ever is say to me,

8    "What did so-and-so say on such and such a date?"  I won't

9    remember.  I took notes.  I can assure you your twelve

10    collective notes are better than my single note.  Now,

11    sometimes people say, "Well, give us a transcript."  That's

12    possible, but just understand that it's not like there's some

13    pile of transcripts sitting in some secret room back there.

14    Ms. Marzilli, who's the best there is, will have to work on

15    that transcript because you can't just get the snippet you

16    want.  You have to get the whole witness's testimony, or I have

17    one person thinking that one side is unduly emphasizing

18    something, and you need to hear something else, right?  So you

19    have to get the whole witness's testimony, and it can sometimes

20    take over a day to get it because I don't want her working till

21    midnight.  So don't ask for the transcript unless you really

22    need it, it's going to break a logjam.

23          All right, the second thing is, what is the role of an

24    alternate?  Now, this is the part I hate the most.  I could

25    have served on juries.  Supreme Court Justices serve on juries,

1    but I've never done it.  I'm sure if I sat through a whole long
2    trial like this, I would be the one excluded as an alternate.
3    The last person chosen is an alternate.  So we lost three
4    people right away in the first week, and I thought for sure we
5    would get to you, but we didn't.  The rest of you hung in
6    there, and I really appreciate that.  So I'm going to have to
7    ask you for yet another thing, which is, when you go home --
8    you can't come into the verdict -- you can say "good-bye" to
9    everybody today -- I'm going to say "good-bye" to you, we're
10   all going to say "good-bye" to you -- but you can't still talk
11   about the case.  And the reason I say that is, I don't know how
12   long these deliberations are going to take.  I have no idea how
13   many days that they're going to take, and it's possible because
14   we all know -- I mean, I've talked to some of you about life
15   circumstances -- we don't know what's going to happen, and I
16   have to have twelve people, or I start all over again.  So I'm
17   going to ask you not to talk about the case or watch anything
18   in the press, and we will let you know when a verdict comes in.
19   So, unfortunately, I would be reversed in a millisecond if I
20   let you sit in on the deliberations, so let me say thank you,
21   thank you, thank you, and we may still need you, all right?
22          So the last thing I want to talk to you about is the
23   mechanics of deliberations.  The jury system, as I keep saying,
24   is really one of the great foundations of our democracy.  The
25   right to a jury trial is the only right that exists twice in

1     our Constitution, one in the main body of the Constitution and

2     again in the Bill of Rights.  It's a fundamental right, and

3     nobody can go about telling you how to deliberate, but everyone

4     should go in there with an open mind.  The way not to go in

5     there is, "I know what I'm going to do, and no one will tell me

6     what else."  You need to go in there with an open mind, open to

7     listening to what other people's point of view is, and try and

8     talk through the evidence.  So "deliberate" means to think

9     about it, to be open about it, and to talk it through.

10          On the other hand, no one should ever change their

11    mind because, "Oh, it's getting late, and I really do have to

12    get back to work," or, "Oh, I really do have to get back to my

13    life's issues," or, "Oh, a lot of other people think some way

14    other ways, so I don't want to stop this."  You've got to each

15    person, because you're all going to be standing there ratifying

16    and voting on this verdict, each person has to come to the

17    conclusion, whatever conclusion you come to, based on a

18    reasonable and principled belief that this is the right

19    verdict.

20          So what I am going to do right now -- let me just make

21    sure I've hit everything.  Yes, I guess what I should also add,

22    although Maryellen may be in and out and the court security

23    officer, you can't ask them any questions about the trial.

24    Anything has to come through a written note.  Now, I emphasize

25    that because it's like playing telephone; I never get it quite

1    right if you tell Maryellen who tells me.  So please write down

2    any question that you may have rather than try and do it

3    orally.

4          So what I'm going to do is, I'm going to come here to

5    sidebar for a few minutes, and I'm going to ask counsel,

6    because I read a lot here -- it's been an unbelievably long

7    day -- and if there's anything that I read incorrectly or I

8    omitted that I promised to do, and if there's something longer

9    and more substantive that's something that we agree to disagree

10    on, we'll do it after the jury leaves, all right?  All right,

11    so why don't we come over to sidebar.

12          (Sidebar conference.)

13          THE COURT:  A couple of minor things.  One, there's a

14    stipulation that's going to go back, and you can consider that

15    like any other evidence in the case.

16          The second thing is, we're going to be, I think,

17    giving you mostly full paper records as well as being on JERS.

18    It may be that there are some that if we don't send you back

19    the full record, just ask for it, but I think you'll be getting

20    both of them.  And last but not least, I want you to make this

21    decision.  Today we obviously stayed till 5:00, it's an

22    unbelievably long day, but I wanted to get everything to you so

23    that you would be fresh tomorrow morning and get going.  But

24    what I want you to figure out is, normally we have been going

25    9:00 to 4:00, and I don't know whether that's because of your

1   schedule.  I usually go 9:00 to 5:00 when we deliberate, but if

2   that creates a hardship for all of you, for any of you, let me

3   know.  All right, so once again I feed you.  You may be totally

4   sick of the sandwiches.  We can tell because we see what you

5   eat and don't eat, and my law clerks love what you don't eat,

6   but the question I have is, if there's something else, let

7   Maryellen know.

8           So we're going to sit from 9:00 to 5:00 unless you all

9   feel that -- I don't remember if some of you had childcare

10  obligations and that sort of thing.  If there's an issue, we'll

11  go from 9:00 to 4:00, so you can decide that.  Nobody should

12  start talking about the case till I send you out in the morning

13  because there is one or two of you who come in sometimes a

14  little later, and you cannot deliberate unless all twelve are

15  in the room.  So you'll see, I'll bring you in in the morning.

16  I literally won't let you even sit down.  I'll count twelve and

17  send you out again.

18          They've been working unbelievably hard, as you can

19  tell, over the course of the last couple of months, really, and

20  so they don't -- it will just be you and me tomorrow morning,

21  all right?  So they don't need to come in.  And we'll do it

22  that way every morning until I tell you otherwise.  So sleep

23  well.  Don't talk about the case.  Thank you.

24          Leave the notebooks in the jury room.  Leave the

25  binders out, okay?  Leave the binders on your chair.  All

```
 1    right, so leave those out, but take your notebooks out and the
 2    verdict slip.
 3              THE CLERK:  They can only take their notebooks back.
 4              THE COURT:  And the verdict slip.
 5              THE CLERK:  Right, but leave all the other stuff on
 6    your chair.
 7              (Jury excused.)
 8                             *   *   *
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```