

305 Madison Avenue
New York, NY 10165
T: 212-922-1080
F: 212-949-8255

Henry E. Mazurek
Partner
mazurek@clayro.com

February 29, 2016

<u>By ECF</u>

Hon. Colleen McMahon
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

    **Re:** *United States v. Mirilashvili*, S2 14 Cr. 810 (CM)

Dear Judge McMahon:

  We write on behalf of defendant Moshe Mirilashvili to respectfully address several issues prior to trial.

### **Motion *In Limine* to Admit Clandestine Recordings of Confidential DEA Source Patient Visits at Dr. Mirilashvili's Medical Office**

  First, Dr. Mirilashvili moves *in limine* to address an evidentiary issue that remains in dispute between the parties. Specifically, the defense seeks to introduce recordings between the doctor and a confidential source ("CS") of the Drug Enforcement Administration ("DEA"), who presented himself as a patient of Dr. Mirilashvili, and recorded several patient visits over a period of time from June 2013 through March 2014. The government has informed the defense that it has selected three recordings of these encounters to introduce in its case-in-chief, but objects to Dr. Mirilashvili offering any other doctor encounters in evidence. We have attached transcripts of the recordings the government seeks to introduce at Exhibit A. (Transcripts of CS-Doctor Encounters: June 27, 2013, August 12, 2013, and September 12, 2013.) The additional patient-doctor encounters, which represent a continuation of the treatment of this same patient, and which Dr. Mirilashvili seeks to introduce in evidence, are attached at Exhibit B. (Transcripts of CS-Doctor Encounters: October 18, 2013 and November 20, 2013.) We also seek to reserve the right to introduce any other recordings subject to the presentation of the government's evidence at trial.

Hon. Colleen McMahon
February 29, 2016
Page 2 of 7

Dr. Mirilashvili respectfully claims that the government cannot use these recordings as both a sword and shield, picking and choosing those it prefers and preventing the defense from giving the jury a complete picture of the doctor's medical treatment of the DEA's CS. These recordings are admissible by the defense under several evidentiary theories. These include: (1) Fed. R. Evid. 803(3), under the "state of mind" exception to the hearsay rule; (2) Fed. R. Evid. 803(4), as statements for purposes of medical diagnosis or treatment; and (3) Fed. R. Evid. 106, under the rule of completeness for recorded statements. These recordings should also be admissible under the "verbal act" doctrine because the doctor's statements and conduct during the patient examination give rise to legal consequences, *i.e.,* whether the doctor was acting within the usual course of professional conduct and for legitimate medical purpose.

The question of whether a defendant may, under Fed. R. Evid. 803(3), introduce statements that were made contemporaneously to the offense conduct for the purpose of showing the defendant's then state of mind is a long-settled issue in the Second Circuit. *See United States v. DiMaria*, 727 F.2d 265, 272 (2d Cir. 1984) (reversing defendant's conviction because trial court erroneously precluded introduction of defendant's statements under state-of-mind exception); *United States v. Harris*, 733 F.2d 994, 1003-04 (2d Cir. 1984) (holding defendant's statements should have been admitted under the state-of-mind hearsay exception because they were statements of the defendant's present state-of-mind during the alleged offense conduct). The basis for the state of mind exception focuses on the contemporaneity of the statement and the unlikelihood of deliberate or conscious misrepresentation. *Harris*, 733 F.2d at 1004. As the Court explained in *Harris*, the likelihood that the declarant is misrepresenting his state of mind is **not** an additional qualification to the admissibility of state of mind hearsay statements. *Id.* at 1005. "Instead, the self-serving nature of a statement is considered when the jury weighs the evidence at the conclusion of the trial." *United States v. Cardascia*, 951 F.2d 474, 487 (2d Cir. 1991).

In this case, the doctor's follow-up visits with the CS patient occur during the heart of the Indictment's conspiracy charge. The defendant seeks to introduce these other recordings as evidence of Dr. Mirilashvili's state-of-mind with respect to the treatment of patients during the charged conspiracy. We believe that the doctor's conduct is the most important evidence – and the only direct evidence – of the only disputed issue in this case: was the doctor willfully and intentionally acting outside the usual course of professional conduct and without the exercise of medical judgment? Indeed, the government claims that the prescriptions given to the CS during the follow-up visits are evidence that he was. Thus, the doctor's conduct during those visits is clearly relevant.

In a recent case involving the same charges against a doctor-defendant, Judge Bianco from the United States District Court for the Eastern District of New York confronted this same issue, *i.e.,* whether the defendant could introduce secret recordings by an undercover informant as evidence of the defendant's state-of-mind. *See United States v. Stambler*, 11 Cr. 213 (JFB) (E.D.N.Y., Sept. 26, 2013) (Decision attached at Exhibit C, pp. 21-25.) In that case, relying on *DiMaria* and other Circuit court decisions,

Judge Bianco denied the government's motion to preclude the defendant from introducing the secret "patient" recordings. In that case, the court ruled that: "It's in the same time frame, it deals with the same drug, and how [the defendant doctor] handled those other situations, it's probative of his overall state of mind." *Id.* at 25. In fact, in *Stambler*, the call might have been closer because the case there involved charges relating only to specified patients identified in the Indictment. Whereas here, the government has made the much broader claim that basically Dr. Mirilashvili's entire medical practice was a sham.[1]

In addition, the fact that the government is introducing parts of the CS's treatment by the doctor in its case-in-chief, the defense should be able to introduce the remainder of the ongoing series of doctor-patient encounters under the "rule of completeness" at Fed. R. Evid. 106. These statements are also admissible as an exception to the hearsay rule as statements made for medical diagnosis and treatment under Fed. R. Evid. 803(4).

### Motion to Preclude the Government from Introducing Testimony of Witness from Neighborhood Watch Group

The government seeks to call a witness, Benjamin Lopez, from a local neighborhood watch group from the area where Dr. Mirilashvili had his medical clinic. Ostensibly, this witness is being called to offer testimony of people "loitering" outside the clinic; that there were often double-parked cars outside the clinic; sometimes people created a "commotion"; and that the people coming from the clinic looked "pretty big, pretty tough" and "intimidating." Dr. Mirilashvili seeks to preclude this testimony under Fed. R. Evid. 403. The only disputed issue at trial is whether Dr. Mirilashvili acted intentionally and willfully to dispense drugs outside the scope of medical conduct. To the extent that any of the proffered testimony of Mr. Lopez might have been conveyed to the doctor (which is not clear), it is unclear what probative value any of the conduct outside the clinic would have to prove the defendant's intent to unlawfully distribute drugs.

The government's relevance claim to this testimony might be that the number of patients waiting outside the clinic is probative of drug dealing, or should have put the doctor on notice that he could not have that many legitimate patients. This seems to be an ambiguous point since every business owner hopes to have a prosperous business and the volume of traffic to a business establishment, even a medical office, is not intuitively indicative of known illegality. On the other hand, the government might be claiming something more insidious, *i.e.,* the type of individuals "hanging out" outside the clinic are profiles of drug dealers, because they look "tough," "big," and "intimidating" and are loud and create commotion. This "profiling" of people outside the clinic by a lay person,

---

[1] Without belaboring the point, Dr. Mirilashvili is not seeking the admission of his patient examinations for the point of proving the truth of the matter asserted, *i.e.,* whether the various doctor's medical conclusions were correct, but rather for the mental process that the doctor undertook in reaching his decisions about ongoing medical treatment.

like Mr. Lopez, creates the danger of unfair prejudice. Fed. R. Evid. 403. The government will be introducing the testimony of DEA agents who conducted actual surveillance of the clinic and who are trained law enforcement personnel who have some expertise in identifying conduct that might be suggestive of illegal activity. Such surveillance testimony is best introduced through this type of witness, rather than the observations of lay witness Lopez.

Rule 403 permits the exclusion of evidence, even if relevant, "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, wasting of time, or needlessly presenting cumulative evidence." In this case, Mr. Lopez's testimony has dubious relevance, but presents substantial danger of unfair prejudice because his untrained observations are intended to convey that he believed the people outside the clinic looked like drug dealers. This testimony also is cumulative to the DEA agents' more relevant and trained law enforcement testimony, and could confuse the jury into believing that Mr. Lopez knows that these loud, pushy, big and intimidating-looking people could not be patients and had to be drug dealers – an inference not supported by his simple observations or information gained through hearsay. *See United States v. George*, 266 F.3d 52, 63 (2d Cir. 2001) (granting broad discretion to the district court to admit or exclude evidence pursuant to Rule 403).

### Motion for Clarification of Court's Earlier Ruling Regarding Admissibility of New York State BNE Database Records

As described below, Dr. Mirilashvili respectfully requests that the Court clarify its findings as to whether the second level of hearsay contained in the records from the New York State Bureau of Narcotics Enforcement ("BNE") can be admitted for its truth.

In its February 18, 2016 Order, the Court found that the BNE records, subject to foundational testimony by a witness, are "records of regularly conducted activity" and therefore qualify as an exception to the hearsay rule. (Order, at 9 (citing Fed. R. Evid. 803(6).) This finding, however, does not address the second level of hearsay contained in the BNE. (*See* Deft's Mot. at 31-32; Fed. R. Evid. 805 (for "hearsay within hearsay" to be admitted, "each part of the combined statement [must] conform[] with an exception to the [hearsay] rule")).

As the Court knows, the government seeks to introduce BNE records to prove that Dr. Mirilashvili *actually wrote* more than 13,000 medically unnecessary prescriptions for oxycodone from January 2012 through December 2014. The government proffers that a BNE custodian of records will testify that whenever a pharmacy fills a prescription for a controlled substance it reports to the BNE: "(1) the name and address of the patient; (2) the name and license number of the prescribing doctor; (3) the medication and dosage dispensed; and (4) the method of payment." (Gov't Mem. at 14.) The pharmacy obtains this information from the patient who presents the pharmacy with a written prescription. The government does not intend to introduce (nor does it possess) all of the underlying prescriptions that form the basis of the prescribing physician information transmitted to

the BNE. In other words, the out-of-court statements by the declarant patients to the pharmacies are hearsay-within-hearsay in the BNE records.

The Court's prior order does not address this double hearsay issue, nor do the cases cited in support of its ruling that the BNE records are business records. First, in *United States v. Lowe*, 14 Cr. 055 (LGS), the district court admitted the BNE database records *without objection from the defendant.* Thus, the district court did not address the hearsay issue at all.

Second, in *United States v. Wiseberg, et. al.*, 13 Cr. 794 (AT), the district court admitted New Jersey State Prescription Monitoring Program ("PMP") data as business records. The *Wiseberg* case involved the prosecution of pharmacy owners and the PMP records were introduced to prove the actions of the pharmacy (filling the prescriptions), rather than to prove the identity of the prescribing physician. Under those circumstances, the double hearsay issue was never raised nor adjudicated by that court.

Third, and finally, in *United States v. Cooper*, 868 F.2d 1505, 1514 (6th Cir. 1989), the Sixth Circuit found no error in admitting a pharmacy prescription log book as a business record. The *Cooper* case involved a prosecution for distribution of controlled substances *by false prescription* and the prescription log book "contain[ed] names of women or men 'from the phone book or just out of the sky.'" *Cooper*, 868 F.2d at 1507. In other words, the salient fact gleaned from the prescription log book was that a prescription had been filled by the pharmacy, not the specific identity of the prescribing doctor or even the patients.

Finally, the government's earlier arguments on the double hearsay point, none of which have been adopted by the Court's prior order, are without merit. For example, the government claims that the BNE records consist almost exclusively of Dr. Mirilashvili's own statements.[2] This is a circular argument: the government states that the double hearsay should be admitted as admissions of a party-opponent because Dr. Mirilashvili wrote the prescriptions, but this is actually the truth of the assertion that the defense objects to being admitted through the hearsay declarations of patients to pharmacists. The government seeks to prove that Dr. Mirilashvili wrote the prescriptions by admitting the hearsay statements of patients to pharmacists. The government does not seek to admit records from Dr. Mirilashvili (*i.e.,* the prescriptions), rather it seeks only to introduce the patients' double hearsay statements to pharmacists in the form of the pharmacists' entries in the BNE database.

As a fallback position, the government claims that the hearsay-within-hearsay patient statements to pharmacists were made by "fake" patients "*many* of whom are alleged to be co-conspirators" or by legitimate patients who are providing the information

---

[2] (Govt's Mot. at 15, n.9 (citing Fed. R. Evid. 801(d)(2).)

Hon. Colleen McMahon
February 29, 2016
Page 6 of 7

as part of their medical treatment.³ Which is which? The government does not say, nor can anyone make that determination without viewing the actual prescription. More importantly, those hearsay exceptions cannot apply to forged prescriptions which appear in the BNE records.⁴ (*See* Deft's Mem. in Supp. of Mot. *in Limine* at 31.) Nor does the government have any answer to the forged prescriptions in the BNE records other than to suggest that the defense can cross-examine a witness on this point. (Govt's Mot. at 15.) The government's backwards and burden-shifting thinking is troublesome. By starting with the premise that the BNE records accurately reflect the underlying hearsay-within-hearsay statements, the government seeks to require Dr. Mirilashvili to shoulder the task of proving otherwise. But it is the government, as the proponent of the evidence, who has the burden here. Without producing the underlying prescriptions, it cannot do so. In effect, the BNE database represents a summary chart of all of these prescriptions. Without possessing and providing these prescriptions for inspection to the defense, as requested, the government cannot get past the double hearsay problem.

For the reasons set forth above, we respectfully request that this Court clarify its ruling for the purpose of ruling on the double hearsay contained within the BNE database records, which are being relied upon by the government to identify the prescribing physician.

### Motion for Court to Include the CSA Law in Preliminary Instructions on the Burden of Proof and Knowledge and Intent Required in the Particular Circumstance of a Doctor-Defendant

Given the complex and potentially confusing issues in this case, Dr. Mirilashvili respectfully submits that the jury would benefit from hearing the substantive law it is to apply before hearing opening statements. In particular, the jury should be given a clear articulation of the government's burden of proof in establishing beyond a reasonable doubt that the defendant knowingly and willfully intended to act as a drug dealer, outside the scope of usual professional practice and without legitimate medical judgment, as opposed to having acted negligently or even as a "bad" doctor, in order to prove a violation of 21 U.S.C. § 841(a)(1)(c). Dr. Mirilashvili likewise requests the Court to give

---

³ (Govt's Mot. at 15, n.9. (citing Fed. Rs. Evid. 801(d)(2)(e) and 803(4) respectively) (emphasis added).)

⁴   In addition to the forged prescriptions previously disclosed by the government, the Section 3500 material produced thus far makes clear that certain individuals were stealing Dr. Mirilashvili's prescription pads and selling forged prescriptions on the black market. The BNE records make no distinction between real and forged prescriptions because they merely incorporate the hearsay from the patient seeking to fill the prescription.

Hon. Colleen McMahon
February 29, 2016
Page 7 of 7

the jury the defense's requested instruction that the good faith of the doctor is a complete defense.

                                              Respectfully yours,

                                              /S/HEM

                                              Henry E. Mazurek
                                              Wayne E. Gosnell
                                              *Counsel for Dr. Mirilashvili*


cc:      Edward Diskant
           Brooke Cucinella
           Assistant United States Attorneys (by ECF)