

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 29, 2016

**BY E-MAIL and ECF**

The Honorable Colleen McMahon
United States Magistrate Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    **United States v. Mirilashvili et al., S2 14 Cr. 810 (CM)**

Dear Judge McMahon:

      The Government writes in response to the latest series of motions *in limine* filed by the defendant late yesterday, literally on the eve of trial, substantially all of which focus on issues of which the defendant has been aware for some time.  For the reasons that follow, the Government submits that each of these motions should be denied.

## The Additional CS Recordings

      As the Court knows, during the course of the investigation, a government confidential source (the "CS") posing as a patient saw the defendant on approximately seven occasions between June 2013 and April 2014.  During each of these visits, the CS paid the defendant $200 in cash and received, at the end of each visit, an identical prescription for 90 30-milligram oxycodone tablets.  Because the CS spoke Spanish, one of the defendant's employees served as an "interpreter" for all but one of the visits.  All of these visits were recorded.

      The recordings are of varying quality and can be difficult to understand, particularly given that Spanish is interspersed throughout.  Accordingly—and as the Government communicated to the defendant nearly one month ago—the Government initially had no intention of playing the recordings at trial.[1]  At the *defendant's* request, and in an effort to accommodate the defendant's desire to play at least some of these recordings at trial, the Government informed defense counsel more than a week ago that it would agree to offer the first three of the recorded visits through Abraham Correa, a government witness who served as an "interpreter" for those three recordings and who could thus provide some context to the jury as it

---

[1] The Government similarly does not intend to call the CS as a witness at trial.

listens to those recordings.[2]  The Government has also made clear, throughout, its view that the defendant has no right to offer recordings which principally consist of his own prior statements. *See* Fed. R. Evid. 801(d)(2); *United States* v. *Marin*, 669 F.2d 73, 84 (2d Cir. 1982) ("When the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible.").

Somewhat surprisingly, the defendant now disingenuously claims that the Government is attempting to use the very recordings that it had no intention of ever introducing as a "sword and a shield" and further seeks to introduce two of the remaining four recordings.  As an initial matter, the Government would be happy to offer *none* of these recordings – which, as noted, present logistical difficulties such as the poor sound quality and mix of Spanish and English – if that would resolve the defendant's concern.

To the extent the defendant would still seek to offer these recordings, the Government believes he has no basis for doing so.  As noted, there is no serious question that in the general course, the defendant cannot offer his own prior statements at trial.  *See generally United States* v. *Demosthene*, 334 F. Supp. 2d 378, 381 (S.D.N.Y. 2004) ("[A] defendant generally may not introduce his own prior statement for the truth of the matters asserted therein . . . . By seeking to introduce such statements, [the defendant] is, in essence, attempting to present a second version of his own admissions in order to permit the jury to decide which of the two versions to credit . . . . [s]uch a substantive comparison . . . would not be admissible under either Federal Rule of Evidence 801(d)(2)(A) or the Second Circuit's holding in *Marin*.").

Instead, the defendant seeks to rely principally on the limited exception for statements evidencing an individual's then-existing "state of mind."  *See* Fed. R. Evid. 803(3).  Federal Rule of Evidence Rule 803(3) provides a hearsay exception for "[a] statement of the declarant's then-existing state of mind . . . or emotional, sensory, or physical condition." *United States* v. *Coplan*, 703 F.3d 46, 85 (2d Cir. 2012).  The exception is narrow, and requires the party seeking to offer the prior statement to identify specific, forward-looking statements admissible under the hearsay exception. *United States* v. *Cardascia*, 951 F.2d 474, 487 (2d Cir. 1991).  The offering party must also establish the statement is "relevant" if offered for a forward-looking purpose – that is, "to prove that the declarant thereafter acted in accordance with the stated intent." *United States* v. *Best*, 219 F.3d 192, 198 (2d Cir. 2000).  The exception itself – and those statements found to fall within it – is premised on the indicia of reliability attendant to an expression of state of mind given "the contemporaneity of the statement and the unlikelihood of deliberate or conscious misrepresentation." *Id.*    Like all hearsay exceptions, Rule 803(3) is subject to the balancing test set forth in Rule 403.

Given the above, the Government submits that the defendant – who has had full transcripts of these recordings for more than six months – has not met his burden of pointing to specific statements that he believes meet all of the requirements of Rule 803(3).  Certainly, it is insufficient to contend that entire recording is evidence his "state of mind" and falls within the

---

[2] The remaining four recordings involve the defendant, the CS, and other members of the defendant's office staff, none of whom is expected to testify at trial. As such, any additional recordings admitted at trial would have to be played for the jury without the benefit of the testimony of a single participant to the conversation.

exception simply because he speaks on them. Indeed, even a cursory review of the transcripts makes clear that the recordings contain a mix of: (1) backward looking statements of what the defendant *has done* in the past; (1) backward looking questions of the CS about what the CS *has done* in the past; and (3) statements by the defendant ostensibly evidencing his knowledge of medicine, such as a lengthy description of how the spine works. That alone warrants denying the defendant's motion.

Alternatively, the Court can preclude the defendant from offering these recordings pursuant to Rule 403. *United States* v. *Kaiser*, 609 F.3d at 572 (finding statements meet requirements of Rule 803(3) but precluding them pursuant to Rule 403). In this respect, the distinction between these facts and the recent Eastern District case, *United States* v. *Stambler*, relied upon by the defendant is stark – there, in a single recording, the defendant *declined* to write a prescription for oxycodone. Analogizing to a bank robbery case, the District Court there compared the recording to the equivalent of a bank robbery suspect saying on a recording, "'what are you talking about, I don't rob banks, I would never rob banks, that's something I would not do" and thus found it highly relevant to "state of mind." (Ex. C at 16.)

Here, by contrast, the defendant makes no such statements on any of the recordings, nor anything close to it. Indeed, there is no question that, in each instance, the defendant writes the same prescription for 90 30-milligram oxycodone tablets that he writes for substantially all of his patients. His statements to the CS while doing so, thus, are thus far less clearly indicative of a "state of mind" – they at most could be argued to be a *justification* for what he is doing – and if offered for that purpose thereby become effectively testimonial in nature, testimony on a core issue in dispute and that will not be subject to any form of cross examination. *Cf. Kaiser*, 609 F.3d at 573 (finding reversible error in District Court's admission of statements pursuant to Rule 803(3) that should have been excluded pursuant to Rule 403 because the statements "went directly to an 'important disputed issue' in the case" and "could not be tested by cross-examination"); *see also United States* v. *Coplan,* 703 F.3d 46,84-85 (2d Cir. 2012) (affirming decision to preclude use of a defendant's prior deposition testimony as "state of mind" evidence for similar reasons).

Alternatively, and as noted, the Government is happy to offer none of these recordings—recordings the Court characterized as "damning" to the defendant in denying his prior motion to dismiss, but which, as noted above, carry with them certain logistical difficulties.[3]

---

[3] Further, the defendant's fallback argument – that the rule of completeness somehow allows him to circumvent the prohibition against hearsay here—is equally unavailing. The rule of completeness provides that "even though a statement may be hearsay, an omitted portion of the statement must be placed in evidence if necessary to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion." *United States* v. *Johnson,* 507 F.3d 793, 796 (2d Cir.2007) (alteration and internal quotation marks omitted); *see* Fed.R.Evid. 106. The rule "does not, however, require the admission of portions of a statement that are neither explanatory of nor relevant to the admitted passages." *United States* v. *Coplan,* 703 F.3d 46,84-85 (2d Cir. 2012) (affirming Judge Stein's exclusion of "more than 80 percent" of a deposition transcript the defendants sought to admit after portions were offered as admissions by the Government, rejecting arguments that admission of the rest was required by the "rule of completeness")

3

Finally, to the extent the defendant is "reserving the right introduce any other recordings subject to the presentation of the government's evidence at trial," the Government, obviously, will consider the request when made and reserves the right to object accordingly.

### The Testimony of Neighborhood Resident Benjamin Lopez is Relevant and Probative

As defense counsel has known for two weeks, the Government intends to call as a witness a resident from the Jumel Terrace neighborhood who witnessed first-hand the impact that Dr. Mirilashvili's clinic had on the neighborhood.[4]  Benjamin Lopez lived across the street from Dr. Mirilashvili's "clinic" and had the opportunity to observe the crowds forming outside the clinic, and the regularity with which luxury vehicles with out-of-state license plates dropped off patients and double parked in the neighborhood.   Moreover, Mr. Lopez communicated directly with the defendant regarding concerns he and other neighbors had about the Clinic. As defense counsel is aware, shortly after the clinic opened, Mr. Lopez and a group of neighbors

---

(internal quotation marks and citation omitted); *United States* v. *Jackson,* 180 F.3d 55, 73 (2d Cir.1999).

In *Coplan*, the Court of Appeals rejected the defendant's rule of completeness argument involving statements from a single deposition, as compared to the two wholly separate incidents that the defendant attempts to bootstrap into the rule here.  Indeed, numerous decisions in this circuit and elsewhere have made clear that a defendant is not permitted to elicit every statement he desires from a single interview or similar discussion simply because the Government has elicited certain statements as admissions. *See, e.g., United States* v. *Yousej,* 327 F.3d 56, 153 (2d Cir. 2003) ("while the Government was free to introduce the statement as an admission by a party-opponent, *see* Fed.R.Evid. 801 (d)(2)(A), Ismoil had no right to introduce it on his own"); *United States* v. *Schwartz,* 924 F.2d 410, 423-24 (2d Cir. 1991) ("the district court did not abuse its discretion when it ruled the exculpatory statements irrelevant and precluded appellants from using them to cross-examine Jamil"); *United States* v. *Marin,* 669 F.2d 73,84 (2d Cir. 1982) (ruling that defendant "had no right to have [entire] statement admitted into evidence because it was, as offered by [the defendant], hearsay, and because it was not needed, in fairness, to make complete the portions of his statement that were admitted against him.").

There is simply no valid argument that the statements that the doctor makes during two separate patient visits, each of which take place more than a month after the recordings that the Government intends to introduce, somehow shed light on the patient visits that the Government is introducing.  They do not explain the initial visit nor the follow-up visits, each of which the Government is introducing in its entirety, and none of which can be said to be misleading.  Rather than a true "rule of completeness" argument, this is nothing more than the defendant's transparent attempt to circumvent the rule against hearsay and to put the defendant's self-serving statements before the jury.  The argument should be dismissed accordingly.

[4] At the time of initial disclosures, the Government believed it would be calling neighborhood resident Jim Hawkins.  The defendant has had his 3500 for two weeks. Because of the adjournment, however, Mr. Hawkins can no longer testify due to scheduled medical procedure.  The Government was able to confirm this weekend that Benjamin Lopez, who has had the opportunity to observe many of the same things that Mr. Hawkins saw, and who started the neighborhood watch group (along with Mr. Hawkins) in response to Dr. Mirilashivili opening a drug spot on their block, will be able to testify in Mr. Hawkins' stead.

confronted Dr. Mirilashvili, raised concerns about the kind of "business" he was running, and demanded that Dr. Mirilashvili do something about it.

Defense counsel's characterization of the Government's intention to elicit Mr. Lopez's observations about the individuals who alternatively patronized and/or loitered in front the "clinic" as "insidious" and overly prejudicial is ridiculous, and should be dismissed as such. The Government must prove at this trial that the defendant's Clinic was a sham, a place where he knowingly issued medically unnecessary prescriptions rather than engaging in the legitimate practice of medicine.  The facts and circumstances surrounding the Clinic itself are undeniably relevant to that determination.  And thus a neighborhood witness's first-hand observations of large, seemingly healthy men, driving luxury cars and lining up in the hours before the clinic opened – the very scene through which the defendant would have walked into work every morning before he began doling out oxycodone prescriptions—bears directly on the defendant's knowledge and state of mind as he went into the clinic to write prescriptions in exchange for cash— *i.e.*, the issue the jury must determine.  And while any evidence probative of the defendant's guilt is, by its nature, prejudicial, there is nothing *unduly* or improperly prejudicial about this testimony.  Accordingly, the defendant's misguided attempt to keep Mr. Lopez off the stand should be denied.

## The Defendant's Motion for Reconsideration of the Admissibility of the BNE Records Should be Denied

Next, the defendant's seek "clarification" of the Court's prior ruling deeming BNE records business records subject to admission pursuant to Rule 803(6).  The motion, which raises no new arguments, is properly deemed one for reconsideration and should be dismissed out of hand.

A motion for reconsideration must set "forth concisely the matters or controlling decisions which counsel believes the Court has overlooked."  Local R. 49.1 (d); *see also Bowman* v. *United States*, 685 F. Supp. 2d 519, 522 (S.D.N.Y. 2010) ("A motion for reconsideration 'will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked ... that might reasonably be expected to alter the conclusion reached by the court.'") (quoting *Shrader* v. *CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). "The major grounds justifying reconsideration are an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *Bowman*, 685 F. Supp. 2d at 522 (internal quotation omitted).

Here, none of those grounds is present.  As the Court correctly ruled, the BNE records are "classic business records" and should be admitted as such at trial. (Op. at 9.)  Indeed, the Government intends to call a custodian of records from the New York Bureau of Narcotics Enforcement who will testify that its records were all made at or near the time the prescription was filled from "information transmitted by[] a person with knowledge" – that is, the dispensing pharmacy – and were both made as "the regular business practice of" the BNE and "kept in the course of [BNE's] regularly conducted business activity."  Fed. R. Evid. 803(6).  The BNE custodian will further testify that the dispensing pharmacy is required under state law to gather

5

that information at the time it fills each prescription and is further required to maintain that information in its files for a period of time.

In seeking "clarification," the defendant contends the Court "d[id] not address the double hearsay issue" – that is, the defendant's contention that "the out-of-court statements by the declarant patients to the pharmacies are hearsay-within-hearsay in the BNE records." (Def. Br. at 5). While the Government does not share that assessment, and presumes the Court considered and rejected that argument in ruling on this issue previously, it bears mention that the "double hearsay" argument, as articulated in the instant motion, is particularly unavailing because it does establishes at most that the BNE records the Government seeks to offer at trial contain "business records within business records" – that is, the business records of state pharmacies as reported to the BNE.

As noted above, and as the BNE custodian will testify at trial, pharmacies are required by state law to gather the name of the patient, the doctor, and the prescribed medication, among other things, at the time each prescription is filled and are further required to maintain that data for a period of time. That information is thus unquestionably gathered in the course of each pharmacy's "regularly conducted business activity" and thus constitutes a "business record" of the pharmacy. At or near the time those records are made, the pharmacy then transmits those business records to the BNE which in turn maintains that information as part of *its* regularly conducted business activity. As such, any hearsay concern, is overcome given that each step identified by the defendant in the flow of information meets the requirements of Rule 803(6). Critically, nothing in the instant motion undermines the core fact that the records at issue "were not created for 'personal purpose[s] . . . or in anticipation of any litigation' so that the creator of the document "had no motive to falsify the record in question" and thus fall squarely within the "purpose of the rule." *United States* v. *Kaiser*, 609 F.3d 556, 574 (2d Cir. 2010) (quoting, *United States* v. *Freidin*, 849 F.2d 716, 719 (2d Cir. 1988)); *see also id.* ("We have stated that Rule 803(6) 'favors the admission of evidence rather than its exclusion if it has any probative value at all.'") (quoting *In re Ollag Constr. Equip. Corp.*, 665 F.2d 43, 46 (2d Cir.1981)).

More generally, and as the Court has already ruled, the defendant's core concern – that the BNE records may fail to detect forged or stolen prescriptions presented to pharmacies – is one that should go to weight, not admissibility, and is a concern the BNE custodian is prepared to address both on direct and cross-examination. As 3500 material for the BNE custodian produced to defense counsel makes clear, the custodian is expected to testify that under state law, a practitioner such as Dr. Mirilashvili is required to report to BNE all stolen prescriptions, which are each individually marked with a unique serial number. The BNE custodian will further testify that Dr. Mirilashvili made exactly one such report to BNE between 2010 and 2014 of 14 total stolen prescriptions. Similarly, with respect to the prospect of "forged" prescriptions, the BNE custodian is expected to testify to the very extensive steps taken to prevent forgeries, including steps very similar to those used to prevent counterfeit U.S. currency from being generated. To the extent the defendant seeks to explore through the BNE custodian the prospect that some of these prescriptions could nonetheless have been forgeries, he is of course free to do so.

## The Court Should Decide Whether to Instruct the Jury on the Substantive Law Prior to Openings

The Government defers to the Court on whether it is appropriate to instruct the jury on certain aspects of the law during its preliminary instructions. We note, however, that while defense counsel has repeatedly characterized this case as "complex and confusing," the Government believes that it is actually fairly straight forward, and believes that the Court should follow its typical practice with respect to instructing the jury.

To the extent the Your Honor feels it necessary to provide instruction regarding the substantive law prior to openings, the Government further notes that jury charge has obviously not yet been finalized, and the Government takes issue with the law as characterized in the defendant's motion, particularly with respect to "good faith" being a "complete defense" to the crimes with which the defendant is charged. Moreover, if the Court is inclined to provide a charge instructing that the defendant may rely on a "good faith" defense, the Government requests a corresponding charge on conscious avoidance and willful blindness, along the lines of the following:

> As I explained, the Government is required to prove that the defendant acted knowingly, as I have already defined that term. In addition to a person actually being aware of a fact, the law also allows you to find that the defendant had knowledge of a fact when the evidence shows that he was aware of a high probability of that fact but intentionally avoided confirming that fact.
>
> Thus, in determining whether the Government has proven beyond a reasonable doubt that the defendant acted with the sincerely held belief that his conduct was lawful, you may consider whether the defendant deliberately closed his eyes to what would otherwise have been obvious to him. One may not willfully and intentionally remain ignorant of a fact important to one's conduct in order to escape the consequences of criminal law. The law calls this "conscious avoidance" or "willful blindness."
>
> Accordingly, if you find beyond a reasonable doubt that the defendant acted with a conscious purpose to avoid learning some relevant fact, then you may treat the defendant as though he knew that the fact existed. However, guilty knowledge may not be established by demonstrating that the defendant was merely negligent, foolish, or mistaken, and you may not rely on willful blindness as the basis for treating the defendant as though he was aware of the existence of a fact if you find that the defendant actually believed that the fact did not exist. It is entirely up to you to decide whether the defendant deliberately closed his eyes and any inferences to be drawn from the evidence on this issue.
>
> Adapted from Sand at al., Modern Federal Jury Instructions, Instr. 3A-2; *see United States* v. *Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1194 (2d Cir. 1989) ("This Court has repeatedly approved use of a conscious-avoidance charge in a variety of cases in which there

7

was a genuine issue as to the defendant's good-faith ignorance of the illegality of his conduct." (citations omitted)); *id*. at 1196 ("[W]e . . . urge the trial court in each case to clarify for the jury to the greatest extent possible that the conscious-avoidance concept is pertinent to knowledge or sincerity of belief, or to the knowledge component of intent, but that a finding of conscious avoidance could not alone provide the basis for finding purpose or for finding intent as a whole.")

## Conclusion

For the reasons set forth above, the Government respectfully submits that the last minute additional *in limine* motions of the defendant be denied.

Respectfully submitted,

PREET BHARARA
United States Attorney

By:    /s/_____
Brooke E. Cucinella/Edward B. Diskant
Assistant U.S. Attorneys
212-637-2477/2294

Cc:    Henry Mazurek, Esq.
       Wayne Gosnell, Esq.