

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 9, 2016

**BY E-MAIL and ECF**

The Honorable Colleen McMahon
United States Magistrate Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    **United States v. Mirilashvili, *et al*., S2 14 Cr. 810 (CM)**

Dear Judge McMahon:

      The Government writes in advance of the expected testimony of the defendant's retained expert, Dr. Carol Warfield, seeking a ruling precluding Dr. Warfield from: (1) offering unsupported and improper testimony about the defendant's state of mind; and (2) opining on legal standards, and in particular, the standard for criminal conduct under Federal law, about which she is not qualified as an expert.

      As initially proffered by the defendant, Dr. Warfield, whose CV is attached as Exhibit 1, was expected to testify on the standards of care in the field of pain management and to draw conclusions, based on her review of certain records, about the propriety of the defendant's conduct in light of those standards. The Government is now in receipt, however, of defense counsel's written summaries of Dr. Warfield's expected testimony, and these reports, dated February 23 and March 5, 2016, respectively, and which are attached as Exhibits 2 and 3, make clear that the defendant intends to elicit from Dr. Warfield conclusions not only about the defendant's mental state, but conclusions she has apparently drawn based on her review of "federal court decisions assessing whether a physician prescribed controlled substances as a drug dealer." Exhibit 3, p. 1. For the reasons that follow, the Government submits that this is not proper expert testimony and should not be permitted.  Not only is Dr. Warfield obviously not qualified to draw legal conclusions based on her "review" of case law, this proffered testimony is a blatant attempt to improperly usurp the role of the judge and jury in this trial, and should be excluded as such.

**Legal Standard**

"Expert evidence is not inadmissible merely because it 'embraces an ultimate issue to be decided by the trier of fact.'" *Primavera Familienstifung* v. *Askin*, 130 F. Supp. 2d 450, 528 (S.D.N.Y. 2001) (quoting Fed. R. Evid. 704(a)).  However, "[w]hen an expert undertakes to tell the jury what result to reach, this does not *aid* the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's." *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir.1994); *see also* Fed. R. Evid. 704(a) advisory committee's note.

As a general matter, trial courts should exclude expert testimony that "expresses a legal conclusion."  *Hygh* v. *Jacobs*, 961 F.2d 359, 363 (2d Cir. 1992); *see also In re Rezulin Products Liability Litigation*, 309 F. Supp. 2d 531, 541 (S.D.N.Y. 2004).   Further, courts must be vigilant to prevent an expert from coming "dangerously close to usurping the jury's function." *United States* v. *Nersesian*, 824 F.2d 1294, 1308 (2d Cir. 1987) (cautioning against providing a party "with an additional summation by having the expert interpret the evidence"); *see also United States* v. *Lumpkin*, 192 F.3d 280, 289 (2d Cir. 1999) (applying Fed. R. Evid. 702 and instructing that an expert cannot "usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it.") (internal quotation marks omitted).  Moreover, "[e]ven if a jury were not misled into adopting outright a legal conclusion proffered by an expert witness, the testimony would remain objectionable by communicating a legal standard—explicit or implicit—to the jury."  *Hygh,* 961 F.2d at 364.  "Whereas an expert may be uniquely qualified by experience to assist the trier of fact, he is not qualified to compete with the judge in the function of instructing the jury."  *Id.*

Additionally, "no expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are for the trier of fact alone."  Fed. R. Evid. 704(b); *see also United States* v. *Rahman,* 189 F.3d 88, 136 (2d Cir. 1999) (rejecting expert testimony that "constituted an effort to tell the jury the defendant's intentions through the mouths of witnesses other than himself"; experts are "not competent to testify to [a defendant's] intentions and beliefs.").

"Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it.  Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses." *Daubert* v. *Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993) (internal citations omitted).

**Discussion**

Here, the Government does not dispute that Dr. Warfield may properly testify, based on her training and experience as well as her review of certain records, about whether, in her

opinion, she believes the defendant has engaged in the legitimate practice of medicine.  She is not qualified, however, to offer an expert opinion on whether the defendant was behaving "criminally" or as a "drug dealer," as her report indicates she intends to do.  Dr. Warfield is not a lawyer nor a law enforcement agent and she has neither the experience nor the qualifications sufficient to support such opinions.

For substantially the same reasons, the Government submits that the defendant should not be permitted to offer into evidence Dr. Warfield's "chart," proffered by the defendant and attached to Mr. Mazurek's February 23, 2106 letter, ostensibly comparing the standard for medical malpractice (presumably in civil litigation) to the standard for criminal liability in the instant case.   As an initial matter, and as set forth above, Dr. Warfield is not a legal expert and is not qualified to opine as an expert on the standard for "malpractice" as opposed to criminal conduct.  Nor is such a comparison relevant.  This Court will instruct the jury on the only standard it is to consider – that is, the law applicable to the charges set forth in the Indictment – and it will be confusing or worse for the jury to hear testimony about a legal standard (such as the standard for "malpractice") of no relevance to the charges in this case.  For this reason, the Dr. Warfield's proposed slide—which is clearly an attempt to bootstrap improper legal conclusions into conclusions about whether the defendant's conduct fell outside the usual course of expected practice—must be excluded.

Further, and particularly in light of the proffered testimony, the Government believes that Dr. Warfield may need to be instructed by the Court  about the proper scope of her testimony.  Further, it is clear that Dr. Warfield has a history of precisely this sort of improper bootstrapping.  For example, in *United States* v. *Cadet, et al*, 10 Cr. 80149 (S.D.Fla. 2013), Dr. Warfield would respond to questions on cross examination about typos in patient records by stating "Again, sir, every one of these practices has different forms, and, yes, sometimes are there are misspellings on these forms, and sometimes people use forms differently than others, but I know of nothing in this that's criminal or below the standard of care or would pose a problem" and "…[b]ecause something is misspelled on a form that – that you're implying that's criminal or below the standard of care, I think I could find misspellings on lots of [f]orms." (*Cadet*, Tr. Transcript at 226).  She then attempted to explain the law to the jury, testifying," … below the standard of care, you have malpractice, like, for example, a surgeon who leaves a sponge in somebody's abdomen; that's malpractice. Then way below that is criminal practice." (*Id*. at 252).  Indeed, when asked about the proper way to conduct a physical exam, Dr. Warfield again inserted her opinion about what was "criminal" and what was not.  The following exchange then took place:

> Dr. Warfield:  Yes. Do I think there are people practicing within the standard of care who do it differently? Yes.  Do I think its criminal not to have someone take their shirt off? Absolutely not.
>
> AUSA:  I don't think that was the question.
>
> Dr. Warfield: You asked me if it was absolutely essential that one disrobed, and what I'm saying is I think that is the optimal care that is done a lot of what you might see in that textbook. But do I think it's criminal or below the standard of care not to do something that they suggest in that book? No, I don't think it's below the standard.

>AUSA: Did I ask you if it was criminal?
>
>Dr. Warfield: No, but I said it wasn't criminal.
>
>AUSA: I see. But you're not in a position to make that determination, correct?
>
>Dr. Warfield: I'm in a position to give you my opinion as to what is below the standard of care and therefore malpractice and what is way below the standard of care, which is my understanding of what criminal is.

This testimony is patently improper. The defendant's summaries of Dr. Warfield's expected testimony in this case, taken together with her prior testimony, make clear that he intends use Dr. Warfield's testimony to invade the province of the Court and the jury. By testifying that the defendant was not acting as a drug dealer (as the Government alleges he was), and by stating that certain conduct does not qualify as "criminal," Dr. Warfield would essentially be delivering from the witness stand key portions of the defense summation. "When an expert undertakes to tell the jury what result to reach, this does not *aid* the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's." *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir.1994). Accordingly, the defendant should be precluded from eliciting testimony as to what Dr. Warfield believes is criminal, and whether the defendant was acting as a drug dealer, as the Government alleges.

Nor should Dr. Warfield be permitted to opine on the conclusions that she has drawn about whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. *See generally* Fed. R. Evid. 704(b) ("In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone."). For example, in his summary, the defendant states Dr. Warfield is expected to testify that the defendant appeared to have "misapprehended the meaning of numerical results" with respect to urinalysis reports. This is equally improper. The defendant is the sole person who can take the stand and set forth his mental state at the time he was reviewing urinalysis reports. Moreover, to the extent that Dr. Warfield is going to attempt to interpret the doctor's notes to draw a conclusion that the defendant *mistakenly* misread the reports that indicated his patients had dangerously high levels of oxycodone in their blood (some so high, the patient would have been dead – thus indicative of oxy being dissolved directly into the urine) or somehow did not understand them, this is obviously beyond the purview of her expertise and goes directly to the defendant's purported mental state.

Dr. Warfield's purported testimony that the defendant simply "made a mistake" in interpreting these records falls squarely within this prohibition. As does any testimony purporting to draw conclusions about the defendant's intent from records that "indicate Dr. Mirilashvili appeared to implement practice improvements over time, including news [sic] toxicology labs that produced more transparent lab findings." Along with being false, this testimony is offered to show the defendant's intent – and is not the proper subject of expert

4

testimony.  Rather, the expert's opinions will be used to frame arguments about what the defendant's state of mind must have been during the period of the charged conspiracy, cloaked in the guise of expert testimony.  This is improper, and should not be allowed.

### Conclusion

For the reasons set forth above, the Government respectfully submits that the defendant should be precluded from eliciting improper testimony from Dr. Warfield.

Respectfully submitted,

PREET BHARARA
United States Attorney

By:  \_\_/s/_____
Brooke E. Cucinella/Edward B. Diskant
Assistant U.S. Attorneys
212-637-2477/2294


Cc:   Henry Mazurek, Esq.
      Wayne Gosnell, Esq.