# Exhibit 3



305 Madison Avenue
New York, NY 10165
T: 212-922-1080
F: 212-949-8255

Henry E. Mazurek
Partner
mazurek@clayro.com

March 5, 2016

<u>Via Email</u>

Brooke E. Cucinella
Edward B. Diskant
Assistant United States Attorneys
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

      Re:    *United States v. Moshe Mirilishvilli, et al.,* 14 Cr. 810 (CM)

Dear Ms. Cucinella and Mr. Diskant:

      Pursuant to Fed. R. Crim. P. 16(b)(1)(C), Defendant Moshe Mirilashvili hereby makes these supplemental disclosures set forth below concerning the expert testimony he expects to offer at trial. I will not repeat the extensive qualifications, experience and education that Dr. Warfield has in pain management. They were provided to you in earlier submissions. This submission focuses on Dr. Warfield's review of specified patient files and materials relating to the list of 23 patients that the parties previously exchanged. All of Dr. Warfield's opinions will be expressed to a reasonable degree of medical and professional certainty.

      Dr. Warfield is expected to testify that based on her review of the records, Dr. Mirilashvili acted in accordance with generally accepted practices regarding the treatment of chronic pain and prescribing opioids during the time of the charged conduct. She is further expected to testify that Dr. Miriliashvili's prescription of controlled substances, specifically oxycodone, occurred within the usual course of professional practice, *i.e.*, the records revealed he acted as a medical professional, not as a drug dealer, and for legitimate medical purposes.

      Given the absence of any applicable state or federal requirements or regulations for assessing whether a medical professional was acting in the usual professional practice rather than as a drug dealer, Dr. Warfield is expected to testify that she drew indications about whether a medical professional was acting in the usual professional practice rather than as a drug dealer from her training and experience and from federal court decisions assessing whether a physician prescribed controlled substances as a drug dealer.

Edward B. Diskant
Brooke E. Cucinella
Assistant United States Attorneys
March 5, 2016
Page 2 of 3

      Dr. Warfield is expected to testify that evidence of Dr. Mirilashvili acting in the usual course of professional practice based on her training and experience included:

- Establishing a physician-patient relationship through office visits;
- Maintaining patient records;
- Conducting physical exams;
- Taking medical histories of patients before prescribing controlled substances;
- Obtaining informed consent of patients through use of written "Controlled Substance/Pain Management Agreement"
- Conducting periodic drug testing of patients placed on chronic pain opioid therapy;
- Scheduling follow-up patient visits and monitoring treatment in visits and through collateral information, including the New York Prescription Monitoring Program ("PMP")
- Not prescribing controlled substances or discharging patients when the medical professional has information that the patient is not using controlled substances for a therapeutic or medical purpose;
- Referring patients to other medical professionals, including to area specialists for surgery and consultations for specialized treatments;
- Providing on-site physical therapy to patients;
- Not prescribing solely oxycodone and including other non-opioid pharmacological therapy in the form of anti-convulsants, anti-depressants, muscle relaxants, non-steroidal anti-inflammatories;

      Dr. Warfield is expected to testify that all of these indications demonstrate that Dr. Mirilashvili operated a legitimate medical practice and was prescribing oxycodone in the usual course of professional practice and within the medical professional-patient relationship and not selling prescriptions as a drug dealer.

      Dr. Warfield is expected further to testify that she found plentiful evidence of Dr. Mirilashvili's use of clinical drug testing of patients who were prescribed opioids, and the use of at least three outside laboratories. She is expected to testify that Dr. Mirilashvili's actions in this regard constitute conduct within the usual course of professional practice. To the extent some files indicate exceedingly high concentrations of oxycodone, it appeared from the patient notes that Dr. Mirilashvili misapprehended the meaning of the numerical results. However, in evaluating conduct within the usual course of professional practice, experience and recent medical surveys have shown that practitioners generally rely on the ultimate findings of "positive" or "negative" results in drug screenings and often receive little formal training in urine testing and the interpretation of concentration levels in toxicology reports. The records also indicate that

Edward B. Diskant
Brooke E. Cucinella
Assistant United States Attorneys
March 5, 2016
Page 3 of 3

Dr. Mirilashvili appeared to implement practice improvements over time, including retaining news toxicology labs that produced more transparent lab findings.

      Records reflect some effort to moderate dosages on occasion and to modify adjuvant medications based on individual patient assessments.  Dr. Warfield is expected to testify that if a patient has reached a level of sustainable functionality and is not experiencing debilitating side effects on long-term opioid therapy, the exercise of medical judgment would not require reductions in dosages.  Indeed, a doctor should be cautious in assessing the risks to a patient of altering an efficacious treatment regimen, as in any other disease management.  Reducing dosages for patients performing well in functionality may lead to unwanted under-treatment of patients.

                                            Very truly yours,

                                            /S/HEM

                                            Henry E. Mazurek
                                            *Counsel for Defendant Dr. Mirilashvili*

Encl.