UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

UNITED STATES OF AMERICA,

    -against-

MOSHE MIRILASHVILI,

    Defendant.

------------------------------------------------------------x

S2 14 Cr. 810 (CM)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/11/16

RESTRICTIONS ON THE TESTIMONY OF DR. CAROL WARFIELD

McMahon, J.:

The Government has objected in advance to the anticipated testimony from the defendant's expert witness, Dr. Carol Warfield. Herewith the court's rulings on the scope of the expert testimony that may be offered by the defendant.

Dr. Warfield may testify that, after reviewing portions of the defendant's files, her opinion is that he was operating as a medical practitioner when he prescribed oxycodone to his patients.

She may disagree with Dr. Gharibo's opinion that there is "general consensus" or an "acceptable range" within the pain management community about the proper procedures for treating pain. She may testify that, in her opinion, there is no general consensus about when to prescribe oxycodone, or short acting opioids as opposed to longer acting opioids, or about the need for adjuvant treatments in addition to opioids for pain management.

She may testify about her understanding of "generally accepted medical practice" relating to pain management. However, Dr. Gharibo did not rely on "best practices" – indeed, I never once heard him use that term, he says he does not use it or know what it means; it appeared in the

Government's expert disclosure letter and in that regard it mischaracterizes what the doctor actually testified – any testimony designed to distinguish between "best practices" and "standards of care" is irrelevant and likely to confuse the jury. "Best practices" is not an issue in this case; neither, for that matter, is "standard of care." I do not intend to confuse the jurors by interjecting new terms into the case. The issue for the jury is whether the defendant was acting for a legitimate medical purpose and within the confines of legitimate medical practice when prescribing oxycodone, to the two Government witnesses who testified and to others.

The doctor will not testify about civil litigation or the standards used in civil litigation. She will not testify about whether particular standards are or are not appropriately for the purpose of evaluating the defendant's conduct. She may not offer any testimony that purports to distinguish between the standard for malpractice and the standard for criminal behavior. She may not offer any opinions that in effect constitute instructions in the law. She may only testify to her opinion about whether Dr. Mirilashvili acted within the usual course of professional practice and for legitimate medical purposes when prescribing oxycodone.

In support of that allowable testimony, Dr. Warfield may testify about whether pain medicine professionals follow usual or customary practices when assessing and treating patients. She may testify that, during the relevant period, only general guidelines and statements existed regarding the general aspect of medical management of pain. She may testify that there were no specific regulations or requirements of pain management doctors that would regulate how a particular patient should be treated. She may testify that there are no firm evidence-based medical standards for how to treat a patient with chronic pain. She may testify that there are no requirements to cease opioid prescription for patients on long term opioid therapy, and there are guidelines and recommendations about when to continue such treatment. She may testify that a

prescribing physician is acting within the usual course of professional practice if he is monitoring the safety and effectiveness of ongoing treatment, and that pain management doctors retain discretion to determine effective dosages given past medical history, tolerance levels, and the doctor's clinical experience in managing moderate to severe level of pain. She may testify that long-term use of opioids for management of chronic pain fell within the usual course of professional pain management practices during the times charged in the Indictment, and that there are no evidence based medical standards or regulations that restrict a pain management doctor from prescribing opioids for long term care, or from putting a new patient who is diagnosed with moderate to severe pain on opioid therapy.

Dr. Warfield may testify that, in her opinion, pain medicine professionals are not required to challenge or investigate patient statements or documents. She may testify that she herself has been fooled by patients on occasion (which is a fact, not an opinion).

That is Dr Warfield may testify. Equally important is what she may not address in her testimony.

Dr. Warfield may not opine that Dr. Mirilashvili was not behaving in a criminal manner or was not acting as a drug dealer. In fact, the words "drug dealer" and "criminal" may not pass her lips, and she should be so instructed by Mr. Mazurek and the defense team. It is for the jury and no one else to opine whether Dr. Mirilashvili was behaving criminally, or was acting as a *de facto* drug dealer, based on the totality of the evidence in the record in this case. I will strike any such testimony that may creep in, and any such testimony will subject the witness and the lawyer eliciting it to the very real possibility of contempt.

Dr. Warfield may not testify about any conclusions that she drew about Dr. Mirilashvili's practice as a result of reading federal court decisions assessing whether a particular physician

was acting in accordance with the usual course of professional medical practice and for a legitimate purpose. She may not mention other federal court cases, or indicate that they served as the basis for her opinion. Every case involving allegations of physician misconduct in connection with the prescription of drugs rests on its particular facts, and the only relevant facts in this case are the facts about Dr. Mirilashvili. What other finders of fact concluded about other doctors is of no moment to this jury, which is tasked only with considering the facts they have heard about Dr. Mirilashvili. In order to assess the validity and reliability of any opinion of Dr. Warfield's based on other cases, we would have to get into a level of detail about the practices of each physician who was the subject of one of the cases Dr. Warfield has read, so the jury could compare those doctors with Dr. Mirilashvili's practice. This frolic and detour would be a waste of time and would confuse the jurors. It will not be permitted.

Whether someone is prescribing medication in violation of the law is both the ultimate question in this case and a question that calls for a trier of fact to evaluate the conduct of a particular physician in the context of the court's instructions of law. I will tell the jury what the law is, and the jury will apply the facts about Dr. Mirilisvili's behavior to the law as I, and I alone, give it to them. What other juries or judges concluded about other doctors has no place at this trial.

Dr. Warfield may not testify about whether Dr. Mirilashvili had the mental state needed to commit the crimes charged. She may not testify to anything that was going on in Dr. Mirilashvili's head, including especially that he "made a mistake." She may not testify that, in her opinion, Dr. Mirilashvili misapprehended the meaning of numerical results of tests. She may not offer any "opinion" about what Dr. Mirilashvili might have thought or about what he must have done, either generally or in any particular circumstance. Only Dr. Mirilashvili can so

testify. Similarly, she may not testify that doctors who have little formal training with respect to the tests they prescribe. The only purpose for such testimony is to ask the jury to infer that Dr. Mirilashvili must not have been well trained with respect to urinalysis and its results, and so could only have been negligent, or committed malpractice. But only Dr. Mirilashvili can testify about how well or poorly he was trained on this subject.

Dr. Warfield may testify that her review of the records indicates that, over time, Dr. Mirilashvili improved his office practices as a pain management physician. It is for the Government to argue that her opinion in this regard is inconsistent with the evidence – for example, with the evidence about why Dr. Mirilashvili changed labs (purportedly because one of the labs, Aegis, discharged Dr. Mirilashvili, not *vice versa*).

As the parties will have noticed from my dealings with the Government's expert this afternoon, I am not in the habit of allowing experts to control their own cross examination. I rather imagine that the Government will ask Dr. Warfield yes or no questions. She may answer those questions yes, no, I don't recall, or I can't answer that question yes or no—with no further explanation. The Government has given me a sample of how Dr. Warfield testified in a case in another district while on cross—and with all respect to my colleague who presided over that case, I do not run my courtroom in that manner. Dr. Warfield will not be permitted to fight with the Government or with the court, or to take her answers beyond the Government's questions. Only if the Government asks an open ended question may Dr. Warfield give an open ended answer, and then limited to the scope of the question that was asked. Mr. Mazurek can always ask his witness to expand on answers when on redirect—subject, of course, to the rules I have just laid out.

I expect Mr. Mazurek and the defense team to communicate this to Dr. Warfield and I expect her to behave accordingly. I do not fancy having to threaten a witness with contempt, but I will not hesitate to do so.

Finally, I will not tolerate asking questions that violate this ruling. The defense has its objection to the court's exclusion of particular areas of questioning from the scope of Dr. Warfield's examination, as set out in this opinion. As should be apparent, I have lifted the areas of questioning from the parties' letters.

Dated: March 10, 2016

_____
U.S.D.J.

BY HAND AND BY ECF TO ALL COUNSEL