

305 Madison Avenue
New York, NY 10165
T: 212-922-1080
F: 212-949-8255

Henry E. Mazurek
Partner
mazurek@clayro.com

March 15, 2016

<u>Via ECF</u>

Honorable Colleen McMahon
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: *United States v. Moshe Mirilashvili*, S2 14 Cr. 810 (CM)

Dear Judge McMahon:

We represent Dr. Moshe Mirilashvili in the above-referenced case. We respectfully submit this letter brief in support of several motions relating to the government's improper arguments during its rebuttal summation. For the reasons that follow, Dr. Mirilashvili moves: (1) to reopen his case, introduce two additional recordings of patient visits between Dr. Mirilashvili and Jose Lantigua, and permit defense counsel limited time for sur-rebuttal argument to explain the significance of that evidence; (2) for mistrial, or in the alternative, a curative instruction to correct the government's improper argument regarding Dr. Mirilashvili's 2010-2011 income and prescribing practices that was based on a known false factual predicate that was not part of the evidence at trial; and (3) for a mistrial based on the government's pattern of intentional misconduct.

Hon. Colleen McMahon
March 15, 2016
Page 2 of 16

## I.

**THIS COURT SHOULD PERMIT DR. MIRILASHVILI TO INTRODUCE RECORDINGS AND TRANSCRIPTS FOR TWO ADDITIONAL PATIENT VISITS AND PERMIT DEFENSE COUNSEL LIMITED TIME FOR SUR-REBUTTAL ARGUMENT TO EXPLAIN THE SIGNIFICANCE OF THAT EVIDENCE.**

Dr. Mirilashvili respectfully submits this letter brief to further explain his first motion for mistrial and/or to reopen the case to receive additional evidence made at the end of the government's rebuttal summation. During its rebuttal argument, and with full knowledge that we would be unable to answer whatever it told the jury, the government said the following:

> MR. DISKANT: . . . By the way, Mr. Mazurek told you about questions that the defendant asked about referrals and about physical therapy and about surgery and you saw, if you look at the recordings, that *none of those things ever happened.* The questions get asked as part of the game, as part of the motions. *The answers are always the same. Yeah, I am going to do it in the future.* The prescriptions get written. This is going through the motions. It is fake. It is not legitimate medicine at all.

(Tr. 1392 (emphasis added).)

This statement to the jury was false and the government knew it. As discussed below, the Court should permit Dr. Mirilashvili to reopen the case and introduce two additional patient visit recordings to rebut the government's improper argument to the jury and permit defense counsel limited time for sur-rebuttal argument to explain the significance of that evidence.

Hon. Colleen McMahon
March 15, 2016
Page 3 of 16

  A.  <u>Improper Argument and Reopening the Case</u>

  The government's improper rebuttal argument succeeded in doing the very thing we warned about in our letter filed just last week on this very issue—that it would use the "recordings as both a sword and shield, picking and choosing those it prefers and preventing the defense from giving the jury a complete picture of the doctor's medical treatment" of Mr. Lantigua.  (Def't's Letter Br. *in Limine* Motions., ECF No. 221, Feb. 29, 2016 at 2.)

  During the trial, the government introduced recordings of patient visits between Mr. Lantigua and Dr. Mirilashvili that occurred on June 27, 2013; August 12, 2013; and September 12, 2013.  Those tapes and transcripts are before the jury. The remaining recordings are not.

  As the government well knew, however, during the *very next patient visit* between Mr. Lantigua and Dr. Mirilashvili on October 18, 2013, Dr. Mirilashvili asks Mr. Lantigua whether or not he had been able to use the referrals Dr. Mirilashvili gave him to see an orthopedic doctor, hydrotherapy, and an interventional pain management doctor.  (*See* DM-01 at 4, attached as Ex. A.)  Mr. Lantigua responded that he hadn't gone for various reasons.  Dr. Mirilashvili replied in exasperation "This is for your benefits.  Why do you think I'm giving you these referrals, I want to just waste my time and your time?  I want the what [unintelligible] I want, I want to know if they can remove the cause of your pain.  And I want to know if you're rebuilding your muscle ligaments."  (DM-01 at 5 (Ex. A).)

Hon. Colleen McMahon
March 15, 2016
Page 4 of 16

This is not, as the government told the jury, Dr. Mirilashvili following a "script" and getting the "same answer" from Mr. Lantigua. This recording shows that Dr. Mirilashvili followed up on referrals and inquired whether Mr. Lantigua scheduled surgery. He continued to do so during the very next patient visit.

During that visit, which occurred on November 20, 2013, Dr. Mirilashvili inquired again about his referral of Mr. Lantigua to an orthopedic doctor. Mr. Lantigua answered that he used Dr. Mirilashvili's referral and that the orthopedic doctor *scheduled him for surgery*. (DM-02 at 3-4 (attached as Ex. 2).) The doctor responded by asking Mr. Lantigua to bring him the orthopedic report recommending surgery and that "if it's necessary, I'll send you for a second opinion." (DM-02 at 5-6 (attached as Ex. 2).) This is not even close to the "same answer" that the government argues Mr. Lantigua gave "as part of the game." (Tr. 1392).

As we have argued time and again, the best evidence of what occurred during Dr. Mirilashvili's visits with Mr. Lantigua are the recordings made of those patient visits[1] and are admissible under various exceptions to the hearsay rule or as non-hearsay. *See* (Fed. R. Evid. 803(3) (state of mind)); (Fed. R. Evid. 803(4) (statements made for the purpose of medical treatment and diagnosis)); (Fed. R. Evid. 801(c) (for the non-hearsay purpose of the showing the effect on the listener); (*See United States v. DiMaria*, 727 F.2d 265, 272 (2d Cir. 1984) (for the non-hearsay purpose of showing verbal acts). The government has nevertheless tried to cherry-pick

---

[1] *See* Deft's Ltr. Br. for Mistrial,  ECF No. 232, March 12, 2016, at 3-5; *Deft's Ltr. Br. in Limine* Mots., ECF No. 221, Feb. 29, 2016, at 1-3.

Hon. Colleen McMahon
March 15, 2016
Page 5 of 16

recordings and mislead the jury about what happened.[2]  During its rebuttal

summation, the government crossed the line by now actually misstating the known

contents of the recordings.[3]

      The Court has the authority to reopen a criminal case after the close of

evidence and even after deliberations have begun.  *See United States v. Crawford*,

533 F.3d 133, 137, 138 (2d Cir. 2008).  Less controversially, it is well-settled that a

court can permit a defendant to reopen the case because a "court should correct

errors made in the course of trial while it still has the opportunity to do so."  *See*

*United States v. Burger*, 739 F.2d 805, 809-10 (2d Cir. 1984) (listing examples such

as the erroneous exclusion of statement cured by later admission of it).  In

determining whether to reopen the case, the Court should "consider the timeliness

of the motion, the character of the testimony, and the effect of granting the motion."

*Crawford*, 533 F.3d at 138 (quoting *United States v. Nunez*, 432 F.3d 573, 579).

Further, the party seeking to reopen the case should explain why it failed to present

the evidence in its case-in-chief, why it is relevant and admissible, and how it will be

helpful to the jury in determining guilty or non-guilt.  *Id.*

---

[2] For example, the government sought to introduce only a partial recording during the initial patient visit by omitting the portion of the recording wherein Dr. Mirilashvili discusses Mr. Lantigua's medical condition with him because it is "self-serving hearsay." As we have noted before, these recordings are not hearsay because they were statements made for the purpose of medical diagnosis and treatment and state of mind; alternatively, they are offered for the non-hearsay purpose of the effect on the listener or as verbal acts.

[3] The government's letter filed earlier today fails to even acknowledge the argument on trial transcript pages 1404-1406 about the additional recordings we seek to introduce, much less overcome it.

Hon. Colleen McMahon
March 15, 2016
Page 6 of 16

This motion satisfies all of the *Crawford* requirements.  First, the motion is timely.  Second, the defense was precluded from admitting the evidence during trial after being denied in two motions:  one made *in limine*, and a second made during trial.  Third, the evidence is now admissible and relevant to rebut false and improper arguments made by government counsel during rebuttal summation.  The additional patient-doctor recordings between Lantigua and Dr. Mirilashvili are now admissible not for the truth of the matter asserted but for the fact that they were actually said, contrary to the government's argument to the jury.

These additional recordings should be admitted to rebut the improper and false arguments made during rebuttal summation – at one of the most crucial junctures at trial.  *See Gonzalez v. Sullivan*, 934 F.2d 419, 424 (2d Cir. 1991) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)) (holding the government "so infected the trial with unfairness as to make the resulting conviction a denial of due process").  Here, the government told the jury that defense counsel was wrong when he made arguments that Dr. Mirilashvili "asked [Jose Lantigua] about referrals and about physical therapy and about surgery."  (Tr. 1392.)  The prosecutor relied on those selected recordings offered into evidence by the government at trial when he stated:  "if you look at the recordings, that none of these things ever happened." (Tr. 1392.)  This was a ***knowing*** false representation of the entire set of recordings because the government knew that Dr. Mirilashvili raised these same issues with the patient in the two subsequent office visits

Hon. Colleen McMahon
March 15, 2016
Page 7 of 16

which were recorded but not admitted at trial (because defendant's motions had been

denied).[4]

The government's opening the door to the admission of these subsequent

recordings could not be clearer.  If the record were left uncorrected, the jury could return

a guilty verdict based on false, material assertions by government counsel related to the

**only** recorded patient encounter introduced by the government at trial.  This would so

infect the record on the only contested trial issue  – *i.e.,* whether the defendant

intentionally acted outside the usual course of medical practice and without medical

judgment – to violate Dr. Mirilashvili's rights under the Due Process Clause of the

Constitution and its underlying principles of fundamental fairness. *See United States v.*

*Elias*, 285 F.3d 183, 190 (2d Cir. 2002).

Given the government's argument that Dr. Mirilashvili was simply playing a

game and always getting the same answer, at the very least these recordings are

admissible to show the effect on the listener (Dr. Mirilashvili) because they

demonstrate (1) that he is not always getting the same answer and (2) the effect it

had on him (his reaction).  Whether or not Mr. Lantigua had actually scheduled

surgery is immaterial—what is critical is that he *told* Dr. Mirilashvili that he had

done so in response to direct questioning from Dr. Mirilashvili and that Dr.

Mirilashvili reacted in response.  That is quintessential effect on the listener.

Moreover, those words—irrespective of their truth—obliterate the government's

---

[4] While the recordings of these subsequent patient visits are not in evidence, Special
Agent Muller testified about the instructions he gave Mr. Lantigua before each of them.
*See,* Tr. 207 (denying that he instructed Mr. Lantigua to tell Dr. Mirilashvili that he had
been scheduled for surgery).

Hon. Colleen McMahon
March 15, 2016
Page 8 of 16

argument Mr. Lantigua was just giving the "same answers" as part of a game.  There

was no script and the tapes prove that.

It would be error to permit the government to argue falsely to the jury that

Mr. Lantigua gave the "same answers" to questions "asked as part of the game"

when there is indisputable evidence *in its own possession* proving that to be false.

Moreover, it would be error to bar Dr. Mirilashvili from addressing this very

evidence with the jury, which he most certainly would have done had the evidence

been previously admitted.

## II.

**THIS COURT SHOULD GRANT A MISTRIAL OR IN THE ALTERNATIVE GIVE A CURATIVE INSTRUCTION TO CORRECT THE IMPROPER ARGUMENT DURING REBUTTAL SUMMATION THAT A COMPARISON BETWEEN DR. MIRILASHVILI'S PRESCRIPTION PRACTICES AND INCOME IN 2010-2011 WITH THOSE IN 2012-2014 PROVIDES A BASIS FOR CONCLUDING THAT HE WAS ACTING AS A "DRUG DEALER" IN THE LATTER YEARS.  THIS COMPARISON WAS BASED ON A KNOWN FALSE FACTUAL PREDICATE THAT WAS NOT PART OF THE EVIDENCE AT TRIAL.**

Dr. Mirilashvili respectfully submits further explanation of his second motion

for mistrial made at the end of the government's rebuttal summation on grounds of

prosecutorial misconduct.  The government made two related improper arguments

during summation that were based on facts not in evidence and which urged the

jury to make inferences based on known, improper factual predicates.  Specifically,

on rebuttal summation the prosecutor asked the jury to infer that Dr. Mirilashvili's

income and prescription practice during the relevant times in the Indictment were

Hon. Colleen McMahon
March 15, 2016
Page 9 of 16

clearly proof of "drug dealing" when compared to his practice and income during

the preceding two years – 2010 and 2011.

The government pointed the jury to several summary exhibits and

defendant's tax returns that were admitted (over objection) through DEA Analyst

Castro in making its argument.  (*See* GX 101, 104, 113 and 801-805.)  While the

prosecutor conceded that defense counsel was "right [in his closing argument that]

you have not heard a ton of evidence about what the doctor was doing at that time

[*i.e.,* 2010-2011]," (Tr. 1396), he went on to make damaging claims about the

meaning of this scant evidence.  Specifically, he concluded that because Dr.

Mirilashvili prescribed a "variety" of doses of oxycodone in 2010, this evidence

could be used to infer that when he prescribed largely 30 mg doses of oxycodone in

2012 to 2014, this was simply prescribing "the things that the defendant knew his

patients would pay for." (Tr. 1397.)   The prosecutor did not stop there.  He then

proceeded to make the same comparison between the defendant's lack of reported

income in 2010-2011 (GX801 and 802) to conclude that the money allegedly earned

in 2012-2014 was evidence of drug dealing.  Indeed, the government made this very

explicit argument:

> How do you know that the defendant knew all along
> that what he was doing was illegal?  How do you explain
> why it is that the defendant's prescribing habits
> changed so quickly?  It's the only story there is, money,
> greed.

(Tr. 1398.)

Hon. Colleen McMahon
March 15, 2016
Page 10 of 16

The problem with the government's argument is that it is based largely on facts not in evidence and on a known false factual predicate. When he made these statements, the prosecutor knew that Dr. Mirilashvili's medical practice in 2010 was extremely limited and qualitatively different from the practice he had in 2012 to 2014 because the doctor was still on medical probation and limited to the kind of work he could do. The prosecutor knew this because he authored an earlier motion *in limine* to admit other act evidence under Rule 404(b) that was partly based on this fact. In that motion, the government stated:

> By decision dated September 9, 2003, [the defendant's medical license was reinstated], subject to term of Probation *during which the defendant was required to work at a state-run facility and prohibited from engaging in private or unsupervised practice.* That term of probation ended on December 30, 2010, or approximately one year before the commencement of the charged criminal conduct.

(Gov. Motion *in limine* to admit Rule 404(b) evidence, ECF Doc. No. 171, Jan. 25, 2016, at 10 (emphasis added).) Thus, in making its rebuttal argument, the government was aware that Dr. Mirilashvili was on medical Probation for the entirety of 2010 – the period that it used to reach prejudicial and negative inferences about Dr. Mirilashvili's prescribing practice during the relevant times charged in the Indictment. On Probation, as indicated in the government's Rule 404(b) brief, Dr. Mirilashvili was largely restricted by being required to work in state-run facilities, which have strict prescription practices regarding controlled substances, and by having to work under another doctor's supervision. As such, he did not have discretion in issuing prescriptions and his income was limited to an

Hon. Colleen McMahon
March 15, 2016
Page 11 of 16

intern-type position.  These facts were not before the jury.  However, the

government used this improper factual basis to its unfair advantage and to

substantially prejudice the defendant by telling the jury that the doctor's later, and

substantially greater income, during the time of the Indictment was based solely on

his prescription patterns related to 30 mg oxycodone.

## **Argument**

This Court should grant a mistrial on grounds of prosecutorial misconduct

for reliance on improper argument that intentionally used facts not in evidence to

the defendant's substantial prejudice.

Justice Sutherland's opinion in *Berger v. United States*, 295 U.S. 78, 88 (1935)

is the cornerstone for any discussion of prosecutorial misconduct:

> The United States Attorney is the representative not of
> an ordinary party to a controversy, but of a sovereignty
> who obligation to govern impartially is as compelling as
> its obligation to govern at all; and whose interest,
> therefore, in a criminal prosecution is not that it shall
> win a case, but that justice shall be done.  As such, he is
> in a peculiar and very definite sense the servant of the
> law, the twofold aim of which is that guilt shall not
> escape or innocence suffer.  He may prosecute with
> earnestness and vigor – indeed, he should do so.  But,
> while he may strike hard blows, he is not at liberty to
> strike foul ones.  It is as much his duty to refrain from
> improper methods calculated to produce a wrongful
> conviction as it is to use every legitimate means to bring
> about a just one.

295 U.S. at 88.

As a general rule, "inappropriate prosecutorial comments, standing alone,

would not justify a reviewing court to reverse a criminal conviction obtained in an

Hon. Colleen McMahon
March 15, 2016
Page 12 of 16

otherwise fair proceeding." *United States v. Young*, 470 U.S. 1, 11-12 (1985).

However,

> Where the Government's case involves close factual
> issues and its proof of an element of the crimes alleged
> leaves room for a reasonable inference inconsistent
> with guilt, we will scrutinize claimed error with
> particular care.  Error which may be deemed relatively
> minor in other circumstances may reach prejudicial
> proportions in a close factual case such as this.

*United States v. Grunberger*, 431 F.2d 1062, 1066-67 (2d Cir. 1970); *United States v.*

*Burse*, 531 F.2d 1151, 1155 (2d Cir. 1976) ("Perhaps if the case against [defendant]

had been stronger, these improper comments would be of less significance.

However, in an admittedly close case such as this, prosecutorial misstatements take

on greater importance, whether those statements were intentional or not."); *United*

*States v. White*, 486 F.2d 204, 204 (2d Cir. 1973) ("When, as in the instant case, the

trial is short and devoid of any other claims of error, seemingly trivial prosecutorial

impropriety may stand out in bold relief.").  Ultimately, "to warrant reversal, the

prosecutorial misconduct must cause the defendant substantial prejudice by so

infecting the trial with unfairness as to make the resulting conviction a denial of due

process." *United States v. Elias*, 285 F.3d 183, 190 (2d Cir. 2002).

The Second Circuit has implemented a three-factor inquiry, evaluating "the

severity of the misconduct, the measures adopted to cure the misconduct, and the

certainty of the conviction absent the misconduct." *United States v. Friedman*, 909

F.2d 705, 709 (2d Cir. 1990); *see also Elias*, 285 F.3d at 190; *United States v. Burns*,

Hon. Colleen McMahon
March 15, 2016
Page 13 of 16

104 F.3d 529, 537 (2d Cir. 1997); *United States v. Modica*, 663 F.2d 1173, 1181 (2d

Cir. 1981).

    In this case, the government has relied heavily on data involving the

defendant's prescription practice and the level of income he earned from it.  In doing

so, it made the improper comparison argument between the time that the doctor

was on supervised medical Probation and when he was operating as a standalone

doctor.  This comparison leads to the false and substantially prejudicial conclusion

that the doctor's sudden decision to prescribe large amounts of 30 mg oxycodone

pills was tied directly to a decision to make money outside the usual course of

medical practice and without the exercise of medical judgment.  The government

knew this argument was improper based on the defendant's regulatory restrictions

at the time of the unfair comparison.  Nonetheless, it made this argument to the jury

at the critical juncture of the trial when it could not be answered by the defense – in

rebuttal summation – and in complete disregard to the false factual predicate on

which the argument rested.  This argument substantially prejudices the defendant

because it leaves the false but clear impression that he was motivated "by money,

greed" (Tr. 1398) to intentionally act outside the course of his own prior medical

practice during Probation in 2010.  This comparison substantially prejudiced Dr.

Mirilashvili because it goes to the heart of the only hotly contested issue of this trial.

Thus, a mistrial is respectfully requested and warranted.

    In the alternative (and without conceding that a curative instruction can

undo the effect of the prosecutor's highly prejudicial improper and factually

Hon. Colleen McMahon
March 15, 2016
Page 14 of 16

dishonest argument), the defendant requests a detailed limiting instruction from the

Court as a curative measure. *See Gonzalez v. Sullivan*, 934 F.2d 419, 424 (2d Cir.

1991) (the prejudice caused by improper government summation arguments can be

alleviated if the court issues detailed curative instructions).

The defense proposes that the Court give the following instruction at the

beginning of the proceedings tomorrow:

> I remind you that the closing arguments by the
> attorneys for each party are not evidence. Yesterday, in
> the government's rebuttal summation, counsel for the
> government urged you to compare Dr. Mirilashvili's
> prescription practices and income from 2010-11 to the
> time period charged in the Indictment from 2012-14.
> This argument was based partly on facts not in evidence
> at trial. As such, I instruct you now to disregard this
> argument presented in rebuttal summation. You are
> not to speculate why the defendant's income and
> prescription practices were different in the two years
> preceding the Indictment. You are to rely only on the
> evidence specifically presented at trial.

### III.

### THIS COURT SHOULD GRANT A MISTRIAL WITH PREJUDICE BASED ON A PATTERN OF INTENTIONAL MISCONDUCT BY THE GOVERNMENT.

The Court should declare a mistrial with prejudice based on the

government's intentional misconduct. This is the second and third times in a week

that the government has intentionally broken the rules and, in the process, causing

substantial prejudice to Dr. Mirilashvili.

Hon. Colleen McMahon
March 15, 2016
Page 15 of 16

*First*, the government argued to the jury facts it knew to be false, based on

evidence that had been excluded at trial, during its rebuttal summation thus

precluding Dr. Mirilashvili from responding to its improper argument.  We

addressed this issue above in Part I.

*Second*, the government improperly made another argument in rebuttal

summation based on facts not in evidence which substantially prejudiced Dr.

Mirilashvili.  We addressed this issue above in Part II.

*Third*, the government admitted that just a few days ago it violated the

Court's order to provide exhibits GX559, GX559-A, and GX560 in advance of a trial

date.  *See Government Letter dated March 13, 2016* (admitting that those documents

were "a late addition to the government's exhibit list" and "were not produced as

marked exhibits prior to DEA Analyst Adrian Castro taking the stand").

When the government engages in a pattern of intentional conduct designed

to "goad" a defendant into moving for a mistrial, the mistrial should be granted with

prejudice.  *See Oregon v. Kennedy*, 456 U.S. 667, 677 (1982).  The Supreme Court in

*Oregon* punished the prosecutor there for engaging in *intentional* misconduct for the

purpose of causing a mistrial.  While the facts are somewhat different—the

prosecutor persisted in asking improper questions of a witness—the clear import of

the case is that the government should not be rewarded with a do-over when it

engages in an intentional pattern of misconduct designed to force a defendant into a

Hobson's choice of seeking a mistrial and re-trying the case having already revealed

his defense strategy or having a curative instruction given to the jury and hope for

Hon. Colleen McMahon
March 15, 2016
Page 16 of 16

the best.  The government's pattern of misconduct and motive here are apparent

and should not be rewarded by such a do-over.

        For the foregoing reasons, Dr. Moshe Mirilashvili respectfully requests

that the Court grant the relief requested above.


        Respectfully submitted,

        /S/

        Henry E. Mazurek
        Wayne E. Gosnell
        *Counsel for Defendant Moshe Mirilashvili*

cc:    AUSA Edward Diskant
       AUSA Brooke Cucinella