

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 16, 2016

**VIA ELECTRONIC MAIL and ECF**

The Honorable Colleen McMahon
United States Magistrate Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    **United States v. Mirilashvili et al., S2 14 Cr. 810 (CM)**

Dear Judge McMahon:

    We write in response to the defendant's written submission dated March 15, 2016 and which seeks: (1) to reopen the case to offer addition recordings of "patient" visits between a Government CS and the defendant; (2) a mistrial, or in the alternative, a curative instruction with respect to the defendant's 2010 and 2011 tax returns and BNE data; and (3) for a mistrial based on what the defendant alleges to be "the government's pattern of intentional misconduct." (Def. Br. at 1.) The motions, which are baseless, are premised largely on distortions of the facts and the record, as well as new (and meritless) arguments never raised before. They should be rejected in their entirety.

### The Defendant's Motion to Reopen Should Be Denied

    As noted in the Government's prior letter on this subject, the defendant's initial motion to reopen, as made in Court, was based on the Governments' use of Government Exhibit 210 – the electronic patient file for the CS – which the Government correctly noted, in rebuttal, is essentially blank. (Tr. at 1392, 1402.) In the instant motion, the defendant cites to a different portion of the rebuttal argument which he now contends was misleading. That argument is equally meritless. The rebuttal comments in issue were very clearly made about the recordings *in evidence*. They accurately described those recordings and were made in direct response to a similar argument made by defense counsel about those recordings.

    The defense counsel, in his summation, focused the jury's attention on the three recorded patient visits offered into evidence by the Government, encouraging the jury to scrutinize them, and arguing, in relevant part:

> He also says, I'm going to refer you out to a specialist, interventional pain
> management and an orthopedic doctor. Because you see that's what the practice

> was. Dr. Mirilishvili was not going to cure you. He was going to give you a set of pain medication that you heard from expert doctors was the most popular around in opioid treatment and has been the longest around according to Dr. Warfield. He was going to refer you to other places so that maybe you can get better through surgery or therapy.

(Tr. 1341).

In its rebuttal, the Government responded to those arguments by walking the jury through those three recordings, discussing each recording in some detail (*E.g.* Tr. 1388-92). The theme of the Government's argument with respect to these recordings was that defense counsel had only focused on certain parts of them and left others out:

> Now, Mr. Mazurek talked to you a bit about the recording, and again I would caution you be careful about what the actual evidence in this case is, because I would submit to you that while Mr. Mazurek focused your attention on parts of the recordings, he carefully avoided some other parts.

(*Id.* at 1388.) As a part of that argument, the Government sought to address the issue of surgery and referrals:

> By the way, Mr. Mazurek told you about questions that the defendant asked about referrals and about physical therapy and about surgery and you saw, *if you look at the recordings*, that none of those things ever happened. The questions get asked as part of the game, as part of the motions. The answers are always the same. Yeah, I am going to do it in the future. The prescriptions get written. This is going through the motions. It is fake. It is not legitimate medicine at all.

(Tr. 1392) (emphasis added). The Government submits that when taken in context the above was an entirely fair comment on the recordings in evidence in which the CS, in fact, is generally evasive about whether or not he is taking any steps to follow up on referrals or physical therapy. We believe it was also, in context, a fair and proper response to the argument advanced by defense counsel about these recordings.

Nor was the statement above in any respect unfair given the existence of recordings not in evidence for two reasons. First, whatever was said in the subsequent recordings not in evidence could not possibly impact the defendant's knowledge and intent during the three recorded visits which are in evidence and which are the only acts the Government is asking the jury to consider in reaching its verdict. Put differently, anything the CS said in the November 2013 recording could not properly be used, post hoc, to render the defendant's activities in June or August or September of 2013 medically legitimate.

Second, and more important, the additional recordings – had they been offered in full – are entirely consistent with the Government's rebuttal argument because over the course of the additional recordings, the CS continues to give generally vague, evasive or non-sensical answers

when it comes to surgery or referrals. In urging a different conclusion, Mr. Mazurek focuses principally on the November 2013 visit in which the following exchange occurs:

> DR. MOSHE:   Did you use my referral? Did you see orthopedic doctor, Hydrotherapy, Physical therapy?
>
> CS:   Yeah, yeah.
>
> DR. MOSHE:   What the orthopedic doctor told you about your problem?
>
>   [ . . . ]
>
> CS:   He said next year for the surgery for me. [PAUSE] The next year.

Leaving aside the issue of how the defendant divined from "yeah, yeah" that the CS had seen the "orthopedic doctor" (as opposed to "hydrotherapy" or "physical therapy") the subject is never addressed again and appears to be entirely "forgotten" by the defendant.

Indeed in the next CS recorded visit – in January 2014 – the defendant appears to have no recollection (or notes) of the prior answer, asking the CS from scratch if he has used the referral to see the "orthopedic doctor" to which the CS now says that he has an appointment "two months from now."  A copy of this transcript is attached as an Exhibit hereto.

Then, in the next CS recorded visit, in February 2014 – or four months after the November exchange and nearly eight months after the CS began seeing the defendant – the defendant and the CS go through this routine yet again, with the CS providing yet another answer:

> DR. MOSHE:   Did he uses my, a, referrals? Did he see <u>orthopedic doctor?.</u>
>
> U/F:   Did you see the doctor of the bones?
>
>   [VOCES OVERLAP]
>
> DR. MORSHE:   <u>Orthopedic</u> [PHONETIC]
>
> CS:   Eh, I'm waiting until I get vacation from work. I'm doing exercises at home.
>
> U/F:   <u>He's waiting, umm, for him to get umm, for him to get vacation from his job but he's doing exercises at home.</u>

    DR. MOSHE:   <u>Okay</u>

A copy of the transcript of that recorded visit is also attached. Thus, were the Court to grant the defendant's motion, the jury would hear four tapes (not just the two the defense is asking to be admitted), which do nothing more than play out the same pattern heard on the three tapes already in evidence – a pattern which the Government fairly and accurately described in its rebuttal summation.

  To be clear, the Government's sole intent in making the comments at issue was to comment, fairly we submit, on the recordings *in evidence*, and we believe the transcript of the rebuttal summation reflects as much. However, it is simply inaccurate for Mr. Mazurek to suggest that the Government's argument was inconsistent the subsequent recordings not in evidence. To the contrary, and as outlined above, the subsequent are entirely consistent with the argument the Government was making – that "[t]he questions get asked as part of the game, as part of the motions. The answers are always the same. Yeah, I am going to do it in the future. The prescriptions get written." (Tr. At 1392). These subsequent visits are also entirely consistent with the Government's use of Government Exhibit 210 which reflects absolutely no notes of any of these encounters (and which presumably explains why the defendant seemingly never has any recollection of asking these questions or any answers given by the CS in prior encounters).

## **The Latest Motion for a Mistral Should be Denied**

  Next, the defendant contends the Government made improper arguments with respect to: (1) the defendant's income and tax returns from the period 2010 and 2011, and (2) the defendant's BNE data for that time period. In particular, the defendant contends the Government's rebuttal arguments were "based largely on facts not in evidence and on a known false factual predicate." (Def. Br. at 10.) Those arguments are meritless.

  As an initial matter, and as the Court is well aware, the defendant's tax returns and BNE data – and, in particular, from the 2010-11 time period – have both been the subject of extensive motion practice by the defendant. The Court has repeatedly rejected motions to keep that evidence from the jury, and the Government submits that its use of that evidence was entirely consistent with the purposes expressly approved by this Court – that is, to show the defendant's "sudden accumulation of wealth" and to show the comparison between the defendant's prescribing habits before and during the period of the charged conspiracy. A copy of the Government's prior letter on this subject, the reasoning of which the Court substantially adopted in denying this motion the last time, is attached as an Exhibit hereto.

  Moreover, the arguments in question – which sought to show not only the defendant's knowledge but also to offer a motive for his criminal activity – were an entirely fair response to the thrust of the defendant's summation which centered on the notion that the Government had not established how or why the defendant, at the "young age of 65" suddenly became a drug dealer. Indeed, Mr. Mazurek made this point in his closing at least three times:

> "The evidence does not show and did not show throughout this trial that Dr. Mirilishvili woke up one day at age 65 and decided to become a drug dealer." (Tr. at 1330).
>
> "They did not prove beyond a reasonable doubt that he suddenly abdicated his role as a doctor at age 65" (Tr. at 1332.)
>
> "I submit to you, ladies and gentlemen, that the government has not even come close to show that when he turned 65 and he moved to West 162nd Street he decided to become a drug dealer." (Tr. at 1368.)

In light of those arguments, the Government was entitled to respond by offering the jury a theory of motive – that is, by using the BNE data and tax returns to show *why* the defendant, at 65, suddenly changed his prescribing habits, which was precisely the context in which the Government made the comments now at issue. (Tr. at 1398) ("How do you explain why it is that the defendant's prescribing habits changed so quickly?  It's the only story there is, money, greed.")

Finally, to the extent the defendant now claims (for the first time) that the comparison between 2010 and the time of charged conspiracy is unfair given that the defendant was still serving a term of state Probation in 2010, the Government would be more than happy to offer evidence of that fact, should the case be reopened.[1]

## The Defendant's Motion for a Mistrial Based on Government Misconduct Should Be Denied

Finally, the defendant moves for a mistrial based on what he describes as an "intentional pattern of Government misconduct."  With respect to the first two issues raised by the defendant, the motion should be denied for reasons set forth above – there was no misconduct here.  With respect to the third issue, this is the *third* time the defendant has tried to falsely characterize the Government's actions as misconduct.  He has been wrong the two times he tried to do it before, and he remains wrong now.

In its prior letter on this subject, the Government conceded an error with respect to the Court's Order regarding the administration of the trial. As detailed in that letter, this error was far

---

[1] This argument would have no bearing at all on 2011, which the Government also highlighted for the jury and which reflects substantially identical prescribing data, in particular, because the defendant was not on Probation in 2011.  More generally – and particularly given the similarities between the defendant's conduct in 2011 (when he was not on Probation) and 2010 (when he was), the defendant's underlying assertion that his 2010 practice was "extremely limited and qualitatively different" seems questionable, at best.  The Government's understanding is that the defendant's 2010 practice differed only in that the defendant was required to practice in a state-run or supervised facility (rather than in a private office).  He was, to the Government's knowledge, still practicing pain management medicine in 2010.

from intentional – the exhibits in question were a late addition to the Government's exhibit list, added in response to the cross examination of Joel Galanter and Damon Leonard.[2] Moreover, as the Government noted in its prior response, the admission of probative, relevant evidence, properly and legally recovered from the defendant's home, does not prejudice the defendant, and thus is not cause for a mistrial. "Courts have the power to declare a mistrial whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated…." *United States* v. *Klein*, 582 F.2d 186, 190 (2d Cir. 1978) (omission in original) (internal quotation mark omitted). This Court's power to grant a mistrial should be used only "with the greatest caution, under urgent circumstances, and for very plain and obvious causes." *Id.* (quoting *United States* v. *Perez*, 22 US. (9 Wheat.) 579, 580 (1824)).

      The defendant *again* cites to *Oregon* v.*Kennedy*, 456 U.S. 667, 677 (1982), the same case he cited to in his previous mistrial motion. That case – in which a prosecutor repeatedly asks a witness a question he has been warned not to, in front of the jury – remains as irrelevant to the facts before the Court today as it was this weekend.

      The defendant's motion for a mistrial because of Government misconduct is baseless, and it should be denied as such.

      Respectfully submitted,

      PREET BHARARA
      United States Attorney

By:    /s/
      Brooke E. Cucinella/Edward B. Diskant
      Assistant U.S. Attorneys
      212-637-2477/2294

Cc:    Henry Mazurek, Esq.
         Wayne Gosnell, Esq.

---

[2] Significantly, the Court was aware of this fact at the time it overruled defendant's original objection to these exhibits. *See* Tr. 1070-1071.