```
                                                                   1
     G6EHLEOS


1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                            14 CR 810 (CM)

5
     DAMON LEONARD,
6
                                             Sentence
7                   Defendant.

8    ------------------------------x

9                                            New York, N.Y.
                                             June 14, 2016
10                                           4:00 p.m.

11
     Before:
12
                          HON. COLLEEN MCMAHON,
13
                                             District Judge
14
                              APPEARANCES
15
     PREET BHARARA
16        United States Attorney for the
          Southern District of New York
17   BROOKE E. CUCINELLA
          Assistant United States Attorney
18
     IRVING COHEN
19        Attorney for Defendant

20

21

22

23

24

25


                       SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
```

1                (Case called)

2                MS. CUCINELLA:  Brooke Cucinella on behalf of the
3      government.  Joining me at counsel table is Ben Levander, who's
4      an intern in our office this summer.  Good afternoon.

5                THE COURT:  Good afternoon.

6                MR. COHEN:  Good afternoon, Your Honor.  Irving Cohen
7      appearing for Mr. Leonard.

8                THE COURT:  Good afternoon, Mr. Cohen.

9                Mr. Leonard, have a seat.  This matter is on for
10     sentencing under docket No. 14 CR 810-02, United States of
11     America v. Damon Leonard.  Mr. Leonard having been found guilty
12     by plea to one count of conspiracy to distribute and possess
13     with intent to distribute oxycodone in violation of 821 United
14     States Code, Sections 846 and 841(b)(1)(C), this Class C felony
15     carries with it a statutory maximum sentence of 20 years'
16     imprisonment, a statutory mandatory minimum of three years'
17     supervised release to a maximum of life, up to a $1 million
18     fine, a mandatory $100 special assessment.

19               In connection with today's proceedings, I have
20     received and reviewed a presentence report prepared on June 7,
21     2016, by United States Probation Officer Johnny Y. Kim.  I have
22     from the government a written notice of intent to move pursuant
23     to Section 5K1.1 of the sentencing guidelines.  I have from
24     Mr. Cohen, dated June 8, 2016, a very short letter brief.  I
25     have three letters, one from Mrs. Charisse Leonard, one from

```
                                                                 3
     G6EHLEOS
```

1   Ms. Satariel Greer, a case manager at Volunteers of America of
2   Greater New York, and one from Prestige Management
3   Incorporated.
4              Is there anything else I should have seen in writing
5   prior to today's proceedings from the government?
6              MS. CUCINELLA:  Not from the government, your Honor.
7              THE COURT:  From the defendant?
8              MR. COHEN:  No, your Honor.
9              THE COURT:  Has the government reviewed the
10  presentence report?
11             MS. CUCINELLA:  Yes, your Honor.
12             THE COURT:  Any additions, deletions, or corrections?
13             MS. CUCINELLA:  No, your Honor.
14             THE COURT:  Does the government now make the motion
15  contemplated by its written submission?
16             MS. CUCINELLA:  It does your Honor.
17             THE COURT:  What would you like to say, if anything,
18  to supplement that, Ms. Cucinella?
19             MS. CUCINELLA:  Just briefly, your Honor, I wanted to
20  address the fact of the unusual circumstances under which
21  Mr. Leonard came to cooperate here.  He is one of the
22  defendants in this case who expressed very early on his
23  intention to accept responsibility for his role.  We, the
24  government, then approached him and asked if he'd be willing to
25  come in and meet with us, and he did right away.  From the time

```
                                                                4
        G6EHLEOS
```

1   we sat down, to be perfectly candid, Mr. Leonard and I had to
2   figure out how to communicate with each other; and it was a bit
3   of a process just being able to figure out for him to
4   understand exactly what I was asking of him and for me to
5   understand exactly what he was saying.  That was a bit of a
6   process, and it was an involved process that Mr. Leonard took
7   on wholeheartedly.
8             He met with me multiple times a week in preparation
9   for trial, all the while raising his children, being very
10  involved as a parent, and also maintaining full-time
11  employment.  There were times, I believe I mentioned in my
12  letter, where I know that Mr. Leonard went in at 4:00 and 5:00
13  a.m. so that he could meet with me for hours in the evening to
14  make sure that he was prepared to testify at trial.  Your Honor
15  will recall the first day of trial he was so nervous on the
16  stand he had a hard time answering questions, and I think part
17  of that was because we had met in preparation and it was
18  important to him to be completely forthcoming, to answer all
19  the questions directly.  And I think, once he finally got
20  comfortable, the information that he provided and the story he
21  was able to present to the jury was incredibly compelling and
22  played a huge role in the trial and really gave the jury a
23  sense of what went on.
24            Mr. Leonard's role in this case, obviously, what he
25  did was bad, and he completely accepted responsibility for it.

```
                                                           5
       G6EHLEOS
```

1   I think that there is no question that he has shown a ton of
2   remorse.  I do not think this is an individual who your Honor
3   is going to see again.  I think that he learned extreme lessons
4   here, and I am incredibly appreciative of the assistance that
5   Mr. Leonard provided for this investigation in this case.  I'll
6   also note that following the trial with another oxy doctor
7   investigation that's ongoing in the office, he came in
8   willingly and met with another AUSA on that investigation,
9   totally separate, and again on his only day off during the
10  week.
11          Unless your Honor has additional questions, that's all
12  I wanted to bring to your attention.
13          THE COURT:  Is the government interested in having
14  further cooperation as a condition of supervision?
15          MS. CUCINELLA:  I believe he has already provided the
16  information that we need.  We can include it.
17          THE COURT:  I just wondered if you had any reason to
18  want that.
19          MS. CUCINELLA:  It's not my investigation, and I don't
20  know the status of it.  But I also feel confident that if we
21  were to ever call Mr. Leonard and ask him to come in, I am
22  confident that he would come.
23          THE COURT:  Thank you.
24          Mr. Cohen, have you reviewed the presentence report
25  and gone over it with Mr. Leonard?

G6EHLEOS

1             MR. COHEN:  I have, your Honor.
2             THE COURT:  I'll hear you on sentencing.
3             MR. COHEN:  Well, just on the last point, there's no
4     problem having such a condition on any term of supervised
5     release, but as Ms. Cucinella says, I don't think it would be
6     necessary.  I think Mr. Leonard would be, as he's demonstrated,
7     more than willing to come in without any requirement to come in
8     because of the intense remorse that he has felt.
9             I have been extremely impressed with the manner in
10    which he's dealt with this case and his life while under the
11    pressure of having this case hanging over him.  He's supported
12    his family.  He's got a great job.  I mean, the letter from
13    Clayton Johnson is quite remarkable.  In simple summation, we
14    have found excellence in Mr. Leonard.  It seems to me, your
15    Honor, that the probation department has correctly analyzed his
16    situation, and I don't have much more to add.  I think it's
17    pretty clear from the information that your Honor has from the
18    report, my somewhat short letter, and the letters that you got,
19    especially from his wife.  This is a dedicated family man who
20    just wanted to support his family and give them the best life
21    he could.  And he made a horrible mistake here, and he quickly
22    came to terms with it and knew what he had to do in order to
23    present himself and become back who he really is.
24            Again, if your Honor has any questions of me, I'd be
25    glad to answer them.

```
                                                               7
    G6EHLEOS
```

1             THE COURT:  No, I don't.  Thank you.
2             Mr. Leonard, do you have anything to say before I
3    sentence you?
4             THE DEFENDANT:  Yes.  First of all, I want to say I
5    apologize for putting everybody through this, myself, my
6    family.  I just want to try to get on with my life, be the best
7    father I can to my kids and be the best husband to my wife.
8    And that's pretty much it.  Pretty much it.
9             THE COURT:  Well, I have to tell you, Mr. Leonard,
10   there's so many stories and so many cases that break my heart,
11   but your story breaks my heart for a new and different reason.
12   It breaks my heart because you were doing everything right, and
13   somehow you still got involved in this mess with this really
14   bad man.  And when I say you were doing everything right, you
15   were employed.  I know you lost your job.  You had a history of
16   employment.  You were married.  You had children in the context
17   of that stable relationship.  You were taking care of those
18   children.  You were doing all the things that I don't hear
19   about in 99 percent of the drug cases where I have to sentence
20   somebody, and you're still sitting here.  And I scratch my head
21   trying to figure out how you could possibly have gone so wrong
22   and how you could have put that beautiful woman and those sweet
23   children at risk.  I truly don't understand it.
24             I try to understand people when I'm thinking about
25   sentencing.  I try to come up with a motive.  I hear Mr. Cohen

                                                                8
    G6EHLEOS

 1   say you wanted to support your family again, having difficulty
 2   finding work.  I'm sure that this looked like easy money, but
 3   you knew right from wrong.  And it was a great tragedy that you
 4   didn't act on what you knew but were lured down the wrong path.
 5   Tragedy for you, a terrible tragedy for your life.
 6            Unlike many of the actors in this and similar
 7   tragedies, you tried to find a way to redeem yourself.  You did
 8   it early and you did it on your own, and you manned up in every
 9   way and took responsibility for what you had done.
10   Ms. Cucinella's right, it's very strange for me to hear that
11   the government recruited you; you didn't offer yourself to the
12   government.  But by doing that, you played a very major role,
13   quite possibly larger than you or I could ever know, in
14   securing the conviction of Dr. Mirilishvili, who, frankly, is
15   as bad a person as I've ever encountered in a courtroom, and
16   allowing justice to be done.  And you're entitled to a great
17   deal of credit for that.
18            It's not always the case that you're entitled to as
19   much credit as the probation department has recommended and
20   your lawyer has asked for and as, I think, although she can't
21   say so, Ms. Cucinella would like to see because you still
22   committed a terrible crime; and you were a key and integral
23   player in this disgusting enterprise that was being played out
24   up on 162nd Street and in the ruination of lots of different
25   lives.  You know, it's funny, the ruination of lives for many

9

G6EHLEOS

1    different reasons.  First, there's, obviously, your own life
2    and your family's life which are threatened with ruin; second,
3    there are all those addicted people who were able to procure
4    drugs, very high cost, out on the street to feed their habits;
5    and, third, this is the really interesting part, there are a
6    whole lot of people who actually need pain medication who are
7    actually in serious, severe, debilitating pain who are going to
8    find it more difficult in years to come to secure through the
9    legitimate channel of prescription that pain medication because
10   of this horrible wave of addiction on and the street sale of
11   these pain killing medications, and then when that gets too
12   expensive, people graduating to heroin, which is cheaper.
13            This whole cycle is resulting in a crackdown on the
14   issuance of perfectly legitimate prescriptions for oxycodone.
15   And as a result, you could read articles about it in the
16   newspaper last week and in the weeks preceding, you can read
17   about how people who use these drugs quite legitimately over
18   long periods of time for pain are suddenly finding that they're
19   unable to obtain a prescription.  Why?  Because people like
20   Dr. Mirilishvili wrote thousands of illicit prescriptions and
21   people like you facilitated the distribution of the resulting
22   drugs through the community.
23            There's all kinds of fallout from what you did, and a
24   lot of people were injured.  And that being the case, my
25   instinct would be to reward you generously for your cooperation

G6EHLEOS                                                          10

1   but still to make you do some time.  The thing that will tip me
2   toward the probation officer's recommendation, which I'm going
3   to accept with some reluctance, I admit, but I'm going to
4   accept it, is that your family situation is so extraordinary.
5   You're employed.  You're obviously valued by your employer.
6   You are in the home.  You are guiding the next generation.  You
7   are supporting your wife.  She's your wife; she's not someone
8   you visit every now and again.  She's the person that you've
9   chosen to build a life with.  It's all very old fashioned, and
10  it's kind of too good to be true.  But I see this and I say:
11  His kids have a shot.  His kids have a chance.  And in the end,
12  I just can't take it away from the kids.
13           So I'm going to let you go home and hope that you will
14  stay on the path that you have followed since your arrest.  I
15  promise you that if you step off that path, for the next five
16  years, which is the term of supervision that I'm going to
17  impose on you, if you step off that path one time, I will put
18  you in jail.  This is the one and only break I'm going to cut
19  you.  It's a huge break, and I would have given you a big break
20  anyway, just because your cooperation was so extraordinary, but
21  it's almost against my better judgment that I'm not making you
22  do some time given your extensive and significant -- I mean,
23  you were an insider here.  You were inside the clinic -- given
24  your involvement in this crime.  So I'm going to go against my
25  instincts and hope that I guess incorrectly and Ms. Cucinella

                                                                         11
    G6EHLEOS

1    is right and that Mr. Cohen is right and that the probation
2    officer is right and that I'll never see you again.  But if I
3    do see you again, I'm just warning you, I won't be happy with
4    myself, and I'll take it out on you.  Clear?
5              THE DEFENDANT:  Yes, ma'am.
6              THE COURT:  Ma'am, you okay?  You okay?
7              Could you stand up, please.
8              I have reviewed the presentence report.  I accept and
9    adopt as my findings its description of the offense and the
10   offense conduct, its description of the defendant's role in the
11   offense, its computation of the guidelines.  The total offense
12   level is 25.  The defendant's Criminal History Category is I,
13   which plays a role in the sentencing decision that I make.  The
14   government's letter, its brief in support of its motion for a
15   downward departure pursuant to 5K1.1(a)(1) through (5) of the
16   sentencing guidelines, which motion I grant, is comprehensive
17   in its description of the defendant and of his cooperation and
18   its extraordinary nature, how it came about, and the role that
19   it played in securing the conviction of Dr. Mirilishvili.  I,
20   for one, having observed the trial, believe Mr. Leonard to have
21   been the critical witness in the case and his testimony to have
22   played a substantial part.  If I'd been in the jury room, I'm
23   willing to bet I would have heard a lot of discussion about
24   your testimony because it was very important, certainly to me
25   in forming my own views about the case.

                      SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300

1                Therefore, I find, as requested by the government,
2     that Leonard's assistance was significant and useful; his
3     information was truthful, complete, and reliable; his
4     assistance was substantial and important; his assistance was
5     timely; and while there is no present information about danger
6     or risk of injury to Mr. Leonard as a result of his
7     cooperation, I am no less cognizant than the government is of
8     the view on the street and in the community of snitches and am
9     aware that that is always an element that has to be at the back
10    of someone's head when he decides to do the right thing and
11    cooperate.  He's always doing it at some sort of risk to
12    himself.
13               So, on the whole, the government's motion has
14    tremendous merit, and I intend to follow the recommendation of
15    the probation officer, which is to sentence the defendant to
16    time served.  There's so much space up here that my books are
17    not readily at hand.
18               At a total offense level of 25 and a Criminal History
19    Category of I, the guideline provision would be 57 to 71
20    months.  I am reducing the total offense level for purposes of
21    sentencing to a offense level eight.  That is a downward
22    departure and that allows me to sentence the defendant to time
23    served, which I do, to be followed by a term of five years'
24    supervised release.  Three years is the mandatory minimum.  I'm
25    giving you five.  We may cut you loose early if all goes well,

13
G6EHLEOS

1  but I just think that given, really, the severity of the crime,
2  that the absolute minimum is not warranted, especially given
3  that no prison term is involved here.  I'm not imposing a fine.
4  The defendant has no ability to pay.  Restitution is not
5  applicable.
6           Is the government seeking forfeiture from Mr. Leonard?
7           MS. CUCINELLA:  No, your Honor.
8           THE COURT:  I am assessing you a special assessment,
9  that's court costs, of $100 due and payable immediately.  So
10 you need to pay that.
11          Let's talk about what's going to happen over the next
12 five years.  You're going to report to a probation officer in
13 this building within 72 hours.  Probation office is down on the
14 sixth floor.  You're going to be assigned a regular officer,
15 and you will report to that officer on a schedule to be set by
16 the officer.  And you will do everything the officer tells you
17 to do, and if the officer tells you you can't do something, you
18 will not do it.  Do you understand, sir?
19          THE DEFENDANT:  Yes, ma'am.
20          THE COURT:  So there are some standard conditions of
21 supervision that you're going to have to comply with.  You
22 shall not commit another crime, federal, state, local, felony,
23 misdemeanor, violent, nonviolent, serious, doesn't seem very
24 serious to you.  I don't care.  Don't commit another crime.  If
25 you commit another crime, they're going to tell me about it,

1   and they're going to violate you.  And the judge in whatever
2   your case is will sentence you for whatever it is that you've
3   done, and then I'll sentence you for violating the term of
4   supervision that says you cannot commit another crime.  And it
5   is not my habit to cause those two sentences to run together,
6   just so you know.  It's all fair warning.  I'm just trying to
7   warn you that I really intend to have you under my thumb.  Got
8   it?
9          THE DEFENDANT:  I understand.
10         THE COURT:  You shall not illegally possess a
11  controlled substance.  You shall not possess a firearm or
12  destructive device.  You have to refrain from the unlawful use
13  of controlled substances.  You have to submit to one drug test
14  within 15 days of your placement on supervised release.  My
15  guess is they will do that when you see them at your first
16  appointment in the next three days, and then you'll have at
17  least two unscheduled drug tests thereafter as directed by your
18  probation officer.  And if you test positive, they will let me
19  know.  Just remember, I'm a zero tolerance judge, and I am not
20  a social services agency.  I'm not interested in helping people
21  get over their drug addictions.  I'm a judge, and I'm
22  interested in having people comply with the rules, and the
23  rules are do not use unlawful substances.
24         You shall cooperate in the collection of genetic
25  identifying material, DNA, as directed by the probation office.

1    You have to obtain, you already have, and you have to maintain
2    legitimate and verifiable employment.  Legitimate and
3    verifiable you have now.  It requires that the probation
4    officer be able to call your boss and say:  Is Damon there?  Is
5    he working regularly?  How much did he make last week?  Can I
6    have a copy of his pay stub?
7             You can't be found in places where criminal activity
8    is being planned and carried out.  Remember, using drugs is
9    criminal activity.  Doesn't matter that you're not using.  If
10   you're where other people are using, you've got a problem;
11   you've got to leave.  And you can't associate with people who
12   have been convicted of crimes.
13            You have to let your probation officer know where you
14   live.  You have to let your probation officer know where you
15   work, and you can't change those places without giving ten
16   days' notice to the probation officer.  If you were to sign a
17   lease on a new apartment, the probation officer would actually
18   have the right to go and check it out, see if it's in a good
19   place or maybe it's in a bad place; maybe it's someplace the
20   probation officer doesn't think you ought to be living.  They
21   have that kind of control over you.  Let's say there's an
22   emergency.  Let's say there's a gas leak in your apartment,
23   there's a fire in the building, and you have to leave, you have
24   to vacate.  You have 48 hours to call your probation officer
25   and let him or her know where you can be found.

```
                                                                   16
     G6EHLEOS


1               All right.  You have to comply with all of the other

2    standard conditions of supervision.  I've been asked to impose

3    a special condition prohibiting you from operating a motor

4    vehicle unless you obtain a valid driver's license.  Get a

5    driver's license.  It's my recommendation that the defendant be

6    supervised by his district of residence.

7               I don't know this because of the unusual circumstances

8    in which this gentlemen became a witness for the government, if

9    he had already taken a plea, if he had already signed an appeal

10   waiver, or if this is a no waiver case.

11              MS. CUCINELLA:  I believe it's a no waiver case.  He

12   pled pursuant to a cooperation agreement.

13              THE COURT:  Okay.  Fine.  Sir, you have the right to

14   take an appeal from the sentence I have imposed upon you.  You

15   have a right to counsel in connection with any appeal you might

16   choose to file.  And if you cannot afford a lawyer, one will be

17   appointed to represent you without cost.  Do you understand?

18              THE DEFENDANT:  Yes.

19              THE COURT:  Have a seat.

20              Mr. Cohen, what else do we have to do?  Anything?

21              MR. COHEN:  I think that's it, Judge.  Thank you.

22              THE COURT:  Ms. Cucinella?

23              MS. CUCINELLA:  That's it, Judge.

24              THE COURT:  Mr. Leonard, I wish you the best of luck.

25              Ma'am, the best of luck.
```

```
                                                                  17
          G6EHLEOS

1                   Take care of the offspring.  Yes, sir.
2                   THE DEFENDANT:  Yes, may I stand?
3                   THE COURT:  Sure.
4                   THE DEFENDANT:  Just wanted to say thank you, Judge,
5         Ms. McMahon, and I appreciate this sentence.
6                   THE COURT:  Take care of the children, please.
7                   THE DEFENDANT:  Thank you.
8                   THE COURT:  Take care of your offspring.
9                   THE DEFENDANT:  Okay.
10                  THE COURT:  Get them safely to responsible adulthood,
11        and that's all the thanks I need.  It would mean the world to
12        me.
13                  THE DEFENDANT:  Okay.
14                  THE COURT:  These proceedings are closed.
15                  (Adjourned)
16
17
18
19
20
21
22
23
24
25
```