1

G4QKWILS                    Sentence


 1    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------x

 3    UNITED STATES OF AMERICA,

 4              v.                        14 CR 810 (CM)

 5    RAYMOND WILLIAMS,

 6                    Defendant.

 7    ------------------------------x

 8                                       New York, N.Y.
                                         April 26, 2016
 9                                       5:00 p.m.

10

      Before:
11
                         HON. COLLEEN McMAHON,
12
                                         District Judge
13

14                         APPEARANCES

15
      PREET BHARARA,
16         United States Attorney for the
           Southern District of New York
17    BROOKE CUCINELLA
           Assistant United States Attorney
18
      STEWART ORDEN
19         Attorney for Defendant

20

21

22

23

24

25

2

G4QKWILS                    Sentence

1           THE DEPUTY CLERK:  Judge, this is 14 CR 810, United

2    States of America versus Raymond Williams.

3           Your appearances, please.

4           MS. CUCINELLA:  Brooke Cucinella, on behalf of the

5    government.  Good afternoon, your Honor.

6           THE COURT:  Good afternoon, Ms. Cucinella.

7           MR ORDEN:  Your Honor, good afternoon.  Stewart Orden,

8    for Mr. Williams.

9           THE COURT:  Good afternoon, Mr. Orden.

10          This matter is on for sentencing under Docket

11   No. 14 CR 810, United States of America versus Ray Williams.

12          Mr. Williams, having been found guilty by plea to one

13   count of conspiracy to distribute and possess with the intent

14   to distribute oxycodone, a Class C felony in violation of

15   21 United States Code Section 846, this crime carries a

16   statutory maximum penalty of 20 years' imprisonment, three

17   years' supervised release, a maximum fine of a million dollars,

18   and a $100 mandatory special assessment.

19          In connection with today's proceedings, I have

20   received and reviewed the presentence investigation report

21   prepared by United States Probation Officer Robert Flemen.  It

22   is dated February 19, 2016.

23          I have a sentencing memorandum from the government,

24   and I have a sentencing memorandum from Mr. Orden on behalf of

25   his client.

3

G4QKWILS                    Sentence

1           Is there anything else that I should have seen in

2     writing prior to today's proceedings?  From the government?

3           MS. CUCINELLA:  Your Honor, I believe Pretrial

4     Services Officer Lisa Chan submitted a violation report dated

5     April 22nd.

6           THE COURT:  There is a violation report.  Is the

7     violation on today as well?

8           MS. CUCINELLA:  She had --

9           THE DEPUTY CLERK:  It's the pretrial, and they said

10    you could look at it at the time of sentencing.

11          THE COURT:  Oh, okay.  I guess there's a new one here.

12          All right, I do have that.

13          MS. CUCINELLA:  That's all from the government.

14          THE COURT:  Anything else from Mr. Orden?

15          MR ORDEN:  No, your Honor.

16          THE COURT:  Okay.

17          Has the government reviewed the presentence report?

18          MS. CUCINELLA:  Yes, your Honor.

19          THE COURT:  Any additions, deletions, or corrections,

20    other than you don't like the recommendation very much?

21          MS. CUCINELLA:  That's it, your Honor.

22          THE COURT:  Okay.

23          Ms. Cucinella, I will hear you on sentencing.

24          MS. CUCINELLA:  Certainly, your Honor.  As you just

25    noted, we disagree strongly with probation's recommendation in

G4QKWILS                    Sentence

1   this case.  We, given the defendant's role in this conspiracy,

2   given the number of violations he has had, we don't understand

3   probation's recommendation.  Supposedly, their below-guideline

4   sentence is recommended because of the defendant's efforts at

5   addressing his substance abuse problems, yet he has been found

6   to have used cocaine at least three times since he has been on

7   pretrial supervision and has even been reprimanded by your

8   Honor before to get the situation under control.  He has not

9   managed to do so.

10          We think, given that, as well as given his control in

11   this conspiracy, which your Honor is familiar with from the

12   trial before you, that a guideline sentence is appropriate

13   here.

14          THE COURT:  So let's talk about his role.  Let's talk

15   about his role here.  You say he's a crew chief.  And tell me

16   about his involvement.

17          MS. CUCINELLA:  Certainly, your Honor.  He was a crew

18   chief who had direct ties to the doctor.  He is the crew chief

19   that was often seen meeting in closed-door meetings in the

20   clinic with the doctor.  He at one point was a patient of the

21   doctor, and he brought in other people to see the doctor, the

22   fake patients.  Here --

23          THE COURT:  You mean he posed as a patient.  That's

24   what it says in your memorandum, that he posed as a patient,

25   not that he was a real patient.

G4QKWILS                    Sentence

1              MS. CUCINELLA:  Correct.

2              THE COURT:  He was one of the doctor's many fake

3    patients.

4              MS. CUCINELLA:  That is correct, your Honor.

5              Additionally, he brought in additional patients to

6    pose as fake patients.

7              His quantity here is not, we don't think, reflective

8    of the role he played, but we think that counsels in favor of a

9    guideline sentence.

10             THE COURT:  Okay.  Anything else that you want to call

11   to my attention?

12             MS. CUCINELLA:  Not unless the Court has questions.

13             THE COURT:  Okay.

14             Mr. Orden, have you reviewed the presentence report,

15   and have you gone over it with Mr. Williams?

16             MR ORDEN:  I have, your Honor.

17             THE COURT:  Any additions, deletions, or corrections

18   you would like to make to the Court?

19             MR ORDEN:  No, your Honor.

20             THE COURT:  So, I'll hear you on sentencing.

21             MR ORDEN:  Thank you, your Honor.

22             Maybe I misheard the government.  Did they say that he

23   wasn't a real patient?  He was a real patient of the doctor.

24             THE COURT:  They said he wasn't a real patient.

25             MR ORDEN:  He was.

                                                          6
G4QKWILS                    Sentence

1           THE COURT:  They said he was one of the doctor's many
2  phony patients.
3           MR ORDEN:  No, he was a prescribed person receiving
4  oxycodone --
5           THE COURT:  The doctor prescribed oxycodone for
6  anybody who walked in off the street.
7           MR ORDEN:  That's true, but he was, in fact, a real
8  patient in need of pain medication because he is in pain 24
9  hours a day.  You've read, I know, the account of his multiple
10  problems, and the one critical to his pain are the multiple
11  knee surgeries that he's had as a result of a car accident, and
12  for that, he still suffers, he still takes pain medication, not
13  oxycodone.  But, yes, he was a real patient in terms of that he
14  was in need of prescribed medicine, and that is what caused him
15  ultimately to fall into this.
16           Look, obviously, making money is part of it.  While
17  the government, I think, somehow pooh-poohed him as some sort
18  of income-producing person as a result of his disability, he
19  received 940 -- I'm not going to go into that as an excuse, but
20  he received $940 a month.  That's what he receives on
21  disability.  What is that, 11,000 and change a year, he
22  receives?
23           THE COURT:  It's not a generous income, I'll give you
24  that.
25           MR ORDEN:  Not a generous income.

                   SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

G4QKWILS                    Sentence

1          So he is a man with undeniably serious health issues.

2     I have suggested to the Court that it consider the Justice

3     Department's following internal investigation published this

4     February about the capacity of the Bureau of Prisons to deal

5     with people who are ill, but, in particular, people with

6     Mr. Williams' various problems - two strokes, heart attack,

7     he's still in ongoing treatment and medication for those -- and

8     while that obviously, I'm not suggesting, is the sole reason

9     for not imprisoning somebody, it's certainly, I think, a factor

10    to take -- was always a factor to take into account.  But I

11    think more significantly now, given the absolute apparent

12    failure of the prisons to adequately deal with patients in need

13    of medical care, that's something the government hasn't

14    rebutted at all, and I don't think they can since it's their

15    own department who wrote the report.

16         Now, let me get ahead of myself and suggest that if

17    the Court is going to sentence Mr. Williams to a period of

18    incarceration, that he has to be placed in a RDAP program for

19    what is his drug use.

20         I'm not sure -- in fact, I am sure that efforts which

21    are not successful at completely eradicating substance abuse in

22    your life is a reason for incarceration, which seems to be part

23    of the government's argument.  The fact is, he didn't not make

24    efforts.  In fact, he's still in the program.  His failures,

25    and falling off the wagon, and occasionally engaging in cocaine

G4QKWILS                    Sentence

1    abuse doesn't contradict his intent and his efforts to, in

2    fact, resolve this problem of his.  And, yes, I think he needs

3    ongoing treatment.  I just don't think that ongoing treatment

4    needs to be while as an imprisoned person.  And he is still --

5    he hasn't been thrown out of the program, he's still in the

6    program, and I think you'll note from the report, his most

7    recent test was that he was drug-free.

8              THE COURT:  His most recent test was --

9              MR ORDEN:  Any substances.  I think the report --

10             THE COURT:  I don't know.  I have from probation, or

11   from pretrial, I have a test indicating that he was positive on

12   April 12th, which is two weeks ago.

13             MR ORDEN:  Wasn't there one thereafter?  Did I not --

14   I don't have it in front of me.

15             THE COURT:  Ah, yes.  And then there was a test the

16   following week that was negative.

17             MR ORDEN:  Right, on April 19th.

18             Then there is the question -- and, again, I understand

19   these things aren't definitive of the comparative nature and

20   perhaps sentencing disparities.  I heartily welcome the

21   probation department's recommendation of 24 months, but I would

22   note that with regard to Ms. Middleton, who was involved in the

23   distribution of 50 percent more narcotics than Mr. Williams --

24   I think it was 3,000-plus pills as opposed to 2,000-plus pills

25   with Mr. Williams -- her recommendation was 36 months, his

9

G4QKWILS                        Sentence

1    recommendation is 24 months.

2           THE COURT:  That's their recommendation.  What did I

3    sentence Ms. Middleton to?

4           MR ORDEN:  Probation.

5           I think their histories in terms of -- and many of

6    them have difficult backgrounds --

7           THE COURT:  Yes.

8           MR ORDEN:  -- are not dissimilar, but the one thing

9    that does differentiate him in one other significant way, in

10   addition to that, which has already been described to you, is

11   his health issues.  Quite frankly, I don't see why -- of

12   course, there are many times I don't see why that he should be

13   treated any more severely than Ms. Middleton, and that is

14   why -- not because of her sentence, but that's an additional

15   reason why I would suggest that Mr. Williams, an appropriate

16   sentence would, in fact, be probation.  You have reviewed the

17   letters of what his, I think, are heartfelt, true, and accurate

18   for the people who know him, of the type of person he is, that

19   probation would satisfy justice in this case along with,

20   obviously, that you're going to impose that he -- if that's the

21   case, no matter what, you're going to impose some sort of

22   continuing drug treatment, and I think that is what this case

23   cries out for.

24          Yes, that's all.  Thank you, your Honor.

25          THE COURT:  I don't have Ms. Middleton's file with me,

1    so I can't really look at it.

2            MS. CUCINELLA:  And I -- unfortunately, your Honor, my

3    colleague, Ted Diskant, handled that sentencing, so I don't

4    know exactly what the sentence was based on.  My understanding

5    is that Ms. Middleton did not create paperwork or sell the fake

6    MRIs the way that Mr. Williams did, and that although

7    Mr. Williams' quantity is lower than Ms. Middleton's, his role

8    was ostensibly more involved in the conspiracy.

9            THE COURT:  We're just going to get it, take a look at

10   it.

11           MS. CUCINELLA:  Okay.

12           MR ORDEN:  Yes, I agree, she was not described as a

13   crew chief, but when you read -- but you'll read about her

14   activities, they were significant.

15           MS. CUCINELLA:  The government would say that Ray

16   Williams' role is more significant than Ms. Middleton's in this

17   conspiracy.  Significantly so.

18           THE COURT:  Okay.

19           Well, there is the criminal history category

20   difference.  Ms. Middleton's criminal history category was I.

21           MR ORDEN:  And, yet, she had higher guidelines.

22           THE COURT:  But that's totally amount driven, and,

23   frankly, as between 2,000 and 3,000 ain't no difference to me.

24           MR ORDEN:  Okay.

25           THE COURT:  Okay?  Are we at more than a hundred?

G4QKWILS                    Sentence

1      2,000, 3,000, 5,000?  To that extent, the guidelines are really

2      silly, and I tend to look at them and then disregard those

3      kinds of --

4              MR ORDEN:  I wasn't positing that as a significant

5      difference, but what I was positing was the difference in the

6      recommendation, and their roles aren't really that different.

7      They are different, but --

8              THE COURT:  Yeah, they're different.  Yeah, they're

9      different.  Yeah, they're different.  I wish I had the

10     transcript of the sentencing.  We don't have the transcript of

11     the sentencing of Ms. Middleton's.

12             MR ORDEN:  I think what you can get, Judge, I don't

13     know, is the sentencing submission of the government online as

14     a document.

15             THE COURT:  But I don't really care what they said, I

16     care what I said.  I care much more about what I said than what

17     they said.  Once I say it, Mr. Orden, I actually cease to care

18     so much about what they said, and I care more about what I

19     said.

20             MR ORDEN:  I wasn't privy to that, Judge, so I can

21     only reflect on what they said.

22             MS. CUCINELLA:  Her criminal history, I believe, was

23     also for crimes such as prostitution and things of that nature.

24             THE COURT:  She had a huge criminal history, but she

25     didn't have any criminal history points.

G4QKWILS                    Sentence

1              MS. CUCINELLA:  Yes, it was a different nature.

2              THE COURT:  Right.

3              There are similarities, there are differences.

4              MR ORDEN:  With respect to Mr. Williams' criminal

5    history, that goes back 17 years, his single conviction.

6              THE COURT:  Let's look at that again.

7              His single recognizable conviction, the one that

8    yielded the points.

9              There are similarities, and there are differences,

10   okay?  I see similarities, and I see differences.

11             Mr. Williams, do you want to talk to me before I

12   sentence you?

13             MR ORDEN:  You want to say something?

14             THE DEFENDANT:  Yes, ma'am.

15             THE COURT:  Yes, sir.  I'm listening to you.  Stay

16   seated, Mr. Williams.  I know you have some issues.

17             THE DEFENDANT:  Your Honor, I'm not a bad person, I

18   just have done a bad thing, and today, I want to apologize for

19   my actions, and I'm deeply sorry, and I hope the Court will

20   give me forgiveness.  It wasn't my intention, but, you know,

21   I'm deeply sorry, and I'm looking for forgiveness.

22             THE COURT:  Well, forgiveness is one thing, punishment

23   is another thing.  Those are two entirely separate things in my

24   book.  I'm perfectly willing to forgive you, for what that's

25   worth.

G4QKWILS                    Sentence

1              Is Mr. Williams having difficulty hearing?

2              MR ORDEN:  He is right now, yes.

3              THE COURT:  Does this help a little bit?

4              THE DEFENDANT:  It does.

5              THE COURT:  Because I'm speaking very loudly.

6              THE DEFENDANT:  Yeah, that helps.

7              THE COURT:  I'm speaking very loudly.

8              What I said was, I'm perfectly willing to forgive you,

9    human being to human being, but I'm not in the forgiveness

10   business, I'm in the crime-and-punishment business.  And I hold

11   that entirely separate from the forgiveness business, to which

12   I fully subscribe as a church-going citizen, but that's not the

13   business I'm in, okay?  And I want to make that quite clear.

14             Mr. Williams is somebody who played a role in this

15   case that is a far from insignificant role as a crew chief, as

16   well as a steerer, and Ms. Middleton, to the best of my

17   recollection, was a steerer, and Mr. Williams was more than

18   that.

19             That said, they are both persons of relatively

20   advanced years, not youngsters, and they both have health

21   issues.  Mr. Williams has not succeeded, obviously, in his

22   efforts to kick his drug habit entirely.  I understand that

23   kicking a drug habit is a very difficult thing.  I applaud him

24   for trying.  He certainly isn't using to the extent that he

25   once did, for which I applaud him.

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

G4QKWILS                    Sentence

1            So the two things that seem to have moved the

2    probation officer off a guidelines sentence are his health

3    issues and his efforts, only partially successful, to kick the

4    drug habit.  And I'm willing to give him credit for those

5    things, not to the extent of probation.  I don't think that I

6    could sentence a crew chief in this case to probation -- I

7    don't think it's appropriate -- but to the extent of giving him

8    some credit for those two things, Mr. Orden calls my attention

9    to a deeply disturbing document that came from the Justice

10   Department itself, and that pointed to the shortcomings in the

11   medical facilities that are run by the Bureau of Prisons, or I

12   should say the medical care, because I think the medical

13   facilities, the ones that are oriented toward medical care,

14   are, in large measure, much better than places like, shall I

15   say, the MCC, which is not a medical facility, and which, in my

16   experience, has perhaps not delivered the highest quality of

17   medical care in all instances.

18           So it seems to me that Mr. Williams should be doing

19   his time in Devens, or Butner, or someplace where he can get

20   adequate medical care.  And I will, as a result, make a

21   recommendation that, given his myriad of medical conditions,

22   that he serve his sentence in such a facility.

23           I am also going to recommend that he continue in drug

24   treatment, both while he is incarcerated and after he gets out.

25   And I think that the Bureau of Prisons should take into account

G4QKWILS                    Sentence

1    his partially successful efforts to reform his drug use.

2    Awareness of the slippage notwithstanding, he's in much better

3    shape than he was a few years ago, and I think that the Bureau

4    of Prisons should take that into account, and it considers him

5    for participation in drug programs, including, but not limited

6    to, the 500-hour program, the residential drug assistance

7    program.

8            But that said, I have considered all of the Section

9    3553(a) factors, and I conclude that a sentence of

10   incarceration is necessary, and does not violate the parsimony

11   clause, and is an important message to send to Mr. Williams and

12   to the community about the seriousness with which this abuse of

13   prescription drugs, and particularly opioid prescription drugs,

14   is viewed by the Court.

15           Accordingly -- and I don't want you to stand, sir, you

16   can stay seated -- I have reviewed the presentence report.  I

17   accept as my findings its description of the offense and the

18   description of the offense conduct, its calculation of the

19   guideline range for this defendant, the total offense level,

20   which is driven entirely by the quantity of pills for which he

21   is ascribed responsibility is 23.  The defendant's criminal

22   history category is a II with two criminal history points.  I

23   accept and adopt as my findings probation's description of the

24   offender characteristics set forth beginning at paragraph 80 of

25   the presentence report.

G4QKWILS                    Sentence

1          After considering all of the Section 3553(a) factors,

2     under Docket No. 14 CR 810-04, the total offense level is 23,

3     the criminal history category is II.  This is a variance

4     sentence.  I hereby sentence you, Ray Williams, to be remanded

5     to the custody of the Attorney General of the United States and

6     the Bureau of Prisons for a term of 36 months.  The

7     recommendation of the Court is that Mr. Williams be placed in a

8     medical facility.  I am going to give him a long surrender date

9     because I want the Bureau of Prisons to do its level best to

10    get him into a facility like Devens or Butner, a facility that

11    he can be -- where his medical problems can be accommodated.

12         It is the further recommendation of this Court that

13    Mr. Williams be in drug treatment programs while incarcerated,

14    and that he be considered for participation in the residential

15    drug assistance program, the 500-hour program, at such time as

16    he becomes eligible therefor.

17         I can't guarantee, Mr. Williams, that you would be put

18    into this program, but it's a kind of a boot campy type program

19    to help give you the kinds of skills that you have been working

20    on already in your outpatient treatment.  And if you are

21    accepted to that program, which I must tell you will be largely

22    based on how well you behave, but if you are accepted to that

23    program, it might end up shaving some time off of your

24    sentence.  My recommendation doesn't count for a whole lot.

25    What counts for a whole lot will be your behavior, but I am

G4QKWILS                    Sentence

1    making a recommendation.

2           At the end of your period of incarceration, sir, I am

3    sentencing you to a term of three years' supervised release.

4    When you get out of jail, you have to go to the United States

5    Probation Office, which is on the sixth floor of this building,

6    and you will report there, and you will be assigned a probation

7    officer, and thereafter, you have to report to the probation

8    officer on a regular schedule, and you have to do everything

9    the probation officer tells you to do, and you can't do

10   anything the probation officer tells you not to do.

11          You have to abide by all of the standard conditions of

12   supervision, with the exception that I am suspending the

13   mandatory drug testing condition in favor of a special

14   condition of outpatient treatment approved by the United States

15   Probation Office, which will include testing to determine

16   whether you have reverted to the use of illegal substances.

17   You'll contribute to the cost of the services rendered based on

18   your ability to pay or the availability of insurance to cover

19   payment.  I authorize the release of available drug treatment

20   evaluations and reports, including this presentence

21   investigation report, to the substance abuse treatment

22   provider.

23          Other than that, all the standard conditions:  You

24   can't commit another crime, you can't illegally possess a

25   controlled substance, you cannot possess a firearm or a

G4QKWILS                    Sentence

1    destructive device of any sort for any purpose, you have to

2    cooperate in the collection of genetic identifying material,

3    DNA, as directed by your probation officer, you have to obtain

4    and maintain legal and verifiable employment, you can't

5    associate with persons who have been convicted of crimes, you

6    cannot be found in places where criminal activity is being

7    planned or carried out, your probation officer has to be aware

8    at all times of your home address and your work address, and

9    you cannot change those addresses without giving ten days'

10   advance notice to the probation officer.  In case of an

11   emergency, if you are required to vacate the premises, you have

12   48 hours to notify the probation officer of the change.

13           That's all serious stuff.  The rule in my court is, if

14   you violate the terms of your supervision, I will be very, very

15   happy to place you back in a place where you can be supervised

16   even more effectively, which is prison.  So if you want to

17   avoid that possibility, I would strongly suggest that you abide

18   by the terms of your supervision, and that way, you and I will

19   never meet again, and that will be a happy result for both of

20   us.

21           Was there an appeal waiver in this case?

22           MS. CUCINELLA:  Yes, your Honor.

23           THE COURT:  Okay.

24           Mr. Williams, do you recall that at the time you took

25   your plea of guilty, you signed a letter that the government

G4QKWILS                    Sentence

1     also signed?

2              THE DEFENDANT:  I agree.

3              THE COURT:  That plea agreement, right, okay.

4              And do you remember, when you signed that, did you

5     talk about it with Mr. Orden before you signed it?

6              THE DEFENDANT:  Yes, ma'am.

7              THE COURT:  Okay.  I'm sure Mr. Orden must have told

8     you that in the plea agreement, it said that if I sentenced you

9     to 63 months or less -- was that the number?

10             MR ORDEN:  51 months or less.

11             THE COURT:  51 months or less.

12             -- if I sentenced you to 51 months or less, you

13    wouldn't take an appeal from your sentence, and you wouldn't

14    bring a lawsuit charging that the sentence was illegal.  Do you

15    remember that?

16             THE DEFENDANT:  Yes, ma'am.

17             THE COURT:  Did you sign that letter of your own free

18    will?

19             THE DEFENDANT:  Yes, ma'am.

20             THE COURT:  Nobody put a gun to your head to make you

21    sign that letter, right?

22             THE DEFENDANT:  No.

23             THE COURT:  And did you understand that you were

24    giving up an appeal right as long as I didn't sentence you to

25    51 months?

G4QKWILS                    Sentence

```
 1              THE DEFENDANT:  Yes, ma'am.

 2              THE COURT:  Okay.  To more than 51 months.

 3              MR ORDEN:  Actually, you were right the first time,

 4    it's 63 months.

 5              THE COURT:  It's 63 months?

 6              MR ORDEN:  Yes, you were right the first time.

 7              THE COURT:  As long as I didn't sentence you to more

 8    than 63 months, you were giving up your appeal rights, correct?

 9              THE DEFENDANT:  Yes.

10              THE COURT:  Well, I've sentenced you to 36 months.  36

11    is less than 63, can we agree on that?

12              THE DEFENDANT:  Yes.

13              THE COURT:  Fine.

14         So it's my understanding that you've given up your

15    right to appeal, you've waived your right to appeal from your

16    sentence.  Is that also your understanding?

17              THE DEFENDANT:  Yes.

18              THE COURT:  All right.

19         What else do we have to do today?

20              MR ORDEN:  Voluntary surrender date, your Honor.

21              THE COURT:  Date.  Mr. O'Neill, I really want him in a

22    place where he will be better taken care of.

23              THE DEPUTY CLERK:  August 1st.  It's a Monday,

24    August 1st.

25              THE COURT:  August 1.
```

G4QKWILS                      Sentence

1              Sir, on Monday, August 1st, you will surrender to the

2       institution designated by the Bureau of Prisons.   Mr. Orden

3       will get word, and he will notify you where you are to go.   It

4       is in your interests to get yourself there, the reason for that

5       being, it will be a much more pleasant journey than if you

6       don't have to get yourself there, because otherwise you'll have

7       to surrender here, and God knows where all they'll send you

8       before they get you to the place that you're finally supposed

9       to go, and I really am quite adamant that we get you into one

10      of these medical facilities where they actually have

11      appropriate ability to take care of you, okay?

12              THE DEFENDANT:  Yes, ma'am.

13              THE COURT:  Is there anything else that we need to do?

14              MS. CUCINELLA:  Not from the government's perspective.

15              THE COURT:  From Mr. Orden?

16              MR ORDEN:  No, your Honor.

17              THE COURT:  All right.  These proceedings are closed.

18              (Adjourned)

19

20

21

22

23

24

25