Case number
CP-03-11
September 19, 2003

THE UNIVERSITY OF THE STATE OF NEW YORK
The State Education Department

Report of the Committee on the Professions
Application for Restoration of Physician License

Re: Moshe B. Mirilashvili

Attorney: Stanley J. Sanders

Moshe B. Mirilashvili, 600 Pine Hollow Road, Apt. 2-2B, East Norwich, New York 11732, petitioned for restoration of his physician license. The chronology of events is as follows:

| | |
|---|---|
| 12/01/86 | Issued license number 168778 to practice as a physician in New York State. |
| 08/31/95 | Charged with professional misconduct by Department of Health. (See "Disciplinary History.") |
| 01/22/96 | Hearing Committee of the State Board for Professional Medical Conduct revoked license. |
| 06/07/96 | Administrative Review Board for Professional Medical Conduct sustained revocation. |
| 06/24/96 | Effective date of revocation. |
| 04/25/01 | Submitted application for restoration. |
| 12/16/02 | Peer Committee restoration review. |
| 05/27/03 | Report and recommendation of Peer Committee. (See "Report of the Peer Committee.") |
| 07/02/03 | Committee on the Professions restoration review. |
| 09/19/03 | Report and recommendation of Committee on the Professions. (See "Report of the Committee on the Professions.") |

MIRILASHVILI(14Cr.810)_006361

2

**Disciplinary History.** (See attached disciplinary documents.) On August 31, 1995, the Department of Health charged Dr. Mirilashvili with thirteen specifications of professional misconduct: practicing with negligence on more than one occasion (first specification), practicing with gross negligence on a particular occasion (second through sixth specifications), failure to maintain records (seventh through twelfth specifications), and violation of state regulation (thirteenth specification). The charges related to Dr. Mirilashvili's treatment of six patients from 1990 to 1992 and from a Department of Social Services determination that he had violated that Department's regulations relating to the Medicaid Program. Each of the six patients was treated for severe pain.

A Hearing Committee of the State Board for Professional Medical Conduct sustained all the specifications of professional misconduct. The Committee concluded that Dr. Mirilashvili's pattern of practice could not identify clinical entities and did not collect enough historical and analytical data to support a diagnosis. The Committee concluded that he only treated symptoms and never sought nor treated causes. The Committee stated that Dr. Mirilashvili placed his patients at risk by inappropriately administering nerve blocks and failing to diagnose his patients before administering potentially dangerous treatments. Additionally, the Committee found that he was expelled from participation in the Medicaid Program for five years for committing fraud, in violation of New York State regulations. On January 22, 1996, the Hearing Committee voted to revoke Dr. Mirilashvili's physician license.

Dr. Mirilashvili appealed the Hearing Committee's determination to an Administrative Review Board for Professional Medical Conduct. The Review Board sustained the Hearing Committee's determinations of guilt and penalty, and Dr. Mirilashvili's physician license was revoked, effective June 24, 1996.

Dr. Mirilashvili submitted an application for restoration of his license on April 25, 2001.

**Recommendation of the Peer Committee.** (See attached "Report of the Peer Committee.") The Peer Committee (Kavaler, Gujavarty, Norris) met with Dr. Mirilashvili on December 16, 2002 to review his application for restoration. In its report, dated May 27, 2003, the Committee recommended that the order of revocation of Dr. Mirilashvili's physician license be stayed, that he be placed on probation for five years under specified terms, and that upon successful completion of the probationary period, his license be fully restored. The recommended probationary terms included a restriction that he only practice medicine under supervision in an Article 28 facility and that he satisfactorily complete 25 credits of continuing medical education courses each year, as approved by the Department of Health.

**Recommendation of the Committee on the Professions.** On July 2, 2003, the Committee on the Professions (Ahearn, Templeman, Earle) met with Dr. Mirilashvili to review his application for restoration. Stanley J. Sanders, Esq., his attorney, accompanied him. Dr. Mirilashvili presented the Committee with documentation of additional continuing medical education credits he earned during 1993.

3

The Committee asked Dr. Mirilashvili to discuss what led to the loss of his license. He replied that his training in Russia did not prepare him adequately for the type of patient record keeping that was expected in the United States. He said, "This was a big mistake, and I didn't correct it right away." He explained that in Russia, physicians maintained very short records for patients. He indicated that he had a large number of Medicaid patients as he opened his door to many patients that were "not welcome anywhere else." Dr. Mirilashvili said that his abbreviated records did not mean that he spent less time with his patients than what might be expected. Rather, he stated that he took all the appropriate "vital signs" but that patient records did not totally reflect everything he did. He indicated that he now understands that his inadequate records made it appear that he didn't spend the appropriate time with his patients, that he didn't do the appropriate tests, and that he did not make appropriate diagnoses. He stated that he now realizes how important it is for a physician to document everything done with a patient. The Committee questioned Dr. Mirilashvili as to how he could treat the patients if there were not appropriate records of previous visits. He replied, "I did indicate what I did. I didn't indicate why or on what basis I did what I did." He said that he was seeing over 100 patients a day and only had time to "make one or two sentences" in a patient's record.

Dr. Mirilashvili said that the charge related to his loss of Medicaid privileges was true as he did have a person in his office performing physician duties that was not licensed by New York State. He indicated that the person was a 71-year-old physician licensed in Russia. He explained that he had a significant number of patients who spoke Russian and Hebrew and the unlicensed person would help him understand what they were saying. Dr. Mirilashvili said that the nerve blocks were administered only by himself and that the unlicensed person would assist him by bringing trays and cleaning the room, but would also do such things as taking patient histories and blood pressure readings. He told the Committee that at the time he did not have enough experience with the law but now realizes that a person has to be licensed as a physician to perform any physician duties so that the patient is adequately protected.

Dr. Mirilashvili said that after losing his license he went to the computer to look at continuing medical education courses in law and record keeping as well as refresher courses in medical practice. Initially, he indicated that he did not attend "live" courses because of the expense, but has done so in the last year. He also reported that he has been attending Grand Rounds at Nassau University Medical Center where he has also done a significant amount of volunteer work and interacts with the physicians on staff. Dr. Mirilashvili said that he took the certification exam for the American Academy of Pain Management in June and plans to take the certification exam for the American Academy of Integrated Medicine. He indicated that he now understands how important it is for a physician to maintain complete records for every patient. He said that it is imperative that anyone be able to look at a patient's file and fully understand, from A to Z, what is going on with the patient. He reported that he has completed five credits of courses on record keeping.

MIRILASHVILI(14Cr.810)_006363

4



The Committee asked Dr. Mirilashvili what he would do if his license were restored. He replied that he would restrict the number of patients he saw and allow sufficient time to both see the patient and write the report. He said that he would dictate the records and strictly follow all rules and regulations pertaining to the practice of medicine. He said that the probationary terms recommended by the Peer Committee were acceptable to him and he would be very appreciative of a second chance to practice medicine. The Committee noted that the Peer Committee recommended that he only practice in an Article 28 facility and Dr. Mirilashvili said that he understood this and only wants to be able to help patients again. He indicated that he has spoken to personnel at Nassau County Medical Center about a possible position once his license is restored that would involve a team incorporating the rehabilitation and pain management units.

The overarching concern in all restoration cases is public protection. Education Law §6511 gives the Board of Regents discretionary authority to make the final decision regarding applications for the restoration of a license to practice as a physician in New York State. 8NYCRR §24.7(2) charges the Committee on the Professions (COP) with submitting a recommendation to the Board of Regents on restoration applications. Although not mandated in law or regulation, the Board of Regents has instituted a process whereby a Peer Committee first meets with an applicant for restoration and provides a recommendation to the COP. A former licensee petitioning for restoration has the significant burden of satisfying the Board of Regents that there is a compelling reason that licensure should be granted in the face of misconduct so serious that it resulted in the loss of licensure. There must be clear and convincing evidence that the petitioner is fit to practice safely, that the misconduct will not recur, and that the root causes of the misconduct have been addressed and satisfactorily dealt with by the petitioner. It is not the role of the COP to merely accept as valid whatever is presented to it by the petitioner but to weigh and evaluate all of the evidence submitted and to render a recommendation based upon the entire record.

The COP concurs with the Peer Committee that Dr. Mirilashvili "has turned his feelings of remorse toward energetic efforts at rehabilitation."

MIRILASHVILI(14Cr.810)_006364

Mirilashvili's responses to its questions credible. He continues to stress that the misconduct was a result of his poor record keeping rather than incompetence or negligence. As the Peer Committee noted, Dr. Mirilashvili has the right in a restoration proceeding to deny guilt to part of the original misconduct and that, in such cases, other criteria, such as public protection, must be considered. He expressed remorse for not having complete records and was able to relate how such inadequate records could potentially harm the care of patients. Dr. Mirilashvili explained what steps he would take to make sure similar misconduct would not recur. He has and continues to volunteer at Nassau University Medical Center, where he also attends Grand Rounds. The Peer Committee noted that he has made extensive efforts at reeducation but is concerned that most of those efforts were informal and limited in scope and subject matter. The COP finds that he has made a compelling case for restoration at this time and does not believe the public would be placed in danger were Dr. Mirilashvili's license restored. However, the COP agrees with the Peer Committee that he needs to develop a formal plan of continuing medical education each year. The COP also concurs with the Peer Committee that Dr. Mirilashvili's resumption of practice should be in a supervised, structured environment and that he be prohibited from practicing medicine in a private practice setting.

Therefore, after a careful review of the record and its meeting with him, the Committee on the Professions voted unanimously to concur with the recommendation of the Peer Committee that the order of revocation of Dr. Mirilashvili's physician license be stayed for five years, that he be placed on probation for five years under specified terms and conditions attached to the Report of the Peer Committee and labeled as Exhibit "A," and that upon successful completion of the probationary period, his license be fully restored.

Kathy Ahearn, Chair

Leslie Templeman

Steven Earle



# The University of the State of New York

NEW YORK STATE EDUCATION DEPARTMENT
OFFICE OF PROFESSIONAL RESPONSIBILITY
STATE BOARD FOR MEDICINE
-------------------------------------------X

In the Matter of the Application of

MOSHE MIRLILASHVILI

**REPORT OF
THE PEER
COMMITTEE
CAL. NO. 20293**

for the restoration of his license to
practice as a physician in the State
of New York.

-------------------------------------------X

    MOSHE MIRLILASHVILI, hereinafter known as the applicant, was previously licensed to practice as a physician in the State of New York by the New York State Education Department. Said license was revoked by the Office of Professional Medical Conduct, New York State Health Department (OPMC) as a result of a professional misconduct proceeding. The applicant has applied for restoration of his license.

    On December 16, 2002, this Peer Committee convened to review this matter and makes the following recommendation to the Committee on the Professions and the Board of Regents.

## BACKGROUND INFORMATION

    The written application, supporting papers provided by the applicant and papers resulting from the investigation conducted

MIRILASHVILI(14Cr.810)_006366

MOSHE MIRLILASHVILI   (20293)

by the Office of Professional Discipline (OPD) have been compiled by the prosecutor from OPD into a packet that has been distributed to this Peer Committee in advance of its meeting and also provided to the applicant. Also, this Peer Committee and the parties had before them an additional packet of submissions from the applicant identified by a covering letter dated November 21, 2002 from the applicant's attorney.

Listed below is the background information from the two packets. Further details pertaining to these documents may be found therein.

### PRIOR DISCIPLINE PROCEEDINGS

Action by the State Board for Professional Medical Misconduct

- January 22, 1996 - The Hearing Committee of the State Board for Professional misconduct finds the applicant guilty of professional misconduct and determines a penalty of revocation of his license to practice Medicine.

- January 26, 1996 - An order is mailed to the applicant enforcing the determination, the order becoming effective seven days after that mailing.

- June 7, 1996 — The Administrative Review Committee for Professional Medical Conduct issues a report of its consideration of the applicant's appeal to that Committee. The report upholds the determination of the Hearing Committee

-- 2 --

MIRILASHVILI(14Cr.810)_006367

MOSHE MIRLILASHVILI   (20293)

- June 17, 1996 - The determination and order of the Administrative Review Committee is served by mail upon the applicant and becomes effective June 24, 1996.

- Specifications of misconduct - The applicant was found guilty of thirteen specifications of professional misconduct to the extent indicated in the report of the Hearing Committee. The specifications consist of one specification of practicing the profession with negligence on more than one occasion; five specifications of practicing the profession with gross negligence on a particular occasion; six specifications of failure to maintain records; and one specification of having violated a state regulation.

Nature of the misconduct -

The first twelve specifications concern the applicant's care of six patients (referred to in the proceeding as patients "A" through "F") and the thirteenth specification concerns the applicant's expulsion from the Medicaid program because of a finding he committed fraud in violation of the applicable regulation.

The allegations, as set forth, and, for the most part proved, concerned his interaction with the six patients and involved a similar pattern in each instance. The patients came to the applicant with symptoms of pain and/or numbness which, in most instances, were treated by the applicant with

-- 3 --

MIRILASHVILI(14Cr.810)_006368

MOSHE MIRLILASHVILI (20293)

nerve blocks or, in one instance, a steroid treatment. The factual findings in the proceeding for each patient concluded that the applicant's records for the initial patient history were inadequate and lacking in specified items of information essential for a history of a patient presenting these symptoms. The applicant was found to have done an inadequate or inappropriate examination for the circumstances presented. He was also found to have performed treatments that were either wrong for the symptoms presented or, in his use of pain managing agents, addressed surface symptoms and not the possible underlying etiology of the patient's conditions. He was also, in many instances, found not to have performed the appropriate follow-up to find the underlying etiology.

<u>Action by the State of New Jersey:</u>

May 12, 1999 - State of New Jersey revokes the applicant's license to practice medicine in that state based on the results of the New York State professional misconduct proceeding.

APPLICATION FOR RESTORATION

On April 25, 2001, the applicant executed the State Education Department's standard form for applying for restoration of licensure. The application contained information and attachments as referred to, below:

<u>Entries in the basic application form:</u>

<u>Continuing Education:</u>

-- 4 --

**MOSHE MIRLILASHVILI (20293)**

No listing under educational credits. The applicant states "daily education by reading my professional books, medical journals through the internet access to the New York State Medical library." Under an entry for stating how the applicant's recent education preparation is relevant to the his loss of licensure, he entered "It was not relevant."

<u>Employment History</u> - Indicates employment history commencing in 1955 in the Soviet Republic of Georgia. Various employment as a physician and hospital affiliations listed, with United States listings commencing in 1974. Listing "From 10/1995 until present" as "became disable secondary from Disillusional Paranoid Disorder (DPD)."

<u>Professional Rehabilitation Activities</u> - Under this entry, the applicant stated "None."

<u>Submissions of Affidavits</u> - Six affidavits submitted, five from MD's.

<u>Additional attachments to the application</u>

<u>Medical education information</u> - The applicant has attached the names of numerous informational web sites and other attachments, each containing information about various medical conditions and procedures

-- 5 --

MOSHE MIRLILASHVILI   (20293)

*Initials rather than names may be used in this report when referring to persons other than the applicant, panel members, Administrative Officer, those representing the parties, and those that may appear in any annexed exhibit.

MIRILASHVILI(14Cr.810)_006371

MOSHE MIRLILASHVILI (20293)

-- 7 --

MIRILASHVILI(14Cr.810)_006372

MOSHE MIRLILASHVILI   (20293)

## INVESTIGATIVE INFORMATION

The packet provided by OPD contains the following additional information from the investigation that resulted from the filing of the application for restoration:

**O.P.D. investigator's report of March 13, 2002:**

The report includes a summary of an interview of the applicant by the investigator, which contains the following additional information:

- The applicant answered "yes" to questions 4, 5 and 6 of Part B of the application. In the interview, he explained the "other discipline matters" refers to the one in New Jersey that was a direct result of the revocation in New York.

- The applicant described his self-education via the internet, journals and books and provided material on his studies. His explanation for his answer to Question 3 of Part C of the application, regarding the relevance of his studies to his misconduct -- which he entered as "not relevant" - was that because of "his study he has improved his record keeping."

- When asked about his feelings about his revocation, the report describes him as stating "he had done something that was not right and was very sorry. He feels that now that he is receiving treatment and is

-- 8 --

MIRILASHVILI(14Cr.810)_006373

MOSHE MIRLILASHVILI   (20293)

involved in his study program, he is a better person and will be a better doctor if his license is restored."

### THE APPLICANT'S EXTRA PACKET OF SUBMISSIONS

On November 21, 2002, the counsel for the applicant submitted additional material for this proceeding as follows:

Final discharge report on the applicant by Dr. B.H., dated October 25, 2002:

- The report states the applicant is discharged from the care of Dr. B.H.

- The report describes the applicant's high degree of motivation ████████████████████████ ████████

- The applicant is described as remorseful for his professional misconduct and states he plans to turn that remorse to positive behavior

- The applicant has volunteered at a local hospital

- The applicant is described as having enthusiastically undertaken an extensive course of study to update his medical skills.



-- 9 --

MIRILASHVILI(14Cr.810)_006374

MOSHE MIRLILASHVILI  (20293)

> of sensitive, concerned, knowledgeable person whom I would be more than pleased to recommend or to have serve as my personal physician.

## C.M.E material:

- Copies of certificates indicating completion of modules for an internet program, Pain.com;

- A certificate from Nassau County University Medical Center for completion of grand rounds;

- "On-line Post Test," modules 1 and 2, apparently examples of the material from the Pain.com program.

### PEER COMMITTEE MEETING

On December 16, 2002, this Peer Committee met to consider this matter.  The applicant appeared before us personally and was represented by an attorney, Stanley J. Sanders, Esq. Also present was Wayne L. Keyes, Esq., an attorney from the Division of Prosecutions, OPD.

The applicant's presentation before the Peer Committee primarily consisted of his attorney's opening and closing statements and the applicant's testimony, as well as some additional submissions described herein. That presentation conveyed certain key points as to why the applicant came to commit the misconduct and his efforts since his license was revoked.

The applicant stated that, as an immigrant doctor from Soviet Georgia, he found himself seeing an overwhelming number of

-- 10 --

MIRILASHVILI(14Cr.810)_006375

MOSHE MIRLILASHVILI (20293)

patients from his community who required his services. He ended up working long hours seven days a week. The huge numbers of patients as well as the psychological illness that resulted from the stress of the situation caused him to not properly document his care and treatment of the patients. The applicant first lost his Medicaid privileges. Although a record of that proceeding is not in this record, references by both parties before us appear to indicate he lost his privileges because he was found to have used a person or persons to perform procedures they were not authorized to perform.

The applicant believes his problems with Medicaid and subsequently with his license were all rooted in his superficial and inadequate record keeping. When it was pointed out that, in the misconduct proceeding, he was also found guilty of insufficiencies in diagnosis and treatment as well as record keeping, both the applicant and his counsel maintained and reinforced throughout our meeting their position that the applicant was knowledgeable and competent in his practice, but that the records he kept made it impossible for the authorities to see that.

They additionally argued that the patients themselves had no complaints against the applicant and that no patient harm resulted. They also maintained that the applicant's emotional state at the time of his misconduct proceeding and the fact that he used as his attorney his niece, who was just out of law school,

-- 11 --

MIRILASHVILI(14Cr.810)_006376

MOSHE MIRLILASHVILI · (20293)

caused him to be not adequately defended at the misconduct proceeding.

The applicant stated that his practice specialized in pain management, although he also did general practice. He stated he did not use anesthesia, but rather analgesics to reduce the patients' pain so that he could then employ a regiment of physical therapy.



The applicant said he spends his time on reeducation, primarily on the internet; and on the volunteer work he has undertaken at Nassau Community hospital.

On the issue of reeducation, the applicant initially could not afford courses that would give him CME. However, he describes long hours spent on the internet absorbed in study. During the course of these efforts, he discovered the free Pain.com modules for which he provided certificates of completion. In the applicant's pre-meeting packet and in submissions made at our

-- 12 --

MOSHE MIRLILASHVILI  (20293)

meeting, the applicant provided additional evidence of that study as well as copious examples of the questions, answers and expositions for two of that program's modules.

The applicant's attorney for this proceeding, upon being retained by the applicant, advised him to obtain more formally credited CME. The applicant provided evidence of completion of two live courses: an 8.5 credit hour course on regional anesthesiology and a 5 credit hour course on the subject of record keeping.

Additionally, the applicant described the close relationship he has developed during his volunteer work with physicians at Nassau University Medical Center. He stated he frequently discusses medical issues with the doctors, has attended lectures at the hospital and he produced a certificate of his participation in grand rounds.

He also described a self-improvement project he has undertaken on the skills of record keeping. He produced a bound document that contains numerous fictitious scenarios of patients presenting a physician with a variety of conditions and the documentation techniques the applicant would undertake if presented with those situations. The applicant stated he reviews these exercises with two physician who were among those providing supporting affidavits and he provided letters from those two physicians to that effect among his submissions made the day of our meeting.

-- 13 --

MIRILASHVILI(14Cr.810)_006378

MOSHE MIRLILASHVILI  (20293)

The applicant also performed extensive volunteer work for the Nassau University Medical Center, doing almost 600 hours of community service. He described his involvement in improving wheel chair services for both in-patients and out-patients. He stated that the Center would consider granting him admitting privileges for a pain-management specialty upon restoration of his medical language. He submitted letters from the hospital praising his contribution and expressing a desire to support him in any future endeavors.

The applicant expressed regret and apologies for what he said were his record keeping shortcomings. He emphasized the great efforts he has made to improve in that area and said he would take special care in the future not to repeat his past mistakes. He believes he is in much better emotional health thanks to the efforts of Dr. B.H. He said that, should he be restored, he would like to resume private practice in pain management.

Before we heard closing arguments from the attorneys, we asked if the applicant was willing to submit, subsequent to the meeting, certification of the 8.5 hours he received in the regional anesthesia course (which certification had not yet been available at the time of our meeting) and some corroboration of his claim that the Nassau University Medical Center would be willing to consider him for hospital privileges. The applicant agreed to provide that information. Shortly after our meeting, we received certification of the CME and a letter from the Assistant

MIRILASHVILI(14Cr.810)_006379

MOSHE MIRILILASHVILI   (20293)

to the Medical Director, Nassau University Medical Center, stating "When Michael Mirilashvili, M.D. receives his license and starts his private practice, Nassau University Medical Center will consider granting privileges to Dr. Mirilashvili for admitting and caring for his own private patients."

In his closing argument, Mr. Keyes, the OPD attorney, expressed his office's opposition to the application for restoration. Mr. Keyes gave as reasons: █████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ █████████████████████████████████████ 2) The inadequacy of the applicant's CME, pointing out that he has taken only two live courses; and 3) the applicant's lack of acknowledgment of the practice issues, beyond record keeping, for which he was found guilty at the professional misconduct proceeding.

Mr. Sanders, in his closing remarks, cited the lack of proper legal representation at the original proceeding; the applicant's 600 hours of volunteer work; his improved mental outlook, in which the applicant changed from being a very guarded person to being an open one; the almost constant on-line and other study engaged in by the applicant; the recent intense efforts to obtain CME, which counsel says amounts to 125 hours; ████████████████ █████████████████████████████████████████████ █████████████████████████████████████████████

MIRILASHVILI(14Cr.810)_006380

MOSHE MIRLILASHVILI  (20293)

████████████████████████████████████████ the

applicant's fine human qualities; and the fact that the applicant

has been punished enough.

### RECOMMENDATION

We have reviewed the entire record in this matter, including
the written materials received before, during and after our
meeting. In arriving at our recommendation, we note that, in a
licensure restoration proceeding, the burden is on the applicant
to demonstrate that which would compel the return of the license.
In reaching our recommendation we consider whether the applicant
demonstrates sufficient remorse, rehabilitation and reeducation.
However, we are not necessarily limited to such formulaic criteria
but may consider other factors, particularly the seriousness of
the original offense and, ultimately, our judgment as to whether
the health and safety of the public would be in jeopardy should
the application be granted.

The issue of remorse presents difficulty in this matter. It
is clear from the presentation before us that this applicant is
sincerely remorseful for having committed professional misconduct
and for the overall personal and professional circumstances that
caused his problems.

However, on the one hand, he is only remorseful to the extent
he believes his problems relate to his record keeping, and not to
the extent of some of the serious practice deficiencies he was
found guilty of. On the other hand, legally, an applicant at these

-- 16 --

**MOSHE MIRLILASHVILI  (20293)**

proceedings is not required to admit guilt to acts he does not believe he was guilty of. In the case before us, the applicant clearly believes that any practice deficiencies found were a result of the authorities' inability to see all that the applicant did with the patients because of the inadequate records he kept, and not because of any negligence or incompetence by him.

In cases where an applicant denies his guilt to part of the original misconduct, the criterion of remorse is undercut and limited in its usefulness. In the case before us, the applicant has expressed remorse to the extent he is entitled to by law. In these circumstances, we must weigh the applicant's statement of contrition against some of the other criteria considered, particularly whether the public is protected.

The applicant has turned his feelings of remorse toward ███████████████████████████████████████ He pursued extensive, albeit informal, efforts at reeducation. He has volunteered and continues to volunteer at Nassau University Medical Center, which has provided him with positive references and expressed the possibility of considering him for employment. He has begun to obtain more formal evidence of CME through the modules on pain management and in the two live courses for which he has provided documentation of completion. He undertook self-education as seen in the theoretical record keeping exercises.

-- 17 --

**MOSHE MIRLILASHVILI  (20293)**

The extent of the applicant's reeducation still leaves us with concerns. While he has made the efforts we have described, and interacted with other physicians and attended lectures at Nassau University Medical Center, only two of the courses he has obtained credits for are live courses. Also, the courses he has taken have been limited in scope and subject matter, although the license he is seeking would allow him to practice medicine in any field.

Moreover, the applicant's restricted view of his original misconduct raises questions on the extent of his insight into the practice issues for which he was found guilty. Regardless of those questions, he has taken enough positive steps in his rehabilitation and education to warrant consideration for restoration. However, we are left with concerns about the adequacy of that reeducation and of his judgment in practice if he is left totally to his own devices. We consider it advisable that he be placed on a probation that limits his practice to a supervised, structured employment setting - in particular employment at an Article 28 facility -- and not to his own private practice. We also believe terms of probation should include requirements for twenty-five credit hours per year of continuing medical education for the length of the probation, which would be a period of five years.

It is therefore the unanimous recommendation of this Peer Committee that execution of the revocation of the applicant's

-- 18 --

MIRILASHVILI(14Cr.810)_006383

MOSHE MIRLILASHVILI   (20293)

license to practice medicine in the State of New York be stayed;
that the applicant be placed on probation for a period of five
years under the terms of probation attached hereto, made a part
hereof and marked as Exhibit "A;" and that upon successful
completion of the period of probation, the applicant's license to
practice medicine in the State of New York be fully restored.

Respectfully submitted,

Florence Kavaler, M.D., Chairperson
Krishna R. Gujavarty, M.D.
James E.C. Norris, M.D.


_____         5/27/03
Chairperson                             Dated

EXHIBIT "A"

TERMS OF PROBATION
OF THE PEER COMMITTEE
MOSE MIRLILASHVILI
CALENDAR NO. 20293

1. That applicant, during the period of probation, shall be in compliance with the standards of conduct prescribed by the law governing applicant's profession;

2. That applicant shall submit written notification to the Director, Office of Professional Medical Conduct (OPMC), 433 River Street - Suite 303, Troy, NY 12180-2299, of any employment and/or practice, applicant's residence, telephone number, and mailing address and of any change in applicant's employment, practice, residence, telephone number, and mailing address within or without the State of New York;

3. That during the period of probation, applicant shall only utilize his license and practice medicine as a supervised employee in a New York State Article 28 facility, and shall engage in no other form of the practice of medicine, including but not limited to a private practice setting, whether alone or as an employee or associate of another.

4. That applicant shall have quarterly performance reports submitted to the New York State Department of Health (DOH), addressed to the Director, Office of Professional Medical Conduct, as aforesaid, from his employer, evaluating his performance as a physician in his place of employment, said reports to be prepared by applicant's supervisor or employer;

5. That respondent shall, at the applicant's expense, enroll in and diligently pursue a course of training in continuing medical education, said course of training to be selected by the applicant and previously approved, in writing, by the Director of the Office of Professional Medical Conduct, and said course of training to consist of 25 credit hours per year for each year of the period of probation and to be satisfactorily completed during the period of probation;

6. That applicant shall submit written proof from the Division of Professional Licensing Services (DPLS), New York State Education Department (NYSED), that applicant has paid all registration fees due and owing to the NYSED and applicant shall cooperate with and submit whatever papers are requested by DPLS in regard to said registration fees, said proof from

JAMES B. HAMILL   (19692)

DPLS to be submitted by applicant to the Department of Health (DOH), addressed to the Director, OPMC, as aforesaid, no later than the first three months of the period of probation;

7. That applicant shall submit written proof to the DOH, addressed to the Director, OPMC, as aforesaid, that 1) applicant is currently registered with the NYSED, unless applicant submits written proof that applicant has advised DPLS, NYSED, that applicant is not engaging in the practice of applicant's profession in the State of New York and does not desire to register, and that 2) applicant has paid any fines which may have previously been imposed upon applicant by the Board of Regents or pursuant to section 230-a of the Public Health Law, said proof of the above to be submitted no later than the first two months of the period of probation;

8. That applicant shall make quarterly visits to an employee of the OPMC, DOH, unless otherwise agreed to by said employee, for the purpose of said employee monitoring applicant's terms of probation to assure compliance therewith, and applicant shall cooperate with said employee, including the submission of information requested by said employee, regarding the aforesaid monitoring;

9. That upon receipt of evidence of noncompliance with or any other violation of any of the aforementioned terms of probation, the OPMC may initiate a violation of probation proceeding.

MIRILASHVILI(14Cr.810)_006386

NEW YORK STATE EDUCATION DEPARTMENT
OFFICE OF PROFESSIONAL RESPONSIBILITY
STATE BOARD FOR MEDICINE
-----------------------------------------X

In the Matter of the Application of

MOSHE MIRLILASHVILI

REPORT OF
THE PEER
COMMITTEE
CAL. NO. 20293

for the restoration of his license to
practice as a physician in the State
of New York.

-----------------------------------------X