

305 Madison Avenue
New York, NY 10165
T: 212-922-1080
F: 212-949-8255

Henry E. Mazurek
Partner
mazurek@clayro.com

August 4, 2016

<u>BY EMAIL AND FEDEX</u>

Michael Fitzpatrick
Chief, U.S. Probation Officer
Southern District of New York
500 Pearl Street
New York, New York 10007-1312

Kathleen Coad
Supervisory U.S. Probation Officer
Southern District of New York
500 Pearl Street
New York, New York 10007-1312

Jill Jefferies
U.S. Probation Officer
Southern District of New York
500 Pearl Street
New York, New York 10007-1312

     Re: *United States v. Moshe Mirilashvili*, S2 14 Cr. 810 (CM)

Dear Officers Fitzpatrick, Coad, and Jefferies:

  We are counsel to Dr. Moshe Mirilashvili who is scheduled to be sentenced by the Honorable Colleen McMahon on September 14, 2016. On July 1, 2016, Probation issued and filed its final Pre-Sentence Investigation Report ("PSR"). At the same time, Probation denied our substantive objections to its draft Report without providing any support for its position. As discussed below, Probation's Guidelines calculation and many of the facts contained in the PSR are wrong. More importantly, Probation's failure to indicate the reasons it rejected those objections or provide any factual basis for its proposed Guidelines calculation other than deferring to undisclosed reasons given by the government provide us with no guidance with which to contest these conclusions at sentencing.

Probation Department
August 4, 2016
Page 2 of 7

      We ask that the Probation Department specifically identify its basis for rejecting Dr. Mirilashvili's Guidelines objections and for its calculation of the drug quantities reasonably foreseeable to him in the charged conspiracy. This information should be produced to satisfy Probation's disclosure requirements under 18 U.S.C. § 3552 and Rule 32 of the Federal Rules of Criminal Procedure. We are also available to meet with you to discuss these issues and our concerns at your convenience.

## BACKGROUND

      Dr. Mirilashvili was charged in an Indictment alleging a conspiracy to distribute oxycodone and distribution of oxycodone. He operated a pain management clinic in Washington Heights from approximately October 2012 through December 2014. As part of his practice, Dr. Mirilashvili regularly prescribed oxycodone to patients who documented their medical need for such a prescription. Some patients, however, submitted fake documents in an effort to obtain oxycodone illegally. These patients were brought to the clinic by so-called "Crew Chiefs" who worked with office staff to facilitate appointments and obtain the fake documents. The Crew Chiefs then took their patients to pharmacies to fill the prescriptions they obtained and later sold the pills for profit. According to the PSR, the Crew Chiefs and their patients engaged in the same conduct with other doctors. Dr. Mirilashvili took no part and had no foreseeable knowledge of this other activity. Yet, Probation apparently included pills obtained from other doctors in Dr. Mirilashvili's distribution quantity for Guidelines calculations.

      In the end, Probation calculated Dr. Mirilashvili's Guidelines range to be between 292 and 360 months imprisonment and recommended a 292-month sentence (24.3 years, or in this case, a life sentence) for a 69 year-old, first-time, non-violent offender.

## SUMMARY OF OUR OBJECTIONS AND PROBATION'S RESPONSE

      Probation's description of the offense conduct in the PSR essentially copies verbatim from the Indictment and the Complaint. But this case was resolved by a trial, not by a plea. Dr. Mirilashvili's objections were based on the trial transcript and exhibits introduced at his trial. In response, Probation cites to no contrary evidence or portion of the trial record. Instead, it merely states over and over again that it "conferr[ed] with the government" and "no changes will be made." (PSR, page 20-21.) Probation should at the very least identify the facts it relies upon to deny the defendant's objections. Simply siding with the government for no stated reason leaves the unfortunate impression that the Probation Department is not exercising its supposed independent position as an agency of the Court – not the prosecution. It also is failing in its statutory mandate to make independent calculations of the federal Sentencing Guidelines.

Probation Department
August 4, 2016
Page 3 of 7

As a consequence of its summary acceptance of the prosecution's position, Probation left unchanged "facts" such as: the number of resold pills reasonably foreseeable to Dr. Mirilashvili, the amount of money associated with the conduct, the amount of individuals posing as patients, the conclusion that "health insurance was rarely accepted" at Dr. Mirilashvili's clinic, the quantity of oxycodone attributable to each co-defendant for which Dr. Mirilashvili is being held responsible, and the resulting Guidelines calculation.

<u>DR. MIRILASHVILI'S OBJECTIONS AND PROBATION'S RESPONSE</u>

As discussed in our letter dated June 2, 2016,[1] our primary objections to the PSR were in its calculation of the Guidelines, which substantially differed from our calculation. (*See* Letter dated June 2, 2016 from Henry Mazurek) ("Exhibit A"). The PSR leaves unchanged Probation's initial finding of a total offense level of 40, which, as stated above, results in a proposed sentence of 292 to 365 months (or 24 1/3 to 30 years). (*See* PSR, page 22.) This calculation is based upon a conclusory and unsupported finding that Dr. Mirilashvili's offense conduct involved the unlawful distribution of "924,300, 30-mg oxycodone pills." (PSR, ¶ 67.) This amount was not justified by reference to any trial evidence, or any evidence of any kind. It also, quite strikingly, runs contrary to information that the U.S. Attorney's Office gave to the Probation Department about other charged co-conspirators. (*See* PSR, ¶ 59.) Our June 2 letter explained, with factual references to the trial record, why Probation's unjustified calculation should be stricken from the PSR and replaced by the fact-based proposal in our letter. (*See* Exhibit A.)

For example, the PSR now bases its calculation of illegally distributed pills for which Dr. Mirilashvili should be held responsible on the unsupported assumption that all patients who paid in cash were known to the doctor to be fake patients who intended to redistribute the narcotics. This very broad assumption is contradicted by uncontested facts from trial.

From October 2012 through December 2014, Dr. Mirilashvili wrote approximately 13,000 prescriptions for oxycodone. The government eventually conceded at trial that it did not contest pills prescribed to patients who paid through health insurance plans. Thus, all parties agreed that these prescriptions should be removed from the Guidelines drug quantity computation. However, from this starting point, there was no basis for Probation to then conclude that **all** cash-paying patients were known to be fake patients intending to unlawfully

---

[1] Under separate cover the same day, Dr. Mirilashvili also submitted to Probation thirteen characters letters on his behalf, which included testimonials from colleagues, friends and family. We informed Officer Jefferies that these letters would be separately submitted to the Court as exhibits to Dr. Mirilashvili's sentencing memorandum. Nonetheless, we also produced these letters to Probation so that his PSR would include a reference (at least generally) to the information contained in them, which speaks about Dr. Mirilashvili's character and personal history. These letters were submitted as corroboration to the information previously submitted to Probation regarding Dr. Mirilashvili's personal background. The PSR is silent on both points.

redistribute the pills. Indeed, we know that certain cash patients were not faking their ailments and actually took the pills regularly. Some of the co-defendants who pled guilty continued to maintain at the time of their sentencing that they suffered ailments and took the pain medication regularly (*e.g.* Middleton, Davis). Also, two cash-paying patients were called as defense witnesses at trial and they testified under oath that they took the medication to relieve pain from ongoing injuries or ailments. Only two cooperating witness patients (Abraham Correa and Damon Leonard) testified for the government at trial. And neither of them testified that all patients who paid the doctor in cash were part of the drug conspiracy or were known to be fake patients. Instead, they testified that the only patients they knew to be "fake" or part of the drug conspiracy were those under the control of Crew Chiefs. According to the testimony of each of these witnesses, which the jury and Court accepted, there were a handful of Crew Chiefs (all referenced in the PSR other than Abraham Correa who is discussed in our prior letter) who infiltrated Dr. Mirilashvili's practice and each crew chief had at most 10 patients under their control. (*See* Exhibit A at 2.) These facts, at the very least, refute the broad assumption that every cash-paying patient was "fake" and a known, or reasonably known, narcotics distributor. Thus, the PSR's conclusion at paragraph 61 cannot be sustained.

Instead, as the defense proposed, Probation should determine that *only* those prescriptions given to patients of Crew Chiefs were knowingly and proven illegal. The PSR includes most, but not all, of the information needed to calculate that number. We supplied the missing information based on trial transcripts in our June 2 Letter. (Exhibit A at 2.) The other information needed to make a reasoned estimate was already given to the Probation Department regarding the drug quantities attributed to co-defendant Crew Chiefs. Combining these amounts should lead to the drug quantity totals proposed in the defense June 2 letter, *i.e.*, no more than 29,198 30-mg pills of Oxycodone which is equivalent to 5,862 kilograms of marijuana.

In addition to the more overriding point of drug quantity calculations, there are a number of other points about which the Probation Department denied objections without reason. Here are a few examples:

- According to the trial evidence, the street value of oxycodone is between $12.50 and $18 per pill in New York City. We provided excerpts of the trial transcript to this effect. But, "after conferring with the government, no changes" were made in the PSR, (PSR, page 20), which claims without attribution that the street value of oxycodone is $30 per pill (PSR ¶ 21).

- The PSR contends that: "Health insurance was rarely accepted by MIRILASHVILI for these transactions." (PSR ¶ 22.) As we pointed out, the trial evidence demonstrated that Dr. Mirilashvili accepted insurance for approximately 30% of all patient visits. Probation rejected our objection because it somehow determined that "towards the end of the conspiracy the defendant was not taking any insurance patients." (PSR, page 20.) That

assertion is false and irrelevant. While it is certainly true that Dr. Mirilashvili saw *fewer* insurance patients in 2014 than in 2012, the number was neither zero nor approaching it. Even if it were, Probation's statement is incorrect because it purports to cover the full time period of the conspiracy and, by its own admission, is actually only based on its (wrong) claim about the end of that time period.

- The PSR contends that the "vast majority" of the patients at Dr. Mirilashvili's clinic "either had no medical need for oxycodone or had no legitimate medical record documenting an ailment for which prescription oxycodone was needed." (PSR ¶ 24.) These patients, it claims, were "members of 'crews,' who were recruited and paid to obtain oxycodone prescriptions" from Dr. Mirilashvili. (PSR ¶ 24.) As we pointed out in our June 2 letter, there is *no evidence* to support this claim. The evidence, even if taken in the light most favorable to the government, only shows that a much smaller sub-set of Dr. Mirilashvili's patients fell into this category. Instead of addressing our detailed objections with proof, Probation "conferr[ed] with the government" and concluded again that this paragraph "is accurate as drafted." (PSR, page 21.)

In addition to contradicting the trial evidence, the PSR also reports facts inconsistently. For example, in paragraph 19, the PSR indicates that "between October 2012 and December 2014, Dr. Mirilashvili wrote more than 13,000 unnecessary prescriptions, resulting in the unlawful distribution of approximately 1.2 million oxycodone pills, for which he collected approximately $2.6 million in cash payments. (PSR ¶ 19.) Later, in paragraph 61, the PSR reports that he "is only being held responsible for the prescriptions he wrote for cash payments, which is approximately 10,233 prescriptions. This results in 920,970, 30-mg of oxycodone pills." (PSR ¶ 61). Then, in paragraph 67, the PSR finds that Dr. Mirilashvili's offense involved "924,300, 30-mg oxycodone pills." (Final PSR ¶ 67.) Thus, in this single report, Probation identifies three different quantities of oxycodone for which Dr. Mirilashvili should be held accountable – none of which is supported by any real evidence.

We also objected to the PSR's inclusion of irrelevant and misleading paragraphs regarding other alleged co-conspirators. First, the conduct of some co-conspirators—especially as it pertains to obtaining oxycodone prescriptions from other doctors—is irrelevant to Dr. Mirilashvili. Second, after reporting that co-conspirators (Crew Chiefs and fake patients) obtained oxycodone prescriptions from other doctors, the PSR failed to remove the number of prescriptions each co-conspirator received from other unaffiliated doctors. This creates the possibility that the PSR's calculation of drug quantity holds Dr. Mirilashvili accountable for all of the pills each co-conspirator obtained and re-distributed, even those procured from other doctors. (*See, e.g.*, PSR ¶ 33.)

Probation Department
August 4, 2016
Page 6 of 7

Finally, Probation simply ignored many of our objections to the PSR. One example should suffice here. Paragraph 36 (which pertains to the actions of co-conspirator Carolyn Middleton) reads:

> MIDDLETON assisted WHITE in bringing Crew Members to the medical offices and to nearby pharmacies to fill the oxycodone prescriptions. MIDDLETON also posed as a "patient" to obtain unnecessary oxycodone prescriptions from MIRILASHVILI, Doctor-2, and Doctor-3. WHITE paid MIDDLETON in cash for her participation.

As we asserted in our Objection Letter, the government failed to present proof that co-defendant MIDDLETON posed as a "[fake] patient" to obtain unnecessary prescriptions from MIRILASHVILI, Doctor-2, and Doctor-3." In fact, she was involved in a car accident in 2010, suffered severe pain from herniated discs and other ailments (confirmed by various MRIs) and suffered a partially torn ACL. (Exhibit D to the Objection Letter: Middleton Sentencing Submission at 4.) Most significantly, Middleton claimed that she was "legally prescribed oxycodone for her pain." (*Id.*) Dr. Mirilashvili should not be held responsible for *illegally* distributing oxycodone to someone who had a real medical ailment for which pain medication was appropriate.

Probation never responded to that objection. Rather, it denied it based on its mistaken belief that our objection to this paragraph related solely to the inclusion of references to Doctor-2 and Doctor-3 and Probation's apparent "practice to include all relevant information pertaining to both the defendant and the co-defendants in the Offense Conduct section of the report." (PSR, page 21.) That was not our sole objection to that (and other) paragraph(s) and Probation's failure to address our objection(s) is error.

Probation Department
August 4, 2016
Page 7 of 7

## CONCLUSION

     Probation's role in preparing a Presentence Report is not to mimic the accusations and position of the prosecution. It is to objectively and independently review the evidence presented, carefully review objections posed by the parties, thoughtfully respond to them, and make an informed recommendation to the Court. The PSR here bears none of those hallmarks. Rather, it represents a full abdication of Probation's responsibilities in favor of rubberstamping the government's position. Indeed, the PSR does not even pretend to make independent findings, and instead without reason supports the prosecution's position.

     Although we intend to raise many of these issues with the sentencing judge, we had hoped that independent findings in the PSR would help us to narrow our differences, or at least focus the Court on specific issues where the parties differed. Instead, we are left with no basis of fact to judge the PSR's general denial of the defendant's Guidelines calculations.

     We are available to meet with you to discuss our objections in further detail and to seek further review of the positions taken in Dr. Mirilashvili's final PSR. We hope to resolve these issues sufficiently in advance of Dr. Mirilashvili's sentencing hearing, which is currently scheduled for September 14, 2016.

                                Very truly yours,

                                CLAYMAN & ROSENBERG LLP

                                By:  Henry E. Mazurek
                                     Wayne E. Gosnell, Jr.

Encl.