IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x
AFFIDAVIT OF DEA TASK FORCE OFFICER       :    **FILED UNDER SEAL**
VICTOR LEBRON IN SUPPORT OF THE
APPLICATION OF THE UNITED STATES OF       :    USAO 2013R00844
AMERICA FOR AN ORDER AUTHORIZING
USE OF UNDERCOVER AGENTS /                :
CONFIDENTIAL SOURCES IN A DRUG
TREATMENT PROGRAM                         :
------------------------------------- x

I, Detective Victor Lebron of the New York City Police Department ("NYPD"), being first duly sworn, hereby state as follows:

### Introduction

1.  I make this Affidavit in support of an Application for a court order pursuant to 42 C.F.R. § 2.67, authorizing the use of an undercover agent/confidential source. Section 2.67 of Title 42 of the Code of Federal Regulations allows for law enforcement to seek court authorization to place undercover agents/confidential sources in a drug treatment program for investigative purposes upon a showing of good cause. In order to find good cause, the court must find:

    a.  There is reason to believe that an employee or agent of the (drug treatment) program is engaged in criminal activity;

    b.  Other ways of obtaining evidence of this criminal activity are not available or would not be effective; and

    c.  The public interest and need for the placement of an undercover agent or confidential source in the program outweigh the potential

1

injury to patients of the program, physician-patient relationships and the treatment services.

2.  I am currently investigating the controlled substances prescribing practices of Dr. Moshe B. Mirilashvili (hereinafter "Dr. Mirilashvili"), who runs a Pain Management Clinic located in New York, New York. I am requesting a court order, pursuant to 42 C.F.R. § 2.67(a), authorizing the placement of undercover officers or confidential sources as patients in the medical practice of Dr. Mirilashvili, which is located at 450 West 162nd Street, New York, New York 10032 (the "Clinic"). The target of this investigation is Dr. Mirilashvili, and the investigation, as more fully described below, is limited to his prescribing practices. The statements contained in this Affidavit are based upon my personal knowledge, as well as information provided to me by other law enforcement officers as described more thoroughly below. Because this Affidavit is written for the limited purpose of setting forth good cause for the requested court authorization, I have not included every fact known to me through this investigation.

### Affiant's Background

3.  I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18 U.S.C. § 2510(7), in that I am an officer of the United States empowered by law to conduct criminal investigations and make arrests for offenses enumerated in Title 18 U.S.C. § 2516. I have been employed by the NYPD since 1992, a member of the DEA Drug Enforcement Task Force since 2008, and a member of the DEA Tactical Diversion Squad since 2012. I am empowered to investigate, to make arrests with or without a warrant and to execute search warrants

2

under the authority of Title 21 U.S.C. § 878. During this time I have accumulated the following training and experience:

      a.    I have been employed by the NYPD for approximately 21 years, including 16 as a Detective. During the course of my employment, I have repeatedly received specialized narcotics-related training, including training in controlled substances identification, narcotics related investigative techniques, interview and interrogation training, preparation of search warrants, tactical application of narcotics enforcement, surveillance and electronic monitoring techniques, money laundering investigations and various forensic subjects including latent fingerprint collection and analysis.

      b.    In my work with the DEA, I have directed and participated in investigations targeting individuals and organizations trafficking cocaine, cocaine base ("crack"), marijuana, methamphetamine, heroin, and other controlled substances, as defined in Title 21, United States Code, Section 801. During these investigations I have sworn out numerous Probable Cause Affidavits, Title III Affidavits, and Search Warrants.

### Relevant Facts

4.    Dr. Mirilashvili is registered under the provisions of the Controlled Substances Act, U.S.C. §§ 822 *et seq.* as a practitioner and has been assigned DEA Registration Number BM8596857 for the purpose of handling controlled substances in Schedules II through V. His place of business at 450 West 162nd Street, New York, New York 10032 is a controlled premises within the meaning of 21 U.S.C. §§ 880(a)(1) and (2), and 21 C.F.R. §§ 1316.02(c)(1) and (2). Dr. Mirilashvili is required to keep complete and accurate records of all controlled substances received, sold, delivered or otherwise disposed of by him pursuant to 21 U.S.C. § 827 and 21 C.F.R. §§ 1304.01 *et seq.*

3

5. Since in or around October 2012, Dr. Mirilashvili has operated the Clinic at its current address. Almost immediately after the Clinic began operation, I and other law enforcement agents began receiving numerous complaints, some anonymous, from callers reporting unusual activity around the Clinic. Specifically, according to these complaints, the Clinic was attracting large crowds of individuals who would "line up" outside the Clinic during all operating hours. According to these complaints, these crowds outside the Clinic were frequently loud and unruly, and the front door to the Clinic appeared to be manned at all times by security guards. Other callers reported suspicious individuals loitering in and around the Clinic and illegal activity, including hand-to-hand drug sales in and around the Clinic.

6. According to at least one of the anonymous complainants, Dr. Mirilashvili and the Clinic were attracting large crowds because they were accepting cash in return for pain medication prescriptions which are not medically necessary.

7. Based on these complaints, I and other law enforcement agents began visual surveillance of the Clinic beginning in or around November 2012. During this time period, I observed unusually heavy foot traffic in and around the Clinic. I also frequently observed lengthy lines outside the Clinic, as well as what appeared to be a security guard or "bouncer" standing outside the Clinic at all times, maintaining a line to gain admission to the Clinic. The Clinic itself appears to have tinted windows, making it impossible to observe even the entry and waiting areas from the street.

8. During this time period, I also observed heavy vehicular traffic coming to and from the Clinic. Many of the vehicles appeared to be carrying numerous passengers and to have out-of-state registrations. Based on my review of law enforcement databases

and public records, I know that a significant number of the vehicles observed in and around the Clinic are registered to individuals with criminal records, some of which include prior convictions related to narcotics activity.

9. Moreover, based on my investigation as well as my conversations with other law enforcement agents, I have learned that prescriptions written by Dr. Mirilashvili, have been filled repeatedly in locations nowhere near the Clinic, including Connecticut, Virginia, New Jersey, and upstate New York. Based on my training and experience, I know it to be common for individuals involved in the distribution of oxycodone and related narcotics to travel great lengths to obtain illicit prescriptions from prescribers willing to write prescriptions for no valid medical reason.

10. In or around December 2012, an individual who is cooperating with law enforcement as part of this investigation (CS-1) posed as a potential "patient" at the Clinic and spoke, at the direction of law enforcement, to a number of individuals seen exiting the Clinic. These individuals told CS-1, in substance, that to gain access to the Clinic, CS-1 would have to pay $100 in cash to the "bouncer" in order to be let in, and then an additional $100 in cash to an "office manager" before he/she could see Dr. Mirilashvili who charged $200 in cash for the "office visit." According to these individuals, the "visit" would not involve any medical questioning or examination, but CS-1 would be given a prescription for oxycodone.

11. In or about March 2013, another individual who is cooperating with law enforcement as part of this investigation ("CS-2") posed, at the direction of law enforcement, as a potential "patient" and attempted to make an appointment to see Dr. Mirilashvili. In order to do so, CS-2 approached the "bouncer" who told CS-2 that he

GEN_0008755

would put CS-2's name "on the list." Around this time, CS-2 also spoke to a number of individuals seen exiting the Clinic. These individuals told CS-2, in substance, that to gain access to the Clinic, CS-2 would have to pay cash to the "bouncer" and be prepared to pay the doctor in cash for a no-questions-asked prescription for oxycodone.

12. On or about March 18, 2013, local law enforcement officers approached a vehicle bearing Florida license plates which was double-parked outside the Clinic. Three individuals were in the car at the time, and the officers observed numerous bottles of prescription medication. During the stop, the officers recovered approximately 90 oxycodone pills and 60 amitriptyline pills, all in prescription bottles. According to the labels on the bottles, the prescriptions had all been issued to persons other than those in the car. Moreover, one of the individuals in the car also had a pharmacy card and medical expense report issued under the name of another person.

13. Shortly after the stop, law enforcement agents approached Dr. Milarishvilli who, when shown the bottles seized from the car, confirmed that he had written all of the prescriptions for the pills recovered during the stop.

14. Based on the above, as well as my training and experience, I have reason to believe that Dr. Mirilashvili and the Clinic are engaged in criminal activity, namely the unauthorized distribution of prescription pain medication.

## CONCLUSION

15. Pursuant to 21 C.F.R. § 1306.04, a prescription for a controlled substance is only valid when issued for a legitimate medical purpose by a physician who is acting in the usual course of his professional practice. In order to substantiate claims pertaining to the illegal prescribing practices of Dr. Mirilashvili, it is necessary to send an individual,

GEN_0008756

acting in an undercover capacity, into the medical office posing as a new patient in an attempt to acquire a controlled substance prescription. While this individual is inside the medical clinic, agents/officers will conduct surveillance of the outside of the medical clinic in order to monitor the street activity and ensure the safety of the individual inside. From these visits, agents will be able to determine if, in fact, Dr. Mirilashvili is writing prescriptions or dispensing controlled substances for no valid medical reason.

16. On October 17, 2000 the Drug Addiction Treatment Act of 2000 was passed, which amended the Controlled Substances Act, 21 U.S.C. § 823(g). This Act waives the DEA's separate registration requirement for narcotic treatment programs. Practitioners who have obtained the proper approval from the Department of Health and Human Services – Center for Substance Abuse Treatment can be issued a Unique Identifier Number ("UIN") from the DEA authorizing them to administer, dispense, and prescribe Schedule III narcotic controlled substances, namely buprenorphine drug products, for use in maintenance and detoxification treatment. The granting of a UIN does not equate with authorization to run a drug treatment program. Rather, it simply authorizes a physician to prescribe certain drugs to his or her patients for the treatment of drug addiction. In addition, the physician can only prescribe these drugs in this context to a maximum of thirty patients at any given time.

17. On September 12, 2008, Dr. Mirilashvili requested and was issued a UIN from the DEA authorizing him to administer, dispense, and prescribe Schedule III narcotic controlled substances, namely buprenorphine drug products, for use in the maintenance and detoxification treatment of his patients. This means that he has the authority to prescribe buprenorphine products to up to thirty patients for the purpose of

treating any drug addiction that they might have. Dr. Mirilashvili is not running a drug treatment program as a result of having been granted a UIN. At present, the exact number of prescriptions written by Dr. Mirilashvili for buprenorphine products is not known, though it is believed from a review of his controlled substance prescription history obtained through the State of New York Prescription Drug Monitoring Program and through reports obtained regarding what he is ordering to be dispensed in his facility that a limited number of his patients are being treated in this fashion.

18.  Though physicians and treatment facilities are subject to strict rules regarding confidentiality of patient records, authorized drug treatment programs are more highly regulated and subject to special restrictions and requirements as set forth in Titles 21 and 42 of the United States Code and the Code of Federal Regulations. Records of the identity, diagnosis, prognosis, and treatment of drug treatment patients are required to be kept confidential. *See* 21 C.F.R. § 1304.24(d), 42 U.S.C. § 290dd-2(a). Section 2.67 of Title 42 of the Code of Federal Regulations allows for law enforcement to seek court authorization to place undercover agents/confidential sources in a drug treatment program for investigative purposes upon a showing of good cause.

19.  As noted above, Dr. Mirilashvili is not running a drug treatment program. However, since he is authorized to use certain drugs to treat the drug addictions of his patients, there is a potential for any undercover officer or confidential source sent into his office for the purpose of seeking controlled substance prescriptions to come into contact with a patient receiving drug treatment from Dr. Mirilashvili. For this reason court authorization pursuant to 42 C.F.R. § 2.67 is being sought in an abundance of caution,

GEN_0008758

though it is my belief that such authorization is not technically required under the circumstances.

20. At present I believe that placement of an undercover agent/confidential source into Dr. Mirilashvili's practice is the only way in which to confirm whether he is illegally distributing controlled substances. Surveys of pharmacies in the area of the medical clinic can be a useful tool in establishing their prescribing patterns. However, though such surveys may demonstrate an inordinate number of prescriptions written for specific controlled substances, they do not substantiate whether those prescriptions were written for a legitimate medical purpose. In addition, in my experience and that of other investigators involved in the case, conducting pharmacy surveys in the area of the medical clinic prior to any undercover activity can jeopardize the success of the operation.

21. For the foregoing reasons, it is my belief that sending undercover agents/confidential sources into Dr. Mirilashvili's practice is warranted. Since certain of his patients may be receiving drug treatment from the doctor, I am requesting formal court approval for the use of undercover agents/confidential sources in connection with the instant investigation.

22. The requested authorization to utilize undercover agents/confidential sources in investigating Dr. Mirilashvili is sought for a period not to exceed six months. Patient identifying information will not be revealed or otherwise disclosed unless absolutely necessary to criminally investigate or prosecute Dr. Mirilashvili and/or other individuals engaged in the illegal distribution of drugs. All measures will be taken to limit any potential disruption of the doctor's legitimate treatment of drug-addicted

GEN_0008759

patients with buprenorphine products, and any potential for a real or apparent break of patient confidentiality. Any records of proceedings for which disclosure of a patient's record has been ordered will be sealed.

23.   Finally, no information obtained by an undercover agent/confidential source regarding any patient being legitimately treated by Dr. Mirilashvili with buprenorphine products will be used to criminally investigate or prosecute such patient, or as a basis for an application for a court order to do so. *See* 42 C.F.R. § 2.67(e).

24.   Since Dr. Mirilashvili is the subject of the criminal investigation, it is requested that the notice requirements of 42 C.F.R. § 2.67(b), if deemed applicable, be waived and that the doctor not be given notice of the instant application, or an opportunity to be heard prior to issuance of the Court's order. *See* 42 C.F.R. § 2.67(b)(1).

I declare under penalty of perjury that the statements above are true and correct to the best of my knowledge, information and belief.

Detective Victor Lebron
DEA Tactical Diversion Squad

Sworn and subscribed to before me
this ___ day of June, 2013.

HONORABLE ALVIN K. HELLERSTEIN
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF NEW YORK

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------ x
IN THE MATTER OF THE APPLICATION OF      :   **FILED UNDER SEAL**
THE UNITED STATES OF AMERICA FOR AN
ORDER AUTHORIZING USE OF                 :   USAO 2013R00844
UNDERCOVER AGENTS / CONFIDENTIAL
SOURCES IN A DRUG TREATMENT              :
PROGRAM
                                         :
------------------------------------ x

## ORDER

The Court having found, pursuant to 42 C.F.R. § 2.67(c) and based upon application and affidavit of the United States of America and the Drug Enforcement Administration attached hereto and incorporated herein by reference, that good cause exists to utilize placement of undercover agents/confidential sources in the medical practice of Dr. Moshe B. Mirilashvili (hereinafter "Dr. Mirilashvili"), and that

(1)   there is reason to believe that Dr. Mirilashvili, who is authorized by the Drug Enforcement Administration ("DEA") to administer controlled substances, namely buprenorphine drug products, for use in maintenance and detoxification treatment from his medical offices located at 450 West 162nd Street, New York, New York 10032, is engaged in criminal activity through the illegal distribution of Schedule II controlled substances, namely, oxycodone;

(2)   other ways of obtaining evidence of this criminal activity are not available or would not be effective; and

(3)   the public interest and need for the placement of an undercover agent or confidential source in Dr. Mirilashvili's practice outweighs the potential injury to patients

receiving legitimate drug treatment from Dr. Mirilashvili with buprenorphine products, their physician-patient relationship with him, and the treatment services provided by him;

IT IS HEREBY ORDERED that:

(1)     the DEA is authorized to place undercover agents/confidential sources into the medical practices of Dr. Mirilashvili, located at 450 West 162nd Street, New York, New York 10032 for the purpose of its ongoing criminal investigation of Dr. Mirilashvili's prescribing practices for a period not to exceed six months from the date of this Order;

(2)     all patient identifying information shall not be revealed or otherwise disclosed unless absolutely necessary to criminally investigate or prosecute Dr. Mirilashvili and/or other individuals engaged in the illegal distribution of drugs;

(3)     all measures shall be taken to limit the potential disruption of Dr. Mirilashvili's legitimate treatment of drug-addicted patients with buprenorphine products, and any potential for a real or apparent break of patient confidentiality;

(4)     any records of proceedings for which disclosure of a patient's record has been ordered shall be sealed; and

(5)     no information obtained by an undercover agent/confidential source regarding any patient being legitimately treated by Dr. Mirilashvili with buprenorphine products will be used to criminally investigate or prosecute such patient, or as the basis for an application for a court order to do so, as specified in 42 C.F.R. § 2.67(e).

IT IS FURTHER ORDERED that since Dr. Mirilashvili is the subject of the criminal activities being investigated by the DEA, he need not be given notice and an

opportunity to be heard with regard to the Government's application, pursuant to 42 C.F.R. §§ 2.67(b) and 2.67(b)(1).

IT IS FURTHER ORDERED that this Order and the accompanying application and affidavit are to remain under seal until further order of the Court.

SO ORDERED this ___4___ day of June, 2013.

_____
HONORABLE ALVIN K. HELLERSTEIN
UNITED STATED DISTRICT JUDGE
SOUTHERN DISTRICT OF NEW YORK